UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

THOMAS C. WILLIAMS,

                              Plaintiff,

                                                                    3:24-CV-0267
v.                                                                  (LEK/ML)

BINGHAMTON UHS,

                              Defendant.

_____

APPEARANCES:                                          OF COUNSEL:

THOMAS C. WILLIAMS
  Plaintiff, *Pro Se*
163 Susquehanna Street, Rear Unit
Binghamton, New York 13901

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

        The Clerk has sent a complaint in the above captioned action together with an amended

application to proceed *in forma pauperis*, filed by Thomas C. Williams ("Plaintiff") to the Court

for review.  (Dkt. Nos. 1, 9.)  For the reasons discussed below, I (1) grant Plaintiff's amended *in

forma pauperis* application (Dkt. No. 9), and (2) recommend that Plaintiff's Complaint (Dkt. No.

1) be dismissed with leave to amend.

## I.      INTRODUCTION

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that his rights were

violated by Defendant Binghamton UHS ("Defendant").  (*See generally* Dkt. No. 1.)

As best as the undersigned can decipher, the Complaint appears to allege that Defendant

held Plaintiff without his consent and without a court order.  (Dkt. No. 1 at 8.)  The Complaint

appears to allege that Plaintiff desired a transfer to Albany but that was not granted.  (*Id*.)  The

Complaint is on form complaints alleging violations of 42 U.S.C. § 1983, the Americans with

Disabilities Act, and Title VII of the Civil Rights Act, as Amended.  (*See generally* Dkt. No. 1.)

As relief, Plaintiff seeks $1,000,000,000 in damages "and proof of ownership of

hospital."  (Dkt. No. 1 at 9.)

## II.     PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's

---

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

[2]      The language of that section is ambiguous because it suggests an intent to limit
availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1)
(authorizing the commencement of an action without prepayment of fees "by a person who
submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts
have construed that section, however, as making *in forma pauperis* status available to any litigant
who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed.
Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

amended *in forma pauperis* application (Dkt. No. 9), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted.[3]

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief."  *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)).  Each statement must be "simple, concise, and direct,' and must

---

[3]    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  A pleading must also contain "a demand for the relief sought[.]"  *Id.*  "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'"  *Id*.

Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]"  Fed. R. Civ. P. 10(b).  Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.).  A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court.  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)

(reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed for two reasons.

First, as it currently stands, Plaintiff's Complaint wholly fails to provide fair notice of the claims he attempts to assert.  By way of example, the Complaint states:

> Support staffing of Registration continues a Deportation of Registrants of police id to concure with "police act," and if I need help of medical can I choose your FBI trained please

(Dkt. No. 1 at 2 [errors in original].)

The Complaint continues,

> Free service from UHS Hospital employed for option and me to medical choose from a state of known services if I care to.

(Dkt. No. 1 at 6.)

Given its lack of clarity, the undersigned recommends dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's claim or claims against Defendant are entirely unclear.

Second, in the alternative, I recommend that the Complaint be dismissed for failure to state a claim upon which relief may be granted.

To the extent that the Complaint is construed as asserting claims pursuant to 42 U.S.C. § 1983 against Defendant, it fails to allege facts plausibly suggesting that Defendant is a state actor or that its actions are "fairly attributable to the state." *Roark v. New York*, 23-CV-1237, 2023 WL 8827185, at *5 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (citing *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals . . . named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at *2 (N.D.N.Y. Nov. 2, 2021) (Baxter, M.J.) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.)) (recommending dismissal of the § 1983 claims against Samaritan Hospital, a private medical institution, because the complaint failed to allege facts plausibly suggesting how its actions are "fairly attributable to the state."), *report and recommendation adopted*, 2024 WL 125512 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.); *see Campbell v. New York State Police*, 23-CV-1337, 2024 WL 1702010, at *5 n.5 (N.D.N.Y. Apr. 19, 2024) (Lovric, M.J.) (citing New York United Health Services, https://www.nyuhs.org/why-choose-us/leadership-performance (last visited July 3, 2024) ("UHS is a not-for-profit, community-benefit organization governed by a board of directors whose members are selected from the communities we serve.")) (noting that

"it appears that Defendant [Binghamton] UHS is a private medical institution."), *report and recommendation adopted*, 2024 WL 3063674 (N.D.N.Y. June 20, 2024).

To the extent that the Complaint is construed as asserting claims pursuant to the ADA against Defendant, it fails to allege facts plausibly suggesting that Plaintiff is an individual with a disability. 42 U.S.C. § 12102(1) (defining "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual . . . record of such impairment; or . . . being regarded as having such an impairment.").[4]

---

[4]       Moreover, Plaintiff could not proceed with a claim under Title I of the ADA, which addresses employment discrimination, because he has not alleged that he was employed by Defendant. 42 U.S.C. § 12117; *see Mary Jo C. v. New York State and Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) ("Title I of the ADA expressly deals with th[e] subject of employment discrimination . . . .") (citation and internal quotation marks omitted). "Title II of the ADA proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009). Private entities are not subject to the provisions of Title II even if they receive government funding. *Brennan v. NCAComp Inc.*, 22-CV-012, 2022 WL 4290660, at *7 (N.D.N.Y. Apr. 25, 2022) (Lovric, M.J.), *report-recommendation adopted*, 2022 WL 3097843 (N.D.N.Y. Aug. 4, 2022) (Suddaby, C.J.) (citations omitted). Title III of the ADA prevents discrimination based on a disability in places of public accommodation. 42 U.S.C. § 12182. Title III provides a private right of action for injunctive relief but no right of action for monetary relief. 42 U.S.C. § 12188; *see Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (holding that Title III of the ADA "authorizes private actions only for injunctive relief, not monetary damages."). Additionally, even assuming that Defendant is a public accommodation, 42 U.S.C. § 12181(7), and that Plaintiff is a qualified individual with a disability under the ADA, the Complaint is devoid of factual allegations concerning "policies, practices, [or] procedures" by Defendant that deprived Plaintiff of the ability to access goods, services, or privileges available to those without Plaintiff's disabilities. *Benyi v. New York*, 20-CV-1463, 2021 WL 1406649, at *1 (N.D.N.Y. Mar. 23, 2021) (Lovric, M.J.), *report and recommendation adopted*, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (Hurd, J.); *see Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC)*, 15-CV-1238, 2017 WL 1013081, at *9 n.14 (N.D.N.Y. Mar. 14, 2017) (Suddaby, C.J.) (dismissing Title III ADA claims against St. Joseph's Hospital Health Center for failure to state a claim where the plaintiff failed to allege that he was denied the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" and that the defendants discriminated against him "based on [his] disability"). Further, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications. *See Genco v. Sargent & Collins LLP*, No. 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018). Lastly, Title V of the ADA, sometimes referred to as the "retaliation provision," also does not appear applicable because Plaintiff does not allege that he engaged in activity protected by the ADA, that Defendant was aware of that

To the extent that the Complaint is construed as asserting a claim pursuant to Title VII of the Civil Rights Act, as amended, it fails to allege facts plausibly suggesting an employee/employer relationship between Plaintiff and Defendant.  *See Jones v. Thomas*, 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing for failure to state a claim, the plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Moreover, the Complaint fails to allege facts plausibly suggesting that Plaintiff filed a timely charge with the EEOC and received an EEOC right-to-sue letter before commencing this action. 42 U.S.C. § 2000e-5(e), (f); *see Legnani v. Alitalia v. Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Under . . . Title VII . . . , a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter.").

As a result, to the extent that the Complaint is construed as asserting claims pursuant to 42 U.S.C. § 1983, the ADA, and/or Title VII, I recommend that those claims be dismissed.  *See Walker v. Flynn*, 22-CV-0400, 2022 WL 2304169, at *4-7 (N.D.N.Y. June 27, 2022) (Lovric, M.J.) (recommending dismissal of the plaintiff's Section 1983, ADA, and Title VII claims where the complaint failed to allege facts plausibly suggesting that (1) the defendant "was a 'state actor' or was 'collaborating' with state actors," (2) the plaintiff "is or was employed by [the d]efendant," (3) the plaintiff obtained a right-to-sue letter from the EEOC, and (4) an ADA claim

---

activity, or any causal connection between the allegedly adverse actions that Defendant took against him and the protected activity. *See Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009) (Hurd, J.).

pursuant to Titles I-IV), *report and recommendation adopted by*, 2022 WL 2789355 (N.D.N.Y. July 15, 2022) (Sharpe, J.).

## V.     OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

Given that this is the Court's first review of Plaintiff's pleading and that Plaintiff is a *pro se* litigant, out of an abundance of caution, I recommend that he be permitted to replead the Complaint.

---

[5]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 9) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO REPLEAD** as frivolous (or, in the alternative, for failure to state a claim upon which relief may be granted) pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: July   3  , 2024
    Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[6]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 12 of 143

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint
As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment
**\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, Defendants make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law
Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 13 of 143

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a) (3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord*, *Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension*

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 14 of 143

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*& Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendants' factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

### 2. Undisputed Material Facts

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that

Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 15 of 143

town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 16 of 143

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at \*5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 17 of 143

of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011,

and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 18 of 143

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff

interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus.[5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 19 of 143

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1    Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2    The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3    As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4    The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5    For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 20 of 143

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

2022 WL 17517312

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)

|

Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted.[1]

### I. SUFFICIENCY OF THE COMPLAINT

#### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis*. *See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id. at 679* (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 21 of 143

## B. Analysis of the Complaint

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 22 of 143

defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

## Footnotes

1    Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 23 of 143

Clervrain v. Robbins, Not Reported in Fed. Supp. (2023)

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

 **\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt. No.
1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y.
Mar. 16, 2011) (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting
*Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, \*5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")
(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

 **\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend
out of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")
(quotation omitted). Should Plaintiff choose to amend the
complaint, the Court urges Plaintiff to review Magistrate

Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8827185
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of NEW YORK;
Watertown Police Dep't; Samaritan Hosp.;
and the Watertown District Attorney's

Office, Kristyna S. Mills, [1] Defendants.

5:23-CV-1237 (DNH/ML)
|
Signed December 21, 2023

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, Ulster Correctional
Facility, Post Office Box 800, Berme Road, Napanoch, New
York 12458.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint in the above
captioned action together with an application to proceed *in
forma pauperis* and inmate authorization filed by Mark A.
Roark ("Plaintiff") to the Court for review. (Dkt. Nos. 1,
2.) For the reasons discussed below, I grant Plaintiff's *in
forma pauperis* application and recommend that Plaintiff's
Complaint be dismissed in its entirety. (Dkt. Nos. 1, 2.)

**I. BACKGROUND**

Construed as liberally [2] as possible, Plaintiff's Complaint
appears to allege that his civil rights were violated
by Defendants The People of the State of New York,
Watertown Police Department ("WPD"), Samaritan Hospital,
and the Watertown District Attorney's Office (collectively
"Defendants"). (*See generally* Dkt. No 1.) More specifically,
the Complaint alleges that on an unspecified date, time, and
year, he was walking around an unspecified town where he
was "pulled to the side of the road" by officers employed by
Defendant WPD and asked why he was J-walking. (Dkt. No.
1 at 5, 7.) The Complaint alleges that, despite not being "put
through any test," the officers insisted that Plaintiff was under
the influence of a substance, placed handcuffs on him, and

transported him to the WPD headquarters. (Dkt. No. 1 at 5,
7.) The Complaint alleges that while at WPD headquarters,
"6 John Doe's came in and assaulted [Plaintiff] while being
fully [restrained]." (Dkt. No. 1 at 5.)

The Complaint alleges that after Plaintiff was assaulted, he
was taken to Defendant Samaritan Hospital, where he was
admitted for medical care. (Dkt. No. 1 at 5.)

The Complaint alleges that Defendant Watertown District
Attorney's Office "never spoke to [Plaintiff] nor read [him
his] rights" but that he sat in jail for ten days before being
transported by the New York State Police to the Clinton
County Jail for a probation violation. (Dkt. No. 1 at 6.) The
Complaint alleges that no new charges were filed against
Plaintiff, he did not plead guilty, and did not appear before a
judge. (*Id.*)

Notwithstanding these allegations, the Complaint also alleges
that on an unspecified date and at an unspecified time,
Plaintiff was "brought in[ ]front of a [j]udge and ... charged
[with] orderly misconduct." (Dkt. No. 1 at 8.)

Plaintiff alleges that as a result of the incidents alleged in
the Complaint, he has lost his dog, his belongings, and his
freedom. (Dkt. No. 1 at 8.)

Based on these factual allegations, Plaintiff appears to assert
the following nine claims: (1) a claim of false arrest against
Defendant WPD in violation of the Fourth Amendment and
42 U.S.C. § 1983; (2) a claim of excessive force against
Defendant WPD in violation of the Fourth Amendment and
42 U.S.C. § 1983; (3) a claim of failure to protect against
Defendant WPD in violation of the Fourth Amendment
and 42 U.S.C. and § 1983; (4) a claim that his right to
equal protection of the law was violated by Defendant WPD
pursuant to Fourteenth Amendment and 42 U.S.C. § 1983; (5)
a claim that Defendant Watertown District Attorney's Office
denied his right of access to the courts pursuant to First
Amendment and 42 U.S.C. § 1983; (6) claim of false arrest
against Defendant Watertown District Attorney's Office in
violation of the Fourth Amendment and 42 U.S.C. § 1983; (7)
a claim that Defendant Watertown District Attorney's Office
violated his right to freedom of speech pursuant to the First
Amendment and 42 U.S.C. § 1983; (8) a claim that Defendant
Watertown District Attorney's Office violated his due process
rights pursuant to Fourteenth Amendment and 42 U.S.C. §
1983; and (9) a claim that Defendant Watertown District
Attorney's Office violated his right to counsel pursuant to the

Sixth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1 at 5-7.) As relief, Plaintiff seeks $5,000,000.00 in damages and would like to "fully charge the officers from [his] assault." (Dkt. No. 1 at 5.)

**\*2** Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010).[3] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 2 at 3.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted. (Dkt. No. 2.)

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. 1915A(a) ("The court shall review ... as soon as practicable ... a complaint in a civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity.").[4]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

**\*3** A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).

"Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Defendants The People of the State of New York and Watertown District Attorney's Office [5]

To the extent Plaintiff seeks money damages against Defendants The People of the State of New York and Watertown District Attorney's Office, those claims are barred by the Eleventh Amendment. *Drawhorne v. Aloise*, 23-CV-1278, 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023) (Dancks, M.J.) (citing *Best v. Brown*, 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, 21-CV-0319, 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York— as barred by the Eleventh Amendment) *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (Suddaby, C.J.)).

Therefore, the undersigned recommends Plaintiff's Section 1983 claims against Defendants The People of the State of New York and Watertown District Attorney's Office be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A. *Drawhorne*, 2023 WL 8188396, at *3.

### B. Defendant Watertown Police Department

**\*4** "Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). Thus, Defendant WPD is not a proper party which would be amenable to suit.

To the extent that Plaintiff's claims are liberally construed as against the City of Watertown, I recommend that they be dismissed.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so

widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a single incident, during which an officer or officers employed by the Watertown Police Department did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendant WPD.

**\*5** As a result, I recommend that, to the extent Plaintiff's claims against Defendant WPD are construed as against the City of Watertown, they be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at \*5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### C. Defendant Samaritan Hospital

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or

a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (internal quotation marks and citation omitted).

"For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, 18-CV-1627, 2019 WL 2491717, at \*3 (E.D.N.Y. June 14, 2019) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Caballero*, 2019 WL 2491717, at \*3 (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Plaintiff is suing Samaritan Hospital, a private medical institution.[6] The Complaint alleges no facts suggesting that the hospital is under any of the aforementioned exceptions, or describing how Defendant Samaritan Hospital's actions are otherwise "fairly attributable to the state." Because Plaintiff has failed to plausibly allege that Defendant Samaritan Hospital acted under color of state law, the Complaint fails to state any claims for relief under § 1983. *See White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."). As a result, I recommend that the district court dismiss Plaintiff's claims alleged pursuant to § 1983. *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at \*2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *see Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at \*2 (N.D.N.Y. Nov.

2, 2021) (Baxter, M.J.) (citing *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010); *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999)) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.).

## V. OPPORTUNITY TO AMEND

**\*6** Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[7]

Here, I find that leave to replead would be futile with respect to Plaintiff's claims against Defendants The People of the State of New York and Watertown District Attorney's Office.[8]

Although I have serious doubts about whether Plaintiff can replead to assert an actionable claim against Defendants WPD and Samaritan Hospital, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution, I recommend that he be permitted to replead the Complaint with respect to those claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are

insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*7** **ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) to the Financial Deputy of the Clerk's office; and it is further

**ORDERED** that the Clerk of the Court add "Watertown District Attorney's Office, Kristyna S. Mills" as a defendant in this action; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Complaint (Dkt. No. 1) **WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants The People of the State of New York

and Watertown District Attorney's office, and **WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants WPD and Samaritan Hospital; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections

to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2023 WL 8827185

## Footnotes

1    The Clerk of the Court is directed to add Watertown District Attorney's Office, Kristyna S. Mills to the docket as a defendant in this action. (Dkt. No. 1 at 2.)

2    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

3    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

4    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

5    The Court presumes that Plaintiff intended to assert claims against the Jefferson County District Attorney's Office. Watertown, New York is located within Jefferson County and the current District Attorney of Jefferson County is Kristyna S. Mills.

6    "Samaritan Medical Center (Watertown, New York) is a 290-bed not-for-profit community medical center, offering a full spectrum of inpatient and outpatient health services." Samaritan Health, https://samaritanhealth.com/ (last visited December 20, 2023).

7    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

8    The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-CV-4427, 2023 WL 5102907, at *7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607, 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022). Moreover, the Second Circuit has directed that dismissals for lack of subject matter jurisdiction are to be made without prejudice. *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) (citing *Katz v. Donna Karan Co.,* 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.")) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed *without* prejudice.") (emphasis in original). Notwithstanding, the undersigned recommends dismissal with prejudice and without leave to amend because any amendment or attempt to bring these claims against Defendants The People of the State of New York and Watertown District Attorney's Office, would be futile. *Drawhorne,* 2023 WL 8188396, at *3 (recommending that the plaintiff's "Section 1983 claims against The People of the State of New York be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.").

9    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

10    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 32 of 143

2021 WL 707076
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,
v.
Brian BENEDICT and St. Joseph's Hospital, Defendants.

5:21-CV-073 (GLS/ATB)
|
Signed 02/04/2021

**Attorneys and Law Firms**

PATRICK GUILLORY, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, filed by plaintiff Patrick Guillory. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis (Dkt. No. 2), and for court appointed counsel (Dkt. No. 3).

**I. IFP Application**
Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses

of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555).

**II. Complaint**
Plaintiff alleges that on January 20, 2021 at approximately 12:15 a.m., he entered "defendant's establishment" to drop of his girlfriend's cell phone and charger. (Compl. at 2). When he attempted to exit the hospital lobby, plaintiff was "attacked by security staff ... and suffered right hand, right elbow, and back injuries." (Id.). Plaintiff asserts that he was attacked in retaliation for previously filing a lawsuit against defendant Brian Benedict, Chief of Security at defendant St. Joseph's Hospital ("SJH")[1]. Specifically, plaintiff alleges that three weeks before January 20, 2021 he filed a complaint against Benedict in small claims court because, on a prior occasion, "[Benedict's] officers used excessive force against [him]." (Id.). Plaintiff states that SJH surveillance video from January 20, 2021 shows that unidentified security personnel were "ordered by defendant Brian Benedict to beat [plaintiff] for filing a lawsuit against [him]." (Id.).

**\*2** Plaintiff's complaint states separate causes of action for retaliation and excessive use of force under § 1983. Plaintiff has simultaneously submitted a form complaint pursuant to Title VII of the Civil Rights Act of 1964, alleging the same causes of action. (Id. at 8-12).

**III. Section 1983**

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 33 of 143

Guillory v. Benedict; Not Reported in Fed. Supp. (2021)

## A. Legal Standards

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); see also *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citation omitted).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the state 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491771, at *3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

## B. Application

Plaintiff is suing SJH, a private medical institution. [2] He alleges no facts suggesting that the hospital is a state actor under any of the aforementioned exceptions, or describing how SJH's actions are otherwise "fairly attributable to the state." Likewise, SJH employee Benedict is also a private actor. Because plaintiff has failed to plausibly allege that either named defendant acted under color of state law, the complaint fails to state any claims for relief under § 1983. *See White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint,

are generally not proper § 1983 defendants because they do not act under color of state law."). Accordingly, the district court should dismiss plaintiff's retaliation and excessive force claims alleged pursuant to § 1983.

## IV. **Title VII**

**\*3** Plaintiff has also filed a form Title VII complaint with the court, but does not appear to allege employment discrimination. [3] Rather, plaintiff claims that he was assaulted by the security staff at SJH on January 20, 2021, in retaliation for filing a lawsuit against defendant Benedict alleging a prior incident during which plaintiff was the victim of excessive force at SJH.

## A. Legal Standards

Title VII of the Civil Rights Act of 1964 includes an anti-retaliation provision, making it unlawful "for an employer to discriminate against any of his employees ... because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "This anti-retaliation provision is intended to further the goals of the anti-discrimination provision 'by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees.' " *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). In order to present a prima facie case of retaliation under Title VII, a plaintiff must adduce "evidence sufficient to permit a rational trier of fact to find (1) that [ ] he engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

## B. Application

Plaintiff fails to assert any facts even suggesting that he enjoyed an employment relationship with SJH, [4] potential or realized–an essential element of any Title VII claim. The complaint also makes clear that plaintiff's alleged "protected activity" did not involve the assertion of any right under Title VII. Plaintiff's prior lawsuit against defendant Benedict was based on allegations of excessive force while he was visiting the hospital. As plaintiff does not plausibly state a cause of

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 34 of 143

action, for retaliation or any other Title VII violation, this claim should be dismissed.

## V. Subject Matter Jurisdiction - Diversity Jurisdiction

### A. Legal Standard

Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution. A court may exert subject matter jurisdiction over claims in which: (1) there is a federal question in that a colorable claim arises under the Constitution, laws or treaties of the United States, and/or if (2) there is complete diversity of citizenship between each plaintiff and all defendants and a minimum of $75,000 in controversy. 28 U.S.C. §§ 1331, 1332. In the absence of a basis for exercising jurisdiction, the case must be dismissed. See Fed. R. Civ. P. 12(h)(3).

### B. Application

**\*4** As previously discussed, the court recommends dismissing the federal claims raised in the complaint, namely plaintiff's alleged § 1983 and Title VII causes of action. To the extent that plaintiff's complaint attempts to allege claims outside the court's federal question jurisdiction, diversity jurisdiction would be required. [5] However, the complaint clearly articulates that the parties are not diverse: plaintiff concedes that plaintiff and both defendants "reside" in New York State. (Compl. at 1; Dkt. No. 1-1 at 1). He makes no further allegations regarding citizenship. Accordingly, plaintiff has failed to invoke this court's diversity jurisdiction. See Herrick Co., Inc. v. SCS Commc'n, Inc., 251 F.3d 315, 322-23 (2d Cir. 2001) (The party seeking to invoke the court's jurisdiction bears the burden of "demonstrating that the grounds for diversity exist and that diversity is complete.") (citations omitted). Because plaintiff has failed to state any claims for relief invoking either the court's federal question jurisdiction or diversity jurisdiction, dismissal is warranted for lack of subject matter jurisdiction.

## VI. Opportunity to Amend

### A. Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with

plaintiff's causes of action is substantive such that better pleading will not cure it. Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

The court is recommending dismissal of this action for, among other things, lack of subject matter jurisdiction. Thus, any dismissal must be without prejudice. Hollander v. Garrett, 710 F. App'x 35, 36 (2d Cir. 2018). This court has serious doubts about whether plaintiff can amend to assert any form of federal jurisdiction over the situation that plaintiff describes in his complaint. As there appears no basis for plaintiff to raise his claims against SJH and Benedict in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, Deul v. Dalton, No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend.

## VII. Motion for Counsel

### A. Legal Standards

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. See, e.g., United States v. Coven, 662 F.2d 162, 176 (2d Cir. 1981). However, pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to represent any person unable to afford counsel."). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. Hendricks v. Coughlin, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case,

the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

**\*5** *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

#### B. Application

Given the court's recommendation that the complaint be dismissed for failure to state a viable federal claim or otherwise establish subject matter jurisdiction, plaintiff has failed to satisfy the threshold requirement of "substance" and his request for counsel should thus be denied. However, even if plaintiff's complaint survived the court's initial review, plaintiff's motion for court appointed counsel is still subject to dismissal based on its prematurity and plaintiff's failure to satisfy the *Hodge* factors in any meaningful way. For example, plaintiff states in his motion that he will "go pro se if needed," and concedes he can "do discovery by [him]self." (Dkt. No. 3 at 1). Plaintiff has otherwise presented no "special reason" why appointment of counsel would be more likely to lead to a just determination at this time. Accordingly, plaintiff's motion for appointment of counsel is alternatively denied as premature.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**ORDERED,** that plaintiff's motion for court appointed counsel (Dkt. No. 3) is **DENIED**, and it is

**RECOMMENDED**, that this action be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity for amendment, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); *Fed. R. Civ. P.* 6(a), 6(e), 72.

#### All Citations

Not Reported in Fed. Supp., 2021 WL 707076

---

### Footnotes

1    The entity which plaintiff refers to as "St. Joseph's Hospital," is also known as "St. Joseph's Health." *See* https://www.sjhsyr.org/.

2    "St. Joseph's Health is a regional non-profit health care system based in Syracuse, New York." https://www.sjhsyr.org/about-us.

3    Plaintiff wrote "N/A" with respect to whether his action involved "employment discrimination based on race, color, religion, sex or national origin." Title VII. (Compl. at 9, ¶ 4).

**Guillory v. Benedict, Not Reported in Fed. Supp. (2021)**

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 36 of 143

4       As to plaintiff's claim against defendant Benedict, Title VII does not allow for individual liability. *See Berger v. New York State Office for People with Developmental Disabilities*, No. 6:16-CV-1277 (LEK/ATB), 2019 WL 4805389, at *2-3 (N.D.N.Y. Sept. 30, 2019) (dismissing Title VII claims, including retaliation claims, against individual defendants in their individual and official capacities).

5       This is assuming that plaintiff has stated some sort of legal basis for his non-federal claims. Here, plaintiff appears to have plead only federal claims and statutes in his complaint, presenting another reason for the court to dismiss for lack of subject matter jurisdiction.

---

End of Document                                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 37 of 143

2021 WL 706644
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

Brian BENEDICT et al., Defendants.

5:21-cv-73 (GLS/ATB)
|
Signed 02/23/2021

**Attorneys and Law Firms**

FOR THE PLAINTIFF: PATRICK GUILLORY, Pro Se, 753
James Street, Apt. #1129, Syracuse, NY 13203.

**ORDER**

Gary L. Sharpe, Senior District Judge

 **\*1**  The above-captioned matter comes to this court
following an Order and Report-Recommendation (R&R) by
Magistrate Judge Andrew T. Baxter duly filed February 4,
2021. (Dkt. No. 6.) Following fourteen days from the service
thereof, the Clerk has sent the file, including any and all
objections filed by the parties herein.

No objections having been filed, and the court having
reviewed the R&R for clear error, it is hereby

**ORDERED** that the Report-Recommendation and Order
(Dkt. No. 6) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**
without prejudice; and it is further

**ORDERED** that the Clerk is directed to close this case; and
it is further

**ORDERED** that the Clerk provide a copy of this Order to
plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 706644

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 38 of 143

Guillory v. Crouse Hospital, Not Reported in Fed. Supp. (2021)

2021 WL 5605260
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

CROUSE HOSPITAL, et al., Defendants.

5:21-CV-1177 (DNH/ATB)
|
Signed 11/02/2021

**Attorneys and Law Firms**

PATRICK GUILLORY, Plaintiff, pro se

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

 **\*1**  The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiff Patrick Guillory. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis. (Dkt. No. 3).

## I. IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 3). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505

F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555).

## II. Complaint

Plaintiff states that he filed a "complaint" against defendants Nursing Supervisor and Charge Nurse, employees of defendant Crouse Hospital, on October 18, 2021. (Compl. at 6). The complaint concerned plaintiff's opinion that the defendants were not "providing safe discharge plans." (Id.). Plaintiff then states that on October 27, 2021, he entered Crouse Hospital at 2:30 p.m. to visit his "soon to be wife." (Id.). With him, plaintiff brought "a framed poster of Tu-pac and some sliced cheese[.]" (Id.). He told the Nursing Supervisor and Charge Nurse that he "want[ed] to make sure she can[ ] have the poster." (Id.). Plaintiff alleges that he proceeded to his girlfriend's room and "clipped" and "filed" her nails. (Id.). After approximately thirteen minutes, defendant Crouse Security Staff "rolled up on [plaintiff] two deep ... asserting that [he] had to leave." (Id.). Plaintiff alleges that he responded by stating he did not do anything wrong, and "call the police ... I'm not going nowhere [sic]." (Id.). Plaintiff states that he and his girlfriend were eventually surrounded by seven Crouse Security Staff officers. (Id.). Plaintiff states that he recognized one of the officers as a "brother from [plaintiff's] hood." (Id.). That officer allegedly asked plaintiff to "come on man just go ... I know there is no reason but we have to listen to the nurses." (Id.). Plaintiff responded by asking why they were "kicking [him] out for nothing in the middle of ... doing [his] baby [sic] nails." (Id.) Plaintiff states that he "complied with their racist demands." (Id.) Plaintiff alleges that as he was escorted out, a different Crouse Security Staff officer stated, "Dez niggas." (Id.)

Guillory v. Crouse Hospital, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 39 of 143

**\*2** Plaintiff claims that the defendants are "deemed New York actors" by virtue of their certification by the State of New York. (*Id.*). He alleges that the defendants retaliated against him for "protected conduct ... i.e. [his] ... constitutional right to file a complaint." (*Id.*). He demands $500,000 in emotional damages, $600,000 in punitive damages, and more to be determined at trial. (*Id.* at 7).

## III. Section 1983

### A. Legal Standards

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); see also *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citation omitted).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at \*3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

### B. Application

Plaintiff is suing Crouse Hospital, a private medical institution, and its employees. Plaintiff has filed a considerable number of pro se complaints in this District over the past twelve months, and this is neither his first nor second attempt to sue a private actor under § 1983. *See Guillory v. Benedict*, No. 5:21-CV-073 (GLS/ATB), 2021 WL 707076, at \*2 (N.D.N.Y. Feb. 4, 2021), *report and recommendation adopted*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (dismissing § 1983 claim against private hospital); *Guillory v. Bishop Nursing Home*, No. 5:21-CV-410 (MAD/ATB), 2021 WL 1535474, at \*2 (N.D.N.Y. Apr. 19, 2021), *report and recommendation adopted*, 2021 WL 2431259 (N.D.N.Y. June 15, 2021) (dismissing § 1983 claim against privately owned, for-profit care facility).

In an effort to adequately plead state action in this case, plaintiff alleges that the named defendants should be deemed state actors because they are "certified by the State of New York," presumably as licensed health care providers.[1] Plaintiff's argument is unavailing, as it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them the authority to practice medicine within its borders. *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (no state action where state endowed private healthcare facility with the authority to treat patients; *White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999) (where state merely licensed private physicians and hospitals to treat patients, but in no way influenced the decisions, its relationship with the hospital defendant was insufficient to pass the close nexus/joint action test). Plaintiff has alleged no other basis upon which this court should find that the defendants are state actors. Accordingly, the district court should dismiss plaintiff's retaliation claim alleged pursuant to § 1983.

## IV. Opportunity to Amend

### A. Legal Standards

**\*3** Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131

(2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

The court is recommending dismissal of this action for, among other things, lack of subject matter jurisdiction. Thus, any dismissal must be without prejudice. *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018). As there appears no basis for plaintiff to raise his claims against Crouse Hospital and its employees in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, *Deul v. Dalton*, No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend.

### V. Bar Order

#### A. Legal Standard [2]

Courts have always recognized that they may resort to restrictive measures when responding to vexatious litigants. *In re Martin-Trigona*, 9 F.3d 226, 228-29 (2d Cir. 1993) (noting that the Supreme Court and other Circuits have imposed restrictive measures). The Court has the obligation to protect the public and the efficient administration of justice from individuals who have a history of vexatious and harassing litigation because it imposes needless expense on the parties and an unnecessary burden on the court. *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). In this context, courts have accepted the need for permanent injunctions as a result of extraordinary patterns of vexatious, harassing, and baffling litigation practices. *In re Aarismaa*, 233 B.R. 233, 247 (N.D.N.Y. 1999); *Toro v. Depository Trust Co.*, No. 97 Civ. 5383, 1997 WL 752729, at *4 (S.D.N.Y. Dec. 4, 1997) (identifying the All Writs Act as a legal basis to impose sanctions and enjoin a plaintiff who abuses the judicial process).

Under the All Writs Act, 28 U.S.C. § 1651, a court may sanction a vexatious litigant who abuses the judicial process by enjoining him from pursuing future litigation without leave of the court. *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69-70 (2d Cir. 1997); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004). An enjoinder may be permanent or may impose the less drastic remedy of a "leave to file" requirement. *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994)

(noting the court's ability to levy a leave to file requirement); *Raffee v. John Doe*, 619 F. Supp. 891 (S.D.N.Y. 1985) (granting a permanent injunction restraining the plaintiff from filing any further actions); *In re Aarismaa*, 233 B.R. at 247 (observing that such "restrictive measure[s] have included foreclosing the filings of pleadings in a particular case or requiring that leave of court first be sought").

Before regulating a truculent and persistent litigant by restricting future access to the court, a court should consider

> **\*4**  (1) the litigant's history of the litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Toro v. Depository Trust Co.*, 1997 WL 752729, at *4 (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

### B. Application

Plaintiff has displayed a perpetual abuse of the judicial process in this District. As to the first relevant factor, plaintiff has filed ten complaints in the Northern District over the past ten months. Several of the complaints, like the one currently pending before this court, have been rejected at the initial review stage for lack of jurisdiction. [3] The larger portion of plaintiff's recent, frivolous filings were disposed of after plaintiff sought voluntary dismissal of these claims. [4] Notably, plaintiff sought dismissal while his claims were actively pending before the court for some capacity of review. Plaintiff has one other matter currently pending in the Northern District, in which he was afforded an extension of time to amend his complaint and correct the deficiencies therein. *See Guillory v. Upstate University Police*, No. 5:21-CV-1117 (GLS/ATB) (Dkt. No. 4). Across the board,

Guillory v. Crouse Hospital, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 41 of 143

plaintiff's filings are replete with vulgarities and unnecessary expletives; they have also become increasingly hostile and disrespectful toward the court. [5] Plaintiff's aggressive and threatening conduct has compelled another judge in this District to permanently recuse herself from his lawsuits.

Second, plaintiff cannot possibly have an objective good-faith expectation of prevailing in his lawsuits. Take, for example, the case presently pending on initial review. This court has repeatedly explained to plaintiff that his unremitting claims against various private entities fail to state a claim under § 1983. Nevertheless, plaintiff persists. It has become clear that plaintiff perceives this court as a venue to air his grievances against all who have wronged him, regardless of whether the alleged injustices actually state a claim for which relief may be granted in federal court. On one occasion, plaintiff admitted that he was seeking dismissal of his frivolous action because, among other reasons, he wrote the complaint while intoxicated. *Guillory v. McMahon*, 5:21-CV-912 (TJM/ML) (Dkt. No. 4).

 **\*5** Third, although plaintiff is a pro se litigant, he has extensive litigation experience in the Northern District of New York that extends back to 2013. Fourth, plaintiff has posed an unnecessary burden on the court because "every paper [he has] filed with the Clerk of this Court, no matter how repetitious or frivolous, [has] require[d] some portion of the institution's limited resources." *In re McDonald*, 489 U.S. 180, 184 (1989). Arguably more frustrating, and burdensome, than plaintiff's frivolous complaints are his post-filing acknowledgments of his meritless claims, *after* the court has invested its time and resources into deciphering the basis of his filings and commenced drafting an opinion.

Fifth, "in light of plaintiff's litigation history, it does not appear that any other sanction, short of an injunction, will be adequate to protect the court from plaintiff's insatiable appetite for continued litigation." *Smith v. Jackson*, No. 5:21-CV-0005 (MAD/ML), 2021 WL 3518327, at \*6 (N.D.N.Y. Jan. 11, 2021), *report and recommendation adopted*, 2021 WL 2775003 (N.D.N.Y. July 2, 2021) (citing *Ulysses I & Co., Inc. v. Feldstein*, No. 01-CV-3102, 2002 WL 1813851 (S.D.N.Y. Aug. 8, 2002), *aff'd sub nom, Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003)).

Accordingly, pursuant to 28 U.S.C. § 1651(a) and the court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings, I recommend that plaintiff be prohibited from making any future pro se filings in this District without prior leave of the Chief Judge. See *Yefimova v. Trustco Bank*, No. 17-CV-0730 (GTS/DJS), 2017 WL 4216987, at \*3-4 (N.D.N.Y. July 31, 2017) (recommending a bar order where the plaintiff was deemed a persistent, frivolous litigator), *report and recommendation adopted*, 2017 WL 4157337 (N.D.N.Y. Sept. 18, 2017).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 3) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that this action be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity for amendment, and it is

**RECOMMENDED** that this matter be referred to Chief District Judge Glenn T. Suddaby to issue a pre-filing injunction permanently enjoining plaintiff from filing any other pro se cases in this District without leave of the Chief District Judge, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5605260

**Guillory v. Crouse Hospital, Not Reported in Fed. Supp. (2021)**

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 42 of 143

## Footnotes

1    It is unclear what state certification plaintiff attributes to the defendant Crouse Security Staff officers.

2    This summary of the applicable law quotes liberally from *Yefimova v. Trustco Bank*, No. 1:17-CV-730 (GTS/DJS), 2017 WL 4216987, at *3 (N.D.N.Y. July 31, 2017), *report and recommendation adopted*, 2017 WL 4157337 (N.D.N.Y. Sept. 18, 2017).

3    *See Guillory v. Benedict,* 5:21-CV-073 (GLS/ATB), Dkt. Nos. 6, 7; *Guillory v. Bishop Nursing Home*, 5:21-CV-410 (MAD/ATB) (Dkt. Nos. 6, 8).

4    *See Guillory v. Walsh*, 5:21-CV-506 (GTS/ATB) (Dkt. Nos. 4, 6, 7); *Poirier v. Bishop Rehabilitation and Nursing Home*, 5:21-CV-571 (BKS/ATB) (Dkt. Nos. 5, 6); *Guillory v. Boost Mobile*, 5:21-CV-623 (DNH/ML) (Dkt. Nos. 4, 5); *Guillory v. Clark*, 5:21-CV-647 (GTS/ATB) (Dkt. Nos. 4, 5); *Guillory v. Helio Health,* 5:21-CV-693 (GTS/ATB) (Dkt. Nos. 5, 6); *Guillory v. McMahon*, 5:21-CV-912 (TJM/ML) (Dkt. Nos. 4, 5).

5    *See, e.g., Guillory v. McMahon*, 5:21-CV-912 (TJM/ML) (Dkt. No. 1) ("Your Honor, you can run your mouth in your R & R ..."); *Guillory v. Clark,* 5:21-CV-647 (GTS/ATB) (Dkt. No. 1) ("Under penalty of perjury ... figure it out ... if you join the defendants crap ... your [Honor] ... you are just a racist like them ..."); *Guillory v. Helio Health*, 5:21-CV-693 (GTS/ATB) (Dkt. No. 5) ("Upon review of the Second Circuit cases, I guess you was fucking right ... I hope you both make it to the Second Circuit along with your co worker [sic] who slicked [sic] the US [Marshals] on me ... paranoid and shit.").

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 5585926
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

NURSING SUPERVISOR et al., Defendants.

5:21-CV-1177
|
Signed 11/30/2021

**Attorneys and Law Firms**

PATRICK GUILLORY, Plaintiff, Pro Se, 50 Caton Drive,
Apt. No 54-C, Dewitt, NY 13214.

OF COUNSEL: ADAM P. MASTROLEO, ESQ., BOND
SCHOENECK & KING, PLLC, Attorneys for Defendants,
One Lincoln Center, Syracuse, NY 13202.

## ORDER ON REPORT & RECOMMENDATION

David N. Hurd, United States District Judge

**\*1** On October 28, 2021, *pro se* plaintiff Patrick
Guillory ("plaintiff") filed this action against several hospital
employees alleging that they retaliated against him for
engaging in certain constitutionally protected conduct. Dkt.
No. 1. Plaintiff also sought leave to proceed *in forma pauperis*
("IFP application"). Dkt. No. 3.

On November 2, 2021, U.S. Magistrate Judge Andrew T.
Baxter granted plaintiff's IFP application for the limited

purpose of filing and advised by Report & Recommendation
("R&R") that plaintiff's complaint be dismissed without
prejudice and without leave to amend. Dkt. No. 4. In
light of plaintiff's extensive history of filing frivolous
complaints in this judicial district, Judge Baxter's R&R
further recommended that this matter be referred to Chief
District Judge Glenn T. Suddaby for the issuance of a pre-
filing injunction. *Id.*

Plaintiff has not filed objections, and the time period in which
to do so has expired. *See* Dkt. No. 4. Upon review for clear
error, the R&R will be accepted and adopted in all respects.
*See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED WITHOUT LEAVE
TO AMEND; and

3. This matter is REFERRED to Chief Judge Suddaby for
the issuance of a pre-filing injunction permanently enjoining
plaintiff from filing any other *pro se* cases in this District
without leave of the Chief District Judge.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5585926

**End of Document**      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 125512
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of
NEW YORK et al., Defendants.

5:23-CV-1237
|
Signed January 11, 2024

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, 23-R-2152, Ulster
Correctional Facility, P.O. Box 800, Berme Road, Napanoch,
NY 12458.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On September 29, 2023, *pro se* plaintiff Mark A.
Roark ("plaintiff"), who is currently incarcerated at Ulster
Correctional Facility, initially filed this civil action in the U.S.
District Court for the Western District of New York. Dkt.
No. 1. Along with his complaint, plaintiff sought leave to
proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.
But the case was transferred to this judicial district because it
involved events that occurred in Watertown, New York, which
is located in Jefferson County. Dkt. Nos. 3, 4.

On December 21, 2023, U.S. Magistrate Judge Miroslav
Lovric granted plaintiff's IFP Application and advised
by Report & Recommendation ("R&R") that plaintiff's
complaint be dismissed with leave to replead some claims but
not others. Dkt. No. 5. As Judge Lovric explained, plaintiff's
claims for money damages against the State of New York
or the Watertown District Attorney's Office (or one of its
named employee for actions taken in the course of her official
duties) were barred by Eleventh Amendment immunity. *Id.*
So Judge Lovric recommended that those claims be dismissed
for lack of subject matter jurisdiction. *Id.* But Judge Lovric

concluded that plaintiff might be able to plead one or more
actionable claims for relief against defendant Watertown
Police Department and/or defendant Samaritan Hospital. *Id.*

Plaintiff has not filed objections, and the time period in which
to do so has expired. *See* Dkt. No. 5. Upon review for clear
error, the R&R is accepted and will be adopted in all respects.
*See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is
ACCEPTED;

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED;

3. Plaintiff's claims against defendants The People of the State
of New York and Watertown District Attorney's Office are
DISMISSED without prejudice but without leave to amend
for lack of subject matter jurisdiction;

4. Plaintiff's claims against defendants Watertown Police
Department and Samaritan Hospital are DISMISSED with
leave to amend;

5. Plaintiff shall have THIRTY DAYS in which to submit an
amended complaint in accordance with the instructions set
forth in Judge Lovric's R&R;

6. If plaintiff timely files an amended complaint, this matter
shall be referred to Judge Lovric for further review or other
action as appropriate; and

7. If plaintiff does not timely file an amended complaint, the
Clerk of the Court is directed to close this matter without
further Order of the Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 125512

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1702010
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David John CAMPBELL, Plaintiff,

v.

NEW YORK STATE POLICE; Steven A. Negrelli,
Superintendent of New York State Police; Broome
County; Broome County Sheriff's Office; David Harder,
Broome County Sheriff; Mark Hamilton, Deputy
Sheriff for Broome County; Brian Curtis, CO for
Broome County; Broome County District Attorney's
Office; Lucas Finley, Assistant District Attorney for
Broome County in official and individual capacities;
City of Binghamton; Jared M. Kraham, Mayor of City
of Binghamton, New York in official and individual
capacities; Binghamton Police Department; Chief
Joseph Zikuski, Binghamton Police Department;
Nicholas Mushalla, Officer for Binghamton Police
Department; Bryan Sostowski, Detective for Binghamton
Police Department; UHS Binghamton General
Hospital, City owned hospital/Department of City of
Binghamton; Jessica R. Raymond, Nurse Practitioner
for UHS Binghamton General Hospital; Unknown
1, in official and individual capacities; Unkown 2,
in official and individual capacities; and Unknown
3, in official and individual capacities, Defendants.

3:23-CV-1337 (AMN/ML)
|
Signed April 19, 2024

**Attorneys and Law Firms**

DAVID JOHN CAMPBELL, Plaintiff, Pro Se, 5 Bradley
Street, Binghamton, New York 13904.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a complaint in the above captioned
action together with an amended application to proceed
*in forma pauperis* and letter motion, filed by David John
Campbell ("Plaintiff") to the Court for review. (Dkt. Nos.
1, 5, 6.) For the reasons discussed below, I (1) grant

Plaintiff's amended *in forma pauperis* application (Dkt. No.
5), (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed (a) in part with leave to amend, and (b) in part
without leave to amend, and (3) recommend that Plaintiff's
Letter Request/Motion (Dkt. No. 6) be denied as moot.

## I. INTRODUCTION

Construed as liberally [1] as possible, Plaintiff's Complaint
alleges that his rights were violated by Defendants
New York State Police ("Defendant NYSP"), Steven
A. Negrelli, Broome County, Broome County Sheriff's
Office ("Defendant BCS"), David Harder, Mark Hamilton,
Brian Curtis, Broome County District Attorney's Office
("Defendant BCDA"), Lucas Finley, City of Binghamton,
Jared M. Kraham, Binghamton Police Department
("Defendant BPD"), Chief Joseph Zikuski, Nicholas
Mushalla, Bryan Sostowski, UHS Binghamton General
Hospital ("Defendant UHS"), Jessica R. Raymond, Unknown
1, Unknown 2, and Unknown 3 (collectively "Defendants").
(*See generally* Dkt. No. 1.) The Complaint is difficult to
follow and includes terse sentences that make little sense.

As best as the undersigned can decipher, the Complaint
alleges that on May 4, 2022, Plaintiff called Defendant
BCS to inquire about "local gun policies." (Dkt. No. 1
at 8.) The Complaint alleges that Plaintiff was directed to
surrender "what he had" so, on May 5, 2022, he "show[ed]
up to [Defendant] BCS ... to surrender property." (*Id.*) The
Complaint alleges that Plaintiff was detained, "unreasonably
searched and property seized by [Defendant] Hamilton." (*Id.*)

The Complaint alleges that at some point in time, Plaintiff
attempted to "redress again" (presumably the issue with the
property that he surrendered) but that his attempt "triggered
a *blue alert*" wherein, Plaintiff was falsely accused of
threatening law enforcement officers. (Dkt. No. 1 at 8.)
Plaintiff alleges that, as a result, he "had to leave his job out
of safety concerns." (*Id.*)

The Complaint alleges that at, at some point in time,
Defendant BPD attempted to enter Plaintiff's apartment and
claimed that someone inside the apartment called 911. (Dkt.
No. 1 at 8.)

The Complaint alleges that on November 23, 2023, Plaintiff
was pulled over by Defendant NYSP "just after updating his
professional credentials." (*Id.*) Plaintiff alleges that the stop
was never documented by Defendant NYSP. (*Id.*)

The Complaint alleges that on January 13, 2023, Plaintiff found his vehicle vandalized "and completely disabled." (Dkt. No. 1 at 8.) Notwithstanding the damage, Plaintiff alleges that he was able to "rig" the car to make it operable. (*Id.*) The Complaint alleges that Plaintiff's wife called Defendant BPD to report the crime and Defendant Mushalla responded. (*Id.*) Plaintiff alleges that Defendant Mushalla and another officer confiscated "an undocumented amount of property exceeding $3,000 in value." (Dkt. No. 1 at 8-9.)

**\*2** The Complaint alleges that on January 14, 2023, approximately five officers employed by Defendant BPD went to Plaintiff's house and claimed that they had a warrant to enter. (Dkt. No. 1 at 9.) The Complaint alleges that Plaintiff was in only boxer-style underwear at the time officers arrived and was inappropriately touched and taunted during the search. (*Id.*) The Complaint alleges that Defendant Sostowski tried to trick Plaintiff into signing a consent form by telling Plaintiff that it was a confiscation form. (*Id.*)

The Complaint alleges that as a result of the stress from the searches, "[k]nowing the police were harassing [him,] his wife [was] turning people against [him]," and "knowing someone [was] out to get Plaintiff but no[ ]one believing [him,] Plaintiff checked into the local hospital for [an] evaluation." (Dkt. No. 1 at 9.) The Complaint alleges that on January 16, 2023, Defendant BPD lied to Defendant Raymond about having warrants to search his home, which led to misdiagnosis and mistreatment. (*Id.*)

The Complaint alleges that Plaintiff was involuntarily committed to Defendant UHS for six days without due process or Plaintiff's consent. (Dkt. No. 1 at 9.) The Complaint alleges that on January 17, 2023, while Plaintiff was involuntarily committed, Defendant Sostowski—with assistance from Defendants BCDA and Finley—filed false documents with the Court pursuant to the New York State red flag laws. (Dkt. No. 1 at 9-10.)

The Complaint alleges that Defendants BPD, BCS, and UHS included false records of encounters with Plaintiff, which resulted in Plaintiff permanently losing his gun rights. (Dkt. No. 1 at 10.) The Complaint alleges that neither Plaintiff nor his wife were ever charged with a crime. (*Id.*)

The Complaint alleges that All Star Pawn informed Plaintiff that "gun pieces were sabotaged/switched by [Defendant BCS]." (Dkt. No. 1 at 10.)

Based on these factual allegations, the Complaint appears to allege the following nine causes of action: (1) a claim that on May 5, 2022, Defendant Hamilton conducted an unreasonable search and seizure of Plaintiff's personal items in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (2) a claim that Defendant BCS retaliated against Plaintiff by creating false information to conceal its unreasonable searches in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (3) a claim that on January 16, 2023, Defendant BPD's actions intentionally influenced Defendant UHS's involuntary commitment of Plaintiff in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (4) a claim that on January 13, 2023, Defendant Mushalla unreasonably seized property valued at over $3,000 and created false business records in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (5) a claim that on January 14, 2023, Defendant BPD officers unreasonably searched Plaintiff's home causing $1,000 in damages in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983; (6) a claim that Defendant Sostowski filed a false petition in violation of the Fourth, Seventh, and Fourteenth Amendments and 42 U.S.C. § 1983; (7) a claim that Defendants NYSP, City of Binghamton, BPD, Broome County, BCS, and UHS failed to provide services in violation of the First, Fifth, Seventh, and Fourteenth Amendments and 42 U.S.C. § 1983; (8) a claim that on November 23, 2022 at 10:30 p.m., an unknown officer employed by Defendant NYSP conducted a traffic stop of Plaintiff without calling in the stop and was verbally aggressive during the encounter in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983; and (9) a claim that between January 15, 2023, and January 23, 2023, Defendant UHS falsified records in the scheme devised by Defendant BPD in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983. (Dkt. No. 1 at 12-15.) As relief, Plaintiff seeks, *inter alia*, (1) "$10,000 from each [D]efendant per each seized item per day every single day kept from Plaintiff," (2) "Supervised Policy improvement(s) to [Defendants NYSP, Broome County, City of Binghamton, and UHS] preventing similar acts," (3) "immediate deactivation of ERPO and TERPO," (4) destruction of all inaccurate documents with corrected records created to accurately reflect Plaintiff's encounters with Defendants and "$10,000 per day for every

day record releases and corrections not completed," (5) the return of Plaintiff's property and "$3,000,000 for items not returned to Plaintiff after release," (6) $2,000,000 in punitive damages, (7) contempt of court proceedings against Defendants, and (8) an order that in the future, Plaintiff be handcuffed in the front and/or that Defendants use two pars of handcuffs in the back. (*Id.* at 16-18.)

## II. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

**\*3**  When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2]  After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 5), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted. [3]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.,* 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted).

**\*4**  "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed for the following six reasons.

First, the undersigned finds Plaintiff's Complaint factually frivolous. [4]  To the extent allegations are discernible from

the pleading, they are "wholly incredible, irrational, and/or appear to be the product of delusion or fantasy." *Curmen v. U.S. Gov't*, 18-CV-1546, 2018 WL 2324060, at *3 (E.D.N.Y. May 22, 2018). The Complaint alleges a wide-ranging conspiracy among various law enforcement agencies and a hospital to seize Plaintiff's firearms and personal property. (*See generally* Dkt. No. 1.)

Courts routinely dismiss this kind of *pro se* complaint. *See Gallop v. Cheney*, 08-CV-10881, 2010 WL 909203, at *5 (S.D.N.Y. Mar. 15, 2010) ("Courts have not hesitated to dismiss complaints asserting delusional claims of conspiracy."), *aff'd*, 642 F.3d 364 (2d Cir. 2011); *Ceparano v. Suffolk Cnty.*, 10-CV-2030, 2010 WL 5437212, at *3 (E.D.N.Y. Dec. 15, 2010) ("[P]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit.").

For example, in *Harvey v. Kirk*, 19-CV-0411, 2019 WL 5150035, at *4 (N.D.N.Y. May 9, 2019) (Baxter, M.J.), the trial court *sua sponte* dismissed as frivolous a *pro se* litigant's claim without leave to amend where the plaintiff alleged that government agents were surveilling and harassing him using telepathic methods. *Harvey*, 2019 WL 5150035, at *4, *report and recommendation adopted by*, 2019 WL 3491264 (N.D.N.Y. Aug. 1, 2019) (D'Agostino, J.); *see also Ciltas v. Wang*, 20-CV-2520, 2020 WL 6146865, at *1 (E.D.N.Y. Oct. 20, 2020) (dismissing as frivolous the plaintiff's claims that a defendant had been trying to murder her for years, had made false statements and hidden cameras in her home and vehicle and hacked her electronic devices); *Raoul v. City of N.Y. Police Dep't*, 14-CV-1787, 2015 WL 1014204, at *1-2 (E.D.N.Y. Mar. 6, 2015) (dismissing as factually frivolous a complaint alleging a "wide-ranging conspiracy" between state and federal agencies that involved a campaign to harass, torture, and harm the plaintiff). As a result, I recommend that Plaintiff's Complaint be dismissed in its entirety because it is factually frivolous.

 **\*5** Second, to the extent that the Complaint seeks monetary damages, it asserts claims against several Defendants who are immune. More specifically, Plaintiff's claims against Defendant NYSP "are barred by both the Eleventh Amendment and the language of § 1983." *Kilcher v. New York State Police*, 19-CV-0157, 2019 WL 2511154, at *2-3 (N.D.N.Y. June 18, 2019) (D'Agostino, J.) (citing *Pierce v. New York State Police (Troop D Lowville)*, 05-CV-1477, 2011 WL 1315485, at *13 (N.D.N.Y. Apr. 4, 2011)). To

the extent that the Complaint alleges any claims against Defendant Negrelli in his official capacity as Superintendent of Defendant NYSP, those claims are also barred pursuant to the Eleventh Amendment immunity applicable to Defendant NYSP. *See Swanhart v. New York*, 20-CV-6819, 2022 WL 875846, at *4-5 (S.D.N.Y. Mar. 24, 2022) (citing *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988)) ("The immunity provided by the Eleventh Amendment extends to actions seeking damages against state officials sued in their official capacities if the state is the real party in interest."). Moreover, Plaintiff's claims against Defendant BCDA and Defendant Finley in his official capacity are barred by the Eleventh Amendment. *Roark v. New York*, 23-CV-1237, 2023 WL 8827185, at *3 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (citations omitted) (recommending that the plaintiff's claims against the Watertown District Attorney's Office be dismissed as barred by the Eleventh Amendment), *report and recommendation adopted by*, 2024 WL 125512, at *1 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.). As a result, I recommend that, in the alternative, Plaintiff's claims seeking monetary damages against Defendants NYSP, Negrelli in his official capacity, BCDA, and Finely in his official capacity, be dismissed because they are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B).

Third, the Complaint failed to allege the personal involvement of Defendants Negrelli, Harder, Curtis, Kraham, Zikuski, Unknown 1, Unknown 2, and Unknown 3 in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."). The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Here, although

Plaintiff names Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski as defendants, the body of the Complaint lacks any allegations of wrongdoing by them. (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

Fourth, Defendants BPD and BCS, which are merely departments of a municipality, are not amenable to suit.[5] *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants BPD and BCS be dismissed because they are not entities amenable to suit.

**\*6** Fifth, the Complaint fails to allege facts plausibly suggesting that municipal Defendants Broome County and the City of Binghamton violated Plaintiff's constitutional rights through the execution of their policies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (outlining the limited circumstances under which a municipality may be liable under Section 1983 and holding that only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (holding that official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law."). A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).

Here, there is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a series of discrete incidents, during which an officer or officers employed by Defendants City of Binghamton and Broome County did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendants City of Binghamton and Broome County.

As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants City of Binghamton and Broome County be dismissed for failure to state a claim upon which relief may be granted. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

Sixth, to the extent that the Complaint seeks the return of property confiscated by the police, such a claim "is not cognizable in federal court if the state courts provide a remedy for the deprivation of that property" and "New York provides such an adequate post-deprivation remedy." *Winters v. New York*, 20-CV-8128, 2020 WL 6586364, at *4 (S.D.N.Y. Nov. 9, 2020) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988); *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)). "Because Plaintiff does not allege facts suggesting that his remedy under state law is in any way inadequate or inappropriate, his claim with respect to the seized property must be dismissed." *Winters*, 2020 WL 6586364, at *4 (citing *Butler v. Castro*, 896 F.2d 698, 700-04 (2d Cir. 1990)). As a result, I recommend that, in the alternative, Plaintiff's claims seeking the return of his seized property be dismissed.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be asserted." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to

amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

**\*7** Here, an amended pleading cannot cure the defects outlined above with respect to Plaintiff's claims against Defendants (1) NYSP, BCDA, Negrelli in his official capacity, and Finley in his official capacity because they are immune from suit, and (2) BPD and BCS because they are not entities amenable to suit. As a result, I recommend that the claims against those defendants be dismissed without prejudice but without leave to amend.

Although I have serious doubts about whether Plaintiff can replead to assert actionable claims against Defendants (1) Negrelli in his individual capacity, (2) Broome County, (3) Harder, (4) Hamilton, (5) Curtis, (6) Finley in his individual capacity, (7) City of Binghamton, (8) Kraham, (9) Zikuski, (10) Mushalla, (11) Sostowski, (12) UHS, (13) Raymond, (14) Unknown 1, (15) Unknown 2, and (16) Unknown 3, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution and in light of Plaintiff's status as a *pro se* litigant, I recommend that he be permitted leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each

alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI. PLAINTIFF'S LETTER REQUEST/MOTION

On March 26, 2024, Plaintiff filed a Letter Request/ Motion. (Dkt. No. 6.) To the extent that the Court adopts the recommendations contained herein which recommend dismissal of the Complaint, I recommend that Plaintiff's Letter Request/Motion be dismissed as moot.

In the alternative, as best as the undersigned can glean from Plaintiff's Letter Request/Motion, Plaintiff is merely requesting that the Court rule on his motion for IFP. (Dkt. No. 6.) This Order and Report-Recommendation rules on Plaintiff's amended IFP application and thus, Plaintiff's Letter/Motion is moot.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 5) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) Negrelli in his individual capacity, (2) Broome County, (3) Harder, (4) Hamilton, (5) Curtis, (6) Finley in his individual capacity, (7) City of Binghamton, (8) Kraham, (9) Zikuski, (10) Mushalla, (11) Sostowski, (12) UHS, (13) Raymond, (14) Unknown 1, (15) Unknown 2, and (16) Unknown 3, because it is factually frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**\*8** **RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) NYSP, BCDA,

Negrelli in his official capacity, and Finley in his official capacity because they are immune from suit, and (2) BPD and BCS because they are not entities amenable to suit pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DENY** Plaintiff's Letter Request/Motion (Dkt. No. 6) as moot; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2024 WL 1702010

---

## Footnotes

1   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2   The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3   Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

4   While the undersigned has no basis to doubt the sincerity of Plaintiff's beliefs, the allegations exhibit a level of delusional paranoia that makes the continuation of this vexatious litigation an unjustified expenditure of public resources.

5   The Complaint alleges that Defendant UHS is a "City owned hospital/Department of City of Binghamton." (Dkt. No. 1 at 6.) Thus, Defendant UHS, as a department of Defendant City of Binghamton, would also not be amenable to suit. Notwithstanding Plaintiff's allegation that Defendant UNS is a municipal-run hospital, it appears that Defendant UHS is a private medical institution. *See* New York United Health Services, https://www.nyuhs.org/why-choose-us/leadership-performance (last visited Apr. 4, 2024) ("UHS is a not-for-profit, community-benefit organization governed by a board of directors whose members are selected from the communities we serve."). The Complaint fails to allege facts plausibly suggesting that Defendant UHS's actions are "fairly attributable to the state" and thus, fails to state any claims for relief pursuant to 42 U.S.C. § 1983. *See Roark*, 2023 WL 8827185, at *5 (citing *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *Guillory v. Crouse*

*Hosp.*, 21-CV-1177, 2021 WL 5605260, at *2 (N.D.N.Y. Nov. 2, 2021) (Baxter, M.J.) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.)) (recommending dismissal of the § 1983 claims against Samaritan Hospital, a private medical institution, because the complaint failed to allege facts plausibly suggesting how its actions are "fairly attributable to the state.").

6    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

7    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

8    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3063674
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David John CAMPBELL, Plaintiff,

v.

NEW YORK STATE POLICE, et al., Defendants.
David J. Campbell, Plaintiff,

v.

City of Binghamton, NY, et al., Defendants.

3:23-cv-01337 (AMN/ML), 3:24-cv-00067 (AMN/ML)
|
Signed June 20, 2024

**Attorneys and Law Firms**

DAVID J. CAMPBELL, Binghamton, NY 13904, Plaintiff
pro se

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On October 30, 2023, Plaintiff *pro se* David John
Campbell ("Plaintiff"), filed a civil rights complaint pursuant
to 42 U.S.C. § 1983 ("Section 1983") against Defendants
New York State Police ("NYSP"), Steven A. Negrelli,
Broome County, Broome County Sheriff's Office ("BCSO"),
David Harder, Mark Hamilton, Brian Curtis, Broome County
District Attorney's Office ("BCDA"), Lucas Finley, City of
Binghamton ("Binghamton"), Jared M. Kraham, Binghamton
Police Department ("BPD"), Chief Jospeh Zikuski, Nicholas
Mushalla, Bryan Sostowski, UHS Binghamton General
Hospital ("UHS"), Jessica R. Raymond, Unknown 1,
Unknown 2, and Unknown 3. Case No. 3:23-cv-01337-AMN-
ML (N.D.N.Y.) (the "2023 Action"), Dkt. No. 1 (the "2023
Complaint"). [1] In the 2023 Complaint, Plaintiff asserts nine
claims, which generally allege the mistreatment of Plaintiff
and his property in violation of his First, Fourth, Fifth,
Sixth, Seventh, and Fourteenth Amendment rights, and seeks
declaratory, injunctive, and monetary relief. *See id.* at 12-15.
Plaintiff also sought leave to proceed *in forma pauperis*
("IFP"), 2023 Action, Dkt. No. 2, which motion was denied,
2023 Action, Dkt. No. 4, and on March 25, 2024, Plaintiff
filed a second IFP motion, 2023 Action, Dkt. No. 5.

On January 16, 2024, Plaintiff filed a second civil rights suit
pursuant to Section 1983 against Defendants Binghamton,
Jared M. Kraham, BPD, Chief Joseph Zikuski, Detective
Bryan Sostowski, Broome County, Broome County Clerk's
Office, Judith E. Osburn, Honorable Judge Joseph A.
Cawley, and Unknown(s). Case No. 3:24-cv-00067-AMN-
ML (N.D.N.Y.) (the "2024 Action"), Dkt. No. 1 (the "2024
Complaint"). In the 2024 Complaint, Plaintiff asserts two
claims related to the allegations in the 2023 Complaint for
violations of Plaintiff's own and his wife's due process rights,
and seeks declaratory, injunctive, and monetary relief. *See id.*
at 5-7. Plaintiff also sought leave to proceed IFP, 2024 Action,
Dkt. No. 2, which motion was denied, 2024 Action, Dkt. No.
4, and on March 22, 2024, Plaintiff filed a second IFP motion,
2024 Action, Dkt. No. 5. [2]

Both actions were referred to United States Magistrate
Judge Miroslav Lovric, who, on April 19, 2024, issued
an Order and Report-Recommendation in the 2023 Action
(1) granting Plaintiff's IFP motion; (2) recommending
that Plaintiff's claims against Defendants Negrelli in his
individual capacity, Broome County, Harder, Hamilton,
Curtis, Finley in his individual capacity, Binghamton,
Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond,
Unknown 1, Unknown 2, and Unknown 3 be dismissed with
leave to replead; and (3) recommending that Plaintiff's claims
against Defendants NYSP, BCDA, Negrelli in his official
capacity, Finley in his official capacity, BPD, and BCS be
dismissed without leave to replead. 2023 Action, Dkt. No. 7 at
16-18 (the "2023 Action Report-Recommendation"). Also on
April 19, 2024, Magistrate Judge Lovric issued an Order and
Report-Recommendation in the 2024 Action (1) granting the
IFP Motion; (2) recommending that Plaintiff's claims against
Defendants Binghamton, Broome County, Kraham, Zikuski,
and Unknown(s) be dismissed with leave to replead; and
(3) recommending that Plaintiff's claims against Defendants
Crawley, Osburn, Broome County Clerk's Office, and BPD be
dismissed without leave to replead. 2024 Action, Dkt. No. 7 at
16-18 (the "2024 Action Report-Recommendation"). Finally,
in light of the above recommendations, Magistrate Judge
Lovric recommended denying Plaintiff's Letter Requests as
moot. 2023 Action, Dkt. No. 7 at 17-18; 2024 Action, Dkt.
No. 7 at 17-18.

**\*2** Magistrate Judge Lovric advised Plaintiff that under
28 U.S.C. § 636(b)(1), he had fourteen days to file written
objections to the Report-Recommendations and failure to
object within fourteen days would preclude appellate review.
2023 Action, Dkt. No. 7 at 18; 2024 Action, Dkt. No. 7 at

18. On April 26, 2024, Plaintiff timely filed Objections to the 2024 Action Report-Recommendation, 2024 Action, Dkt. No. 8 (the "2024 Action Objections"), and on April 29, 2024, Plaintiff timely filed Objections to the 2023 Action Report-Recommendation, 2023 Action, Dkt. No. 8 (the "2023 Action Objections").

For the reasons set forth below, the Court adopts the Report-Recommendations in their entireties.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See id.* at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing [ ] a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted).

The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

### A. The 2023 Action Report-Recommendation and Objections

**\*3** In his Objections to the 2023 Action Report-Recommendation, Plaintiff contends, among other things, that he has standing to bring his action, it is of major public concern, and it addresses prohibited official acts which would nullify any immunity defenses. 2023 Action, Dkt. No. 8 at 1-2. Notably, Plaintiff does not cite to or quote from the 2023 Action Report-Recommendation, does not cite to any additional allegations from the 2023 Complaint that support his claims, does not cite any allegations Magistrate Lovric allegedly overlooked or misinterpreted, and cites only one case. *See id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Read in the light most favorable to Plaintiff, the Court finds that these objections are not specific, [3] and accordingly the Court reviews the 2023 Action Report-Recommendation for clear error. *See Mario*, 313 F.3d at 766; *O'Diah*, 2011 WL 933846, at *1.

The 2023 Action Report-Recommendation details the factual allegations contained in the 2023 Complaint, *see* 2023 Action, Dkt. No. 7 at 2-6, before undertaking a reasoned analysis and concluding that the 2023 Complaint should be dismissed for one overarching reason, *see id.* at 8-10, or alternatively, for five claim- and Defendant-specific reasons, *see id.* at 10-14. Magistrate Judge Lovric first concluded that the 2023 Complaint should be dismissed for frivolousness. *Id.* at 9-10. Second, Magistrate Judge Lovric also found that Defendants NYSP, BCDA, Negrelli in his official capacity, and Finley in his official capacity are immune from the claims asserted under the Eleventh Amendment and 28 U.S.C. § 1915(e)(2)(B), and should be dismissed from the action.

*Id.* at 10-11. Third, Magistrate Judge Lovric found that the 2023 Complaint lacks any allegations of wrongdoing by Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski, and thus the claims against them should be dismissed for failure to state a claim. *Id.* at 11-12. Fourth, Magistrate Judge Lovric found that Defendants BPD, BCS, and UHS are not proper Section 1983 defendants. *Id.* at 12-13. Fifth, Magistrate Judge Lovric found that the 2023 Complaint does not allege a municipal policy or custom, failure to train, or deliberate indifference that would support liability with respect to Defendants Binghamton or Broome County. *Id.* at 13-14. And sixth, to the extent Plaintiff seeks to have certain property returned, Magistrate Judge Lovric found that Plaintiff has not shown that his remedy under state law is inadequate or unavailable. *Id.* at 14.

Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2023 Action Report-Recommendation determination as to each claim in the 2023 Complaint. Further, upon a *de novo* review of the 2023 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2023 Action Report-Recommendation.

**B. The 2024 Action Report-Recommendation and Objections**

In his Objections to the 2024 Action Report-Recommendation, Plaintiff contends, among other things, that Defendants are not immune from suit and that Magistrate Judge Lovric did not consider all of his claims. *See* 2024 Action, Dkt. No. 8 at 1-4. However, these objections are either not specific or merely assert disagreements without providing a basis to find otherwise. Accordingly, the Court reviews the 2024 Action Report-Recommendation for clear error. *See Mario*, 313 F.3d at 766; *O'Diah*, 2011 WL 933846, at *1.

In the 2024 Action Report-Recommendation, Magistrate Judge Lovric carefully considered the claims against the nine named Defendants and one unknown Defendant in light of the deference due to *pro se* pleadings, and found each claim lacking. *See* 2024 Action, Dkt. No. 7 at 6-14. First, Magistrate Judge Lovric considered the 2024 Complaint claims against Broome County Court Judge Cawley, noting the limitations on judicial immunity "when a judge takes action outside his or her judicial capacity" or " 'in the complete absence of all jurisdiction[,]' " *id.* at 6-7 (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)), and recommended that claims against Defendant Judge Cawley in his individual capacity be dismissed due to judicial immunity and in his official

capacity due to the Eleventh Amendment, *id.* (collecting cases). Second, Magistrate Judge Lovric considered the claims against the Broome County Clerk's Office, finding that such claims were barred "under the Eleventh Amendment because it is an arm of the State of New York." *Id.* at 7-8 (citing, *inter alia, Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)). Third, Magistrate Judge Lovric properly determined that BPD, as a municipal department of Defendant Binghamton, is not a proper Section 1983 Defendant. *Id.* at 8 (collecting cases); *see Moulton v. Cnty. of Tioga, NY*, No. 3:22-cv-00340 (AMN/ML), 2023 WL 4627646, at *15 (N.D.N.Y. July 19, 2023). Fourth, Magistrate Judge Lovric considered Plaintiff's claims against Osburn, the Chief Clerk of Broome County Supreme Courts and County Clerks, and determined that she is immune from suit in her individual capacity as a quasi-judicial actor, the 2024 Complaint failed to allege her personal involvement in any of the alleged constitutional deprivations, and that she is immune from suit in her official capacity under the Eleventh Amendment. 2024 Action, Dkt. No. 7 at 9-10. Fifth, Magistrate Judge Lovric found that the body of the 2024 Complaint completely lacked allegations of wrongdoing by Defendants Kraham, Zikuski, and Unknown(s), and accordingly concluded that the claims against them should be dismissed for failure to state a claim. *Id.* at 10-11. Sixth, Magistrate Judge Lovric considered the claims against Binghamton and Broome County and concluded that the 2024 Complaint failed to state a claim because the acts alleged did not amount to a policy or custom sufficient to support municipal liability, nor did the allegations reflect a failure to train or deliberate indifference to the rights of Plaintiff or others considering the acts alleged. *Id.* at 11-12. Lastly, Magistrate Judge Lovric considered the claims against Defendant Sostowski, interpreting them as either a civil extortion claim, or more broadly as a procedural due process claim, and determined that the allegations were conclusory, extortion is not a cognizable civil claim, the Complaints do not allege or suggest a due process violation, and New York has adequate post-deprivation remedies that were available to Plaintiff. *Id.* at 12-14.

***4** Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2024 Action Report-Recommendation determination as to each claim in the 2024 Complaint. Further, upon a *de novo* review of the 2024 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2024 Action Report-Recommendation.

**C. Leave to Amend**

Finally, Magistrate Judge Lovric recommended that certain claims should be dismissed without leave to amend, while others, in an abundance of caution, should be dismissed with leave to amend. Magistrate Judge Lovric articulated the proper standard cautioning courts against dismissing claims filed by a *pro se* litigant without affording the opportunity to amend, and as a result only recommended dismissal without leave to amend claims for which better pleading could not cure the defects identified. *See* Dkt. No. 7 at 14-16; 2024 Action, Dkt. No. 7 at 14-16. Plaintiff's Objections do not specifically take issue with the amendment analysis contained in the Report-Recommendation, and the Court finds no clear error in the determination to dismiss certain futile claims without leave to amend, while permitting Plaintiff an additional opportunity to state his other claims. [4]

Accordingly, the Court adopts both Report-Recommendations in their entireties.

## IV. CONCLUSION

For these reasons, the Court hereby

**ORDERS** that the 2023 Action Report-Recommendation, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2023 Complaint, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Negrelli in his individual capacity, Broome County, Harder, Hamilton, Curtis, Finley in his individual capacity, Binghamton, Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond, Unknown 1, Unknown 2, and Unknown 3**, and the remainder **DISMISSED without leave to amend**; and the Court further

**ORDERS** that the 2024 Action Report-Recommendation, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2024 Complaint, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Binghamton, Broome County, Kraham, Zikuski, and Unknown(s)**, and the remainder **DISMISSED without leave to amend**; and the Court further

**\*5 ORDERS** that Plaintiff's Letter Requests, 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6, are **DENIED as moot**; and the Court further

**ORDERS** that Plaintiff shall file an amended complaint in either or both of his actions within **SIXTY (60) DAYS** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in the respective case in total; and the Court further

**ORDERS** that if Plaintiff timely files an amended complaint in either or both of his actions, such complaint shall be referred to Magistrate Judge Lovric for review; and if Plaintiff fails to timely file an amended complaint, the Clerk is directed to close the applicable case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3063674

## Footnotes

1    Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

2    Additionally, on March 26, 2024, Plaintiff filed identical letters in both Actions requesting that the Court act on his pending Complaints and IFP motions. 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6 (collectively, "Plaintiff's Letter Requests").

3    To the extent Plaintiff attempts to incorporate his earlier-filed 2024 Action Objections into his 2023 Action Objections, *see* Dkt. No. 8 at 2, the Court considers those arguments below, *infra* § III.B.

4    The Court reiterates Magistrate Judge Lovric's admonition to Plaintiff that any amended complaint "will replace the existing complaint, and must be a wholly integrated and complete pleading," Dkt. No. 7 at 16, and must "contain some specific allegations of fact indicating a deprivation of rights," *id.* (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987)), "set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts," and "allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations[,]" *id.* (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)). Finally, should Plaintiff wish to pursue this case as a single action, he may file an amended complaint compiling all of his related allegations in one of his cases, and not the other.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 58 of 143

Jones v. Thomas, Not Reported in Fed. Supp. (2020)

2020 WL 5077026
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Brandon C. JONES, Plaintiff,

v.

Ms. Jisin H. THOMAS; Mr. Jonathan Tauarez;
Volunteers of America Corporation; Volunteers of
America, Swartz Shelter; Volunteers of America
135 W. 50th Street, NYC, NY 10024, Defendants.

20-CV-5581 (LLS)
|
Signed 08/27/2020

**Attorneys and Law Firms**

Brandon C. Jones, New York, NY, pro se.

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

**\*1** Plaintiff, appearing *pro se*, invokes the Court's federal
question jurisdiction, alleging that Defendants violated his
federal constitutional and statutory rights. Plaintiff filed the
initial complaint on July 17, 2020, and on July 30, 2020, he
filed an amended complaint. (ECF Nos. 2 and 6.) Plaintiff also
filed a motion for permission for electronic case filing. (ECF
No. 5.) By order dated August 5, 2020, the Court granted
Plaintiff's request to proceed without prepayment of fees, that
is, *in forma pauperis* ("IFP"). For the reasons set forth below,
the Court grants Plaintiff leave to file a second amended
complaint within sixty days of the date of this order.

STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction.
*See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

The Supreme Court has held that under Rule 8, a complaint
must include enough facts to state a claim for relief "that
is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). A claim is facially plausible if the
plaintiff pleads enough factual detail to allow the Court
to draw the inference that the defendant is liable for the
alleged misconduct. In reviewing the complaint, the Court
must accept all well-pleaded factual allegations as true.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does
not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. *Twombly*, 550 U.S. at 555. After separating legal
conclusions from well-pleaded factual allegations, the Court
must determine whether those facts make it plausible – not
merely possible – that the pleader is entitled to relief. *Id.*

BACKGROUND

Plaintiff brings his claims using the Court's general complaint
form. He checks the box on the form to invoke the Court's
federal question jurisdiction, and in the section of the form
asking which of his federal constitutional or federal statutory
rights have been violated, Plaintiff writes, "4th and 14th
Constitutional Amendment[,] ADA Act of 1990 42 USC
Reasonable accommodation[,] Title VII Civil Rights Act
1964[,] Intimidation by defendants, 42 USC 3617[.]" (ECF
No. 6, at 2.) He sues the Volunteers of America ("VOA")
Corporation, VOA Schwartz Shelter, [1] a VOA facility located
at 135 W. 50th Street in New York City, and VOA employees
Jisin H. Thomas and Jonathan Tauarez.

**\*2** The following allegations are taken from the amended
complaint, much of which is confusing and lacking context.
Defendant Jisin H. Thomas "failed to provide Reasonable
Accommodation, with regards to the advise [sic] of Medical

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 59 of 143

Jones v. Thomas, Not Reported in Fed. Supp. (2020)

Personnel and took upon herself to disregard all Medical Documentation." (*Id.* at 5.) Thomas "engaged tactics in Retaliation and forms of Intimidation by engaging unlawful behavior" and "filing a formal complaint with Individual Mr. Darrel Spencer," after Thomas found out that Plaintiff sent "sincere complaints to VOA Corporate Offices and other NYS/NYC Departments regarding Safety and Hygiene issues of Swartz [sic] Shelter." (*Id.* at 5.) Spencer then contacted Plaintiff and demanded that he report to Spencer's "Supervisor @ 500 Pearl Street SDNY." (*Id.*)

Plaintiff further alleges that Defendant Jonathan Tauarez "engaged in tactics and has disregarded all required assistance with Reasonable Accommodation as provided by the ADA of 1990." (*Id.*) Tauarez wrote "a formal Infraction" against Plaintiff "and sent [it] to Individual Mr. Darrel Spencer" before "demand[ing]" that Plaintiff sign the document. (*Id.*) Plaintiff did not comply and Spencer "contacted [Plaintiff] about the Infraction and made statements about going before the Judge and questioned [Plaintiff] about the aforementioned and the issues continue today without any relief or stoppage, in violation of various NYS Law and Federal Code 42 USC 1637." (*Id.*)

Plaintiff asserts that as a result of Defendants' unlawful acts, he has experienced at the Schwartz Shelter "[i]nfections, pain, and suffering from the failure to provide clean facilities." (*Id.* at 6.) He further states that he faced retaliation, "which could have landed [him] back in prison," because of "Blowing the Whistle on unsafe conditions" at Schwartz. (*Id.*) Plaintiff also asserts that he has experienced "[e]motional [i]ntimidation" and "prevention of proper medical treatment by refusing medical supplies deliveries, on multiple occasions." (*Id.*)

He seeks money damages and injunctive relief.

Plaintiff attaches to the complaint pages of medical records, and a July 29, 2020 "Notice of Transfer" from VOA, informing Plaintiff that "DHS is issuing [him] an administrative transfer within 48 hours" and that he will be notified of his "new assigned Mental Health shelter once it becomes available." (*Id.* at 17.)

## DISCUSSION

### A. Constitutional claims under 42 U.S.C. § 1983
The Court construes Plaintiff's allegations that Defendants retaliated against him for filing complaints as asserting claims

under 42 U.S.C. § 1983 that Defendants violated his First Amendment rights. To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

A claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). As Defendant VOA is a private non-profit organization, and Defendants Thomas and Tauarez are private parties who do not work for any state or other government body, Plaintiff has not stated a claim against these defendants under § 1983.

### B. Claims under the ADA
Title III of the ADA governs places of public accommodations, and guarantees that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III, a plaintiff must allege, "(1) [that] he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation;[2] and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009). A plaintiff must also allege that the "exclusion or discrimination was due to [the plaintiff's] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)).

**\*3** With respect to the third element, "a plaintiff can base a disability discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.' " *Brief v. Albert Einstein Coll. of Med.*, 423 Fed. Appx. 88, 90 (2d Cir. 2011) (quoting *Fulton*, 591 F.3d at

Jones v. Thomas, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 60 of 143

43). To bring a reasonable accommodation claim, a plaintiff must show "(1) [ ]he suffers from a disability (2) known to the defendant, for which (3) a reasonable accommodation is necessary for the plaintiff's enjoyment of the facility, and (4) the defendant refused the accommodation." *Lopez v. New York City Dep't of Homeless Servs.*, No. 17-CV-3014, 2019 WL 3531955, at *4 (S.D.N.Y. Aug. 2, 2019), *report and recommendation adopted*, No. 17-CV-3014, 2019 WL 4593611 (S.D.N.Y. Sept. 23, 2019).

Here, Plaintiff asserts that Defendants "failed to provide [a] Reasonable Accommodation" as required by the ADA, but he fails to allege any facts suggesting that he has a disability within the meaning of the ADA. Moreover, Plaintiff alleges no facts regarding the nature of the reasonable accommodation that he sought or that Defendants discriminated against him in denying such an accommodation. *See Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019) (quoting *Shaywitz v. Am. Bd. Of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012)) ("Title III's requirement that private entities make 'reasonable accommodations' for disabled individuals would be rendered meaningless if the entity had no basis for knowing (1) what accommodations the [plaintiff] was seeking, and (2) whether those accommodations were reasonable in light of the disability and the test."). The Court therefore grants Plaintiff leave to amend his complaint to allege facts supporting his claim that Defendants violated Title III of the ADA.

## C. Claims under the Fair Housing Act

Plaintiff also asserts that Defendants intimidated him in violation of 42 U.S.C. § 3617. That statute, a section of the Fair Housing Act, states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the FHA]." Plaintiff must therefore allege facts suggesting that (1) he exercised or enjoyed a right under the FHA, and (2) Defendants intimidated or threatened him because he exercised or enjoyed a right under the FHA.

Section 3604 of the FHA, as applicable here, makes it unlawful to "discriminate in the [ ] rental [of], or to otherwise make unavailable or deny, a dwelling to any ... renter because of" the individual's disability. 42 U.S.C. § 3604(f)(1). It also prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a [disability]." 42 U.S.C. § 3604(f)(2). Under certain circumstances, a refusal to make a reasonable accommodation can constitute unlawful discrimination under the FHA. *See* 42 U.S.C. § 3604(f)(3)(B).

Here, Plaintiff fails to allege facts suggesting that he has a disability under the FHA. *See Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015) (quoting 42 U.S.C. § 3602(h)) ("To demonstrate a disability under the FHA, a plaintiff must show: (1) 'a physical or mental impairment which substantially limits one or more ... major life activities'; (2) 'a record of having such an impairment'; or (3) that he or she is 'regarded as having such an impairment.' "). Even assuming that Plaintiff has a disability within the meaning of the FHA, he does not allege that he exercised his rights under the FHA and Defendants coerced, intimidated, or threatened him, or interfered with his exercise of those rights. *See* 42 U.S.C. § 3617. He rather makes the conclusory assertions that Thomas "engaged [in] tactic[s]" of retaliation and intimidation "by engaging [in] unlawful behavior." The only specific fact that Plaintiff alleges – that Thomas "fil[ed] a formal complaint" with Darrel Spencer after learning that Plaintiff filed complaints regarding safety and hygiene issues at Schwartz Shelter – does not suggest that Plaintiff was engaged in exercising his rights under the FHA or that Thomas's actions in filing an unspecified complaint against Plaintiff constituted intimidation or retaliation. If Plaintiff chooses to file a second amended complaint, he should allege facts suggesting that he exercised or enjoyed a right under the FHA, and that Defendants violated or interfered with that right or otherwise intimidated, coerced, or threatened Plaintiff in connection with his exercise or enjoyment of that right.

## D. Claims under Title VII

**\*4** Plaintiff also brings claims under Title VII of the Civil Rights Act of 1964. Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). Plaintiff does not allege that he is or was an employee of any of the defendants. The Court therefore dismisses his claims under Title VII for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 61 of 143

Jones v. Thomas, Not Reported in Fed. Supp. (2020)

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claims under the ADA and FHA, the Court grants Plaintiff sixty days' leave to file a second amended complaint to detail his claims.

In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

    a) give the names and titles of all relevant persons;

    b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

    c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

    d) give the location where each relevant event occurred;

    e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

    f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's second amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. **Because Plaintiff's second amended complaint will completely replace, not supplement, the amended complaint, any facts or claims that Plaintiff wishes to maintain must be included in the second amended complaint.**

If Plaintiff chooses to file a second amended complaint, the Court strongly encourages him to seek assistance from someone who can help him organize his thoughts and claims. If Plaintiff needs legal advice related to this matter, he may contact the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this Court. A copy of the flyer with details of the clinic is attached to this order.

## CONCLUSION

**\*5** The Clerk of Court is directed to transmit a copy of this order to Plaintiff. [3]

The Court grants Plaintiff's motion for permission for electronic case filing. (ECF No. 5.)

The Court dismisses Plaintiffs § 1983 claims against Thomas, Tauarez, VOA Corporation, VOA Schwartz Shelter, and VOA at 135 W. 50th Street.

The Court grants Plaintiff leave to file a second amended complaint that complies with the standards set forth above within sixty days of the date of this order. Plaintiff must caption the document as a "Second Amended Complaint," and label the document with docket number 20-CV-5581 (LLS). A Second Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted.

SO ORDERED.

Attachment

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 62 of 143

**Jones v. Thomas, Not Reported in Fed. Supp. (2020)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____

_____ Civ. _____ (____)

_(In the space above enter the full name(s) of the plaintiff(s).)_

**SECOND
AMENDED
COMPLAINT__**

-against-

Jury Trial:  ☐ Yes    ☐ No
(check one)

_____
_____
_____
_____
_____
_____
_____

_(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)_

**I.   Parties in this complaint:**

A.   List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff    Name _____
             Street Address _____
             County, City _____
             State & Zip Code _____
             Telephone Number _____

B.   List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

_Rev. 12/2009_                                    1

Defendant  No. 1   Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant  No. 2   Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant  No. 3   Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant  No. 4   Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

**II.   Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.   What is the basis for federal court jurisdiction? _(check all that apply)_

☐ Federal Questions              ☐ Diversity of Citizenship

B.   If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____
_____
_____

C.   If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____
Defendant(s) state(s) of citizenship _____
_____

_Rev. 12/2009_                                    2

**III.   Statement of Claims:**

State as briefly as possible, the _facts_ of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.   Where did the events giving rise to your claim(s) occur? _____

B.   What date and approximate time did the events giving rise to your claim(s) occur? _____
_____
_____

C.   Facts: _____
_____

| What happened to you? | |
|---|---|

_____
_____

| What did what? | |
|---|---|

_____
_____

| Was anyone else involved? | |
|---|---|

_____

| Who else saw what happened? | |
|---|---|

_____
_____

**IV.   Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____
_____
_____
_____
_____

_Rev. 12/2009_                                    3

**V.   Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20___.

Signature of Plaintiff   _____
Mailing Address          _____
                         _____
                         _____
Telephone Number         _____
Fax Number _(if you have one)_  _____

_Note:_   All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

**For Prisoners:**

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the _Pro Se_ Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:   _____
Inmate Number             _____

_Rev. 12/2009_                                    4

**Jones v. Thomas, Not Reported in Fed. Supp. (2020)**

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 63 of 143



### Notice For Pro Se Litigants

As a public health precaution, the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants has temporarily suspended all in-person client meetings as of Tuesday, March 17, 2020.

Limited scope legal assistance will continue to be provided, but only by appointment and only over the phone. During this time, we cannot assist walk-in visitors to the clinic.

If you need the assistance of the clinic, please call 212-659-6190 and leave a message, including your telephone number, and someone will get back to you as soon as possible. If you do not leave a message with your telephone number, we cannot call you back.

Please be patient because our responses to your messages may be delayed while we transition to phone appointments.



**All Citations**

Not Reported in Fed. Supp., 2020 WL 5077026

## Footnotes

1   The Schwartz Assessment Shelter is a shelter for homeless men that is operated by VOA and located on Wards Island in New York City. *See* https://www.voa-gny.org/emergency-shelter.

2   The definition of "public accommodation" includes a "homeless shelter ... or other social service center establishment." 42 U.S.C. § 12181(7)(K).

3   Plaintiff has consented to receiving electronic service of Court document. (ECF No. 7.)

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3868710
Only the Westlaw citation is currently available.
<u>NOT FOR PUBLICATION</u>
United States District Court, E.D. New York.

Eleanor BASORA-JACOBS, Plaintiff,

v.

CEO Arthur PALEVSKY; D.O. Ava Morgan;
Pat Perkins; Linda Schnabel, AC; Mgr. Greg
Defranceso; Michael Garcia, Defendants.

20-CV-1675 (LDH)(LB)
|
Signed 07/09/2020

**Attorneys and Law Firms**

Eleanor Basora-Jacobs, Staten Island, NY, pro se.

## MEMORANDUM AND ORDER

LaSHANN DeARCY HALL, United States District Judge:

**\*1** Plaintiff Eleanor Basora-Jacobs, proceeding pro se, brings an employment discrimination and retaliation action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* [1] (Compl., ECF No. 1.) Plaintiff's April 1, 2020 motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) is granted. (Pl.'s Leave Mot., ECF No. 2.)

## BACKGROUND [2]

Plaintiff is female and Hispanic. (Compl. at 5.) She is a former employee of Independent Living Association in Brooklyn. (*Id.* at 3.) Plaintiff "charge[s] Defendants with unlawful discriminatory practice relating to their employment based on race, national origin and retaliation" between July 2016 and March 2018. (*Id.* at 4-5.) She alleges that "staff spoke other language against company policy in front of clients and their parents" and that her employment was terminated. (*Id.* at 4.) Plaintiff alleges no other specific facts in support of her discrimination and retaliation claims. She names the Arthur Palevsky, CEO and Ava Morgan, the Director of Operations and four other employees of Independent Living Association as Defendants. [3] (*Id.* at 1-3.)

## STANDARD OF REVIEW

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the [C]ourt must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the [C]ourt must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

**\*2** Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Under 28 U.S.C. § 1915A(a), a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

Case 3:24-cv-00267-LEK-ML Document 11 Filed 07/03/24 Page 65 of 143

Basora-Jacobs v. Palevsky, Not Reported in Fed. Supp. (2020)

## DISCUSSION

### I. Individual Liability

Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). Accordingly, Plaintiff's Title VII causes of action are dismissed *sua sponte* as to the individual Defendants for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (permitting the district to dismiss an *in forma pauperis* action where it "fails to state a claim on which relief may be granted"); *see also Saunders v. N.Y. City Dep't of Educ.*, 07–CV–2725, 2010 WL 331679 at *8 (E.D.N.Y. Jan. 19, 2010) (dismissing plaintiff's Title VII claims *sua sponte* against individual defendants because "individuals are not subject to liability under those statutes and any 'official capacity' claim would be redundant to plaintiff's claims against [the public entity]").

### II. Sufficiency of Title VII Claim

The complaint does not list Plaintiff's employer as a defendant in the case caption. However, even if it did, the complaint does not state sufficient facts to support a Title VII claim against Plaintiff's employer. "A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against h[er] and (2) h[er] race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). A plaintiff can make such a showing "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87; *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 310 (2d Cir. 2015) (explaining that an employment discrimination complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face).

In the employment discrimination complaint form, Plaintiff checked the "race" and "gender/sex" boxes, and provides that she is Hispanic and female. (Compl. at 5.) However, she did not allege any facts suggesting that her termination or retaliation was done "at least, in part, for a discriminatory reason." *Vega*, 801 F.3d at 87. Accordingly, her Title VII claim is dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is DISMISSED for failure to state a claim. The Court grants Plaintiff leave to file an amended complaint against her former employer, the Independent Living Association, Inc., within thirty (30) days. If Plaintiff decides to file an amended complaint, it should name the former employer as the defendant, be titled "AMENDED COMPLAINT" and bear the same docket number as this order, 1:20-CV-1675 (LDH)(LB). Any amended complaint must include facts in support of such a claim. Any amended complaint will replace the original complaint and must stand on its own without reference to the original complaint. Failure to file an amended complaint within 30 days will result in dismissal of this case.

**\*3** No summons shall be issued at this time and all further proceedings shall be stayed for 30 days or until further order of the Court. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to mail a copy of this memorandum and order to the pro se litigant, and include a form complaint for employment discrimination.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2020 WL 3868710

## Footnotes

1      The complaint is dated March 21, 2020, was mailed on March 25, 2020, and was received on April 1, 2020.

**Basora-Jacobs v. Palevsky, Not Reported in Fed. Supp. (2020)**

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 66 of 143

2    The following facts are taken from the complaint and are assumed true for the purposes of this memorandum and order.

3    Plaintiff named the four employee Defendants in the case caption, but only referred to Palevsky and Morgan in the body of her complaint. (*Id.* 1-2.)

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 67 of 143

Walker v. Flynn, Not Reported in Fed. Supp. (2022)

2022 WL 2304169

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Lorenzo WALKER, Plaintiff,

v.

Michael FLYNN, Owner, Defendant.

5:22-CV-0400 (GLS/ML)

|

Signed 06/27/2022

**Attorneys and Law Firms**

LORENZO WALKER, Plaintiff, Pro Se, 502 Bryant Avenue, Syracuse, New York 13204.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint together with an application to proceed *in forma pauperis* and motion to appoint counsel filed by Lorenzo Walker ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2, 3.) For the reasons discussed below, I deny Plaintiff's *in forma pauperis* application (Dkt. No. 2), deny Plaintiff's motion to appoint counsel (Dkt. No. 3), and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed without prejudice and without leave to amend.

## I. BACKGROUND

Plaintiff's Complaint consists of four form complaints, which purport to assert actions arising under (1) 42 U.S.C. § 1983; (2) Title VII of the Civil Rights Act, as amended; (3) the Americans with Disabilities Act; and (4) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See generally* Dkt. No. 1.) Construed as liberally [1] as possible, Plaintiff alleges that on February 14, 2015, The Roofing Guys—which is owned by Defendant Michael Flynn ("Defendant")—was hired to replace the roof on Plaintiff's home. (*Id.*) Plaintiff alleges that the work done by The Roofing Guys was deficient in the following three respects: (1) after completion of the work, tar remained on the side of Plaintiff's house, (2) the sheetrock inside Plaintiff's second bedroom got wet, and (3) a gutter was installed in the wrong location, which has caused Plaintiff's basement to get wet. (*Id.*) Plaintiff alleges that "they" [2] came back and painted

over the tar but that work was also deficient and resulted in further damage to his property. (*Id.*)

Plaintiff alleges that he is a veteran, 70 years old, owns his home, and has one leg. (*Id.*) Plaintiff alleges that Defendant's conduct was discriminatory with respect to Plaintiff's race or color and national origin. (*Id.*)

Plaintiff alleges that he "went to Home Quater" to get help with home repairs and that an individual named Curtis Harris told Plaintiff that Plaintiff needed to let "them" [3] do the work or lose out. (*Id.* at 7.)

As relief, Plaintiff is seeking monetary damages of an unspecified amount. (*Id.*)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee. 28 U.S.C. § 1915(a)(1). [4] Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

**\*2** The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). The court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 68 of 143

Walker v. Flynn, Not Reported in Fed. Supp. (2022)

foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In support of an IFP application, 28 U.S.C. § 1915 requires that a plaintiff submit an affidavit reflecting his assets. 28 U.S.C. § 1915(a)(1).

Here, Plaintiff's IFP application states that his gross pay or wages are $1,345.00, but does not indicate over what time period he receives that income. (Dkt. No. 2 at ¶ 2.) In addition, Plaintiff alleges in the Complaint that he owns his home (Dkt. No. 1 at 4) and indicates in his IFP application that his home is valued at approximately $69,000.00. (Dkt. No. 2 at ¶ 5.) However, Plaintiff also indicates in his IFP application that his regular monthly expenses include $720.00 in rent. (*Id.* at ¶ 6.) It is unclear whether Plaintiff maintains two properties —one that he owns and one that he rents, or whether Plaintiff inaccurately designated his monthly housing costs as "rent" despite owning the property.

In addition, Plaintiff's IFP application was incomplete in the following two respects: (1) Plaintiff failed to indicate the source of income for the $1,345.00 in gross pay or wages that he earns, and (2) with respect to question 8, which asks Plaintiff to identify any debts or financial obligations, Plaintiff states "House Noite 720 → B.A." (Dkt. No. 2 at 2.)

In this instance, due to Plaintiff's incomplete IFP application, I am unable to conclude that he possesses insufficient funds to pay the $402.00 filing fee to commence an action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. 339). Accordingly, I deny Plaintiff's motion to proceed in this case IFP. To the extent that Plaintiff may wish to renew his request to proceed IFP, and given the Court's unanswered questions about his financial situation, any request to proceed without the prepayment of fees must include a fully completed *in forma pauperis* application (AO240).

## III. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Initial Review of a Complaint

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that

Plaintiff's Complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference to the *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

**\*3** The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. More specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Case 3:24-cv-00267-LEK-ML Document 11 Filed 07/03/24 Page 69 of 143

Walker v. Flynn, Not Reported in Fed. Supp. (2022)

Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Legal Standard Governing Subject Matter Jurisdiction

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agric., Inc. v. Perry*, 12-CV-6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, 09-CV-7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013)). Federal courts are mandated to examine their own jurisdiction *sua sponte* at every stage of the litigation. *ACCD Global Agric., Inc.*, 2013 WL 840706, at *1; *see In re Tronox, Inc.*, 855 F.3d 84, 85 (2d Cir. 2017) (federal courts have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*).

A federal court exercises limited jurisdiction pursuant to Article III of the Constitution. It has subject matter jurisdiction over claims in which: (1) there is a 'federal question' in that a colorable claim arises under the 'Constitution, laws or treaties of the United States,' 28 U.S.C. § 1331; and/or if (2) there is complete "diversity of citizenship" between each plaintiff and all defendants and a minimum of $75,000 in controversy, 28 U.S.C. § 1332.

**\*4** *Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 511-12 (D. Conn. 2015) (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction) (footnote omitted)), *reconsideration denied*, 14-CV-0053, 2015 WL 2124365 (D. Conn. May 6, 2015).

The existence of a federal question is governed by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. 28 U.S.C. § 1331. A well-pleaded complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Although Plaintiff completes his Complaint on form complaints for violations of (1) 42 U.S.C. § 1983; (2) the Americans with Disabilities Act; (3) Title VII of the Civil Rights Act, as amended; and (4) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff fails to state a claim upon which relief may be granted pursuant to any of those legal bases.

### A. 42 U.S.C. § 1983

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under color of state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Generally, private parties are not state actors, and are not liable under § 1983. *Sykes*, 723 F.3d at 406 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citations omitted). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have

Walker v. Flynn, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 70 of 143

been violated must first establish that the challenged conduct constitutes 'state action.' " *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky*, 457 U.S. 991, 1002 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated with a private person ... to deprive the plaintiff of a constitutional right." *Fries v. Barns*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes*, 398 U.S. at 144).

**\*5** Here, the Complaint fails to allege facts plausibly suggesting that Defendant was a "state actor" or was "collaborating" with state actors. [5] (*See generally* Dkt. No. 1.)

### B. Title VII

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a). A plaintiff asserting a claim under Title VII may establish a prima facie case by showing that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). The last factor may be satisfied "through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citations omitted).

The Complaint fails to allege facts plausibly suggesting that Plaintiff is or was employed by Defendant. (Dkt. No. 1.) As a result, Plaintiff fails to state a claim upon which relief may be granted pursuant to Title VII. *Jones v. Thomas*, 20-CV-5581, 2020 WL 5077026, at \*4 (S.D.N.Y. Aug. 27, 2020) (dismissing for failure to state a claim, the plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, 20-CV-1675, 2020 WL 3868710, at \*2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption.").

Moreover, individuals may bring Title VII claims in federal court only after filing a timely charge with the EEOC and receiving an EEOC right-to-sue letter. 42 U.S.C. § 2000e-5(e), (f); *see Legnani v. Alitalia v. Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Under ... Title VII ..., a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."). Plaintiff left blank the portion of the form-complaint where he was to indicate that he "filed charges with the New York State Division on Human Rights, the New York City Commission on Human Rights or Equal Employment Opportunity Commission regarding the alleged discriminatory acts." (Dkt. No. 1 at 8.) Plaintiff also left blank the portion of the form-complaint where he was to indicate the date that he received "the Equal Employment Opportunity Commission['s] issued ... Notice-of-Right-to-Sue letter." (Dkt. No. 1 at 8.) "Further, a right-to-sue letter is not attached to Plaintiff's Complaint. Accordingly, Plaintiff's Title VII ... claims must be dismissed on the basis that the right-to-sue letter is a precondition to bringing [the] claims in federal court." *Johnson v. Xylem Inc.*, 19-CV-0130, 2020 WL 1963125, at \*2 (W.D.N.Y. Apr. 16, 2020) (citing *Constantine v. U-Haul Int'l, Inc.*, 15-CV-1204, 2015 WL 7272211, at \*2 (N.D.N.Y. Nov. 16, 2015) (D'Agostino, J.) (dismissing the plaintiff's Title VII claim where the plaintiff failed to demonstrate that she received an EEOC right-to-sue letter); *Parker v. Mack*, 09-CV-1049A, 2010 WL 11507368, at \*3 (W.D.N.Y. Jan. 4, 2010) (holding that the plaintiff's Title VII claims were subject to dismissal where the plaintiff did not submit a copy of his EEOC right-to-sue letter)).

**\*6** As a result, I recommend that Plaintiff's claims pursuant to Title VII be dismissed for failure to state a claim upon which relief may be granted.

### C. Americans With Disabilities Act

"[T]he ADA's statute of limitations is three years." *De La Rosa v. Lewis Foods of 42nd Street, LLC*, 124 F. Supp. 3d 290, 299, n.14 (S.D.N.Y. 2015). For the reasons set forth *supra*, in note 5 of this Order and Report Recommendation, I recommend that Plaintiff's claims pursuant to the ADA be dismissed as time barred.

In the alternative, I find that Plaintiff has failed to allege facts plausibly suggesting a claim for relief pursuant to the ADA.

Based on the facts alleged, Plaintiff could not proceed with a claim under Title I of the ADA, which addresses

employment discrimination, because he has neither alleged that he was employed by Defendant, nor alleged that he exhausted administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court. 42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.,* 707 F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 360, n.1 (2001)) (" 'Title I of the ADA expressly deals with th[e] subject' of employment discrimination.").

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected,* 511 F.3d 238 (2d Cir. 2004)). To plead a violation of Title II of the ADA, a plaintiff must allege "(1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont,* 340 F.3d 27, 34-35 (2d Cir. 2003)) (internal quotation marks omitted).

Here, the Compliant is devoid of factual allegations plausibly suggesting that Plaintiff was unable to access programs due to his disability, how his disability prevented him from accessing those programs, or what accommodations he sought and was denied by Defendants. (*See generally* Dkt. 1.)

Further, "individuals cannot be held liable under the ADA." *Netti v. Ayers,* 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn,* 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs,* 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.,* 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law,* 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA."). Thus, Plaintiff has failed to state a claim upon which

relief may be granted pursuant to Title II of the ADA against Defendant, who is an individual (not an entity). [6]

**\*7** With respect to Title III of the ADA, the only relief available to private litigants is injunctive relief, and here, Plaintiff seeks only monetary damages. *Bowen v. Rubin,* 385 F. Supp. 2d 168, 181 (E.D.N.Y. 2005) (citing 42 U.S.C. § 12188(a)(1); *Disabled in Action of Metro. New York v. Trump Int'l Hotel and Tower,* 01-CV-5518, 2003 WL 1751785, at *6 (S.D.N.Y. Apr. 2, 2003)).

Further, "[t]o state a claim under Title III [of the ADA], [a plaintiff] must allege (1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.,* 518 F.3d 153, 156 (2d Cir. 2008). The Complaint fails to allege facts plausibly suggesting that Defendant discriminated against Plaintiff by denying him a full and equal opportunity to enjoy the services that Defendant provides. (*See generally* Dkt. No. 1.)

Moreover, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications. *Genco v. Sargent & Collins LLP,* 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018).

Finally, Title V of the ADA, sometimes referred to as the "retaliation provision," also does not appear applicable because Plaintiff does not allege that he engaged in activity protected by the ADA, that Defendant was aware of that activity, or that Defendant took any adverse action against Plaintiff causally related to that protected activity. *Chiesa v. New York State Dep't of Labor,* 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009) (Hurd, J.); *see also Constantine v. Merola,* 20-CV-1012, 2020 WL 8450544, at *5 (N.D.N.Y. Nov. 6, 2020) (Lovric, M.J.) (recommending dismissal of the plaintiff's ADA Title V claims where the complaint failed to allege that the plaintiff "engaged in any protected activity, that any [d]efendant knew that [p]laintiff was involved in the protected activity, or that any adverse decision or course of action taken by [d]efendants was causally connected to that protected activity."), *report and recommendation adopted by* 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021) (Hurd, J.).

As a result, to the extent that Plaintiff's Complaint is construed as alleging a claim pursuant to the ADA, I recommend that

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 72 of 143

Walker v. Flynn, Not Reported in Fed. Supp. (2022)

it be dismissed for failure to state a claim upon which relief may be granted.

### D. *Bivens* Claim

With respect to Plaintiff's claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), I recommend that it be dismissed as untimely. "The statute of limitations for *Bivens* actions arising in New York is three years." *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999).

In the alternative, I recommend that Plaintiff's *Bivens* claim be dismissed for failure to state a claim upon which relief may be granted. To state a *Bivens* claim, a plaintiff must show that "(1) a defendant acted under color of federal law (2) to deprive plaintiff of a constitutional right." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). "While a private individual ordinarily may not be held liable under *Bivens*, she may be found to have acted 'under color of law' when she is a 'willful participant in joint activity' with the federal government or its agents." *Ross v. O'Donnell*, 13-CV-1250, 2014 WL 3735667, at *3 (N.D.N.Y. July 29, 2014) (Kahn, J.) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). "To demonstrate that a private party was acting under color of federal law, a plaintiff must establish that [the] defendant's actions were commanded or encouraged by the federal government, or that the defendants were so intertwined with the government as to become painted with color of [federal] action." *Strother v. Harte*, 171 F. Supp. 2d 203, 206 (S.D.N.Y. 2001).

**\*8** Here, the Complaint is devoid of factual allegations plausibly suggesting that Defendant—a private actor—was commanded or encouraged by the federal government or that his actions were so intertwined with the government as to become painted with color of federal action. (*See generally* Dkt. No. 1.)

### E. Other Claims

Even applying special solicitude, I find that the Complaint may allege facts plausibly suggesting state law claims such as breach of contract. However, a state law claim for breach of contract does not raise a federal question for purposes of subject matter jurisdiction. *See Adames v. Taju*, 80 F. Supp. 3d 465, 468 (E.D.N.Y. 2015) ("The Court may not exercise federal-question jurisdiction over the Complaint as currently stated. Despite a liberal reading of the Complaint, Plaintiff's claim regarding breach of contract is based in state law. There is nothing on the face of Plaintiff's Complaint to suggest that

Defendant violated any federal statute, or that any question involving the Constitution, laws, or treaties of the United States is implicated by his claim.").

The other conceivable ground for jurisdiction would be diversity of citizenship, which gives federal district courts jurisdiction over suits where the plaintiff and the defendant are of diverse citizenship and the amount in controversy exceeds $75,000. *Adames*, 80 F. Supp. 3d at 468. Here, there does not appear to be diversity jurisdiction between Plaintiff and Defendant, both of whom are citizens of New York. (Dkt. No. 1 at 1.) Moreover, the Complaint fails to allege that the amount in controversy is at least $75,000. As a result, the Court lacks subject matter jurisdiction to consider any state law claims that Plaintiff may have sought to allege.

As a result, I recommend that Plaintiff's Complaint be dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted and because the Court lacks subject matter jurisdiction.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [7]

**\*9** In this case, I find that granting leave to amend is unlikely to be productive because there appears no basis for Plaintiff to raise his claims against Defendant in federal court. As a result, the Court "should not allow [P]laintiff [an opportunity] to amend, notwithstanding a dismissal without

Walker v. Flynn, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 73 of 143

prejudice. Because lack of subject matter jurisdiction is a substantive defect, the court recommends dismissal without leave to amend." *Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at *3 (N.D.N.Y. Nov. 2, 2021) (Baxter, M.J.) (citing *Deul v. Dalton*, 11-CV-0637, 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012) (Suddaby, J.)), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.).

## VI. PLAINTIFF'S MOTION TO APPOINT COUNSEL

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. A motion for appointment of counsel may be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious." *Leftridge*, 640 F.3d at 69. If the court finds that the claims have substance, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In the present matter, the Court has recommended dismissal of the action. As such, the Court cannot find that Plaintiff's claims are likely to be of substance. Plaintiff's motion (Dkt. No. 3) is therefore denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED WITHOUT PREJUDICE**; and it is further [8]

**ORDERED** that the Clerk of the Court shall provide Plaintiff with a blank *in forma pauperis* application (AO 240); and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim upon which relief may be granted and because the Court lacks subject matter jurisdiction; and it is further

**\*10 ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

## All Citations

Not Reported in Fed. Supp., 2022 WL 2304169

## Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).

2    Although it is unclear from the face of the Complaint, the Court presumes that Plaintiff intended to convey that The Roofing Guys' employees completed the painting work.

3    Again, it is unclear who Plaintiff is referring to, but the Court presumes that Plaintiff meant that Mr. Harris informed Plaintiff that The Roofing Guys were required to do the work.

4    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5    The Court also notes that the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York,* 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint). The conduct that Plaintiff's Complaint concerns appears to have occurred in 2015, more than three years before the commencement of this action. As a result, any claim pursuant to 42 U.S.C. § 1983 is barred by the statute of limitations.

6    Moreover, "[w]hen a private individual seeks damages under Title II of the ADA, the Second Circuit requires the plaintiff to 'establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability.' " *Day v. Warren,* 06-CV-0155, 2008 WL 474261, at *4 (D. Conn. Feb. 7, 2008) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 111 (2d Cir. 2001)). The Complaint fails to allege facts plausibly suggesting discriminatory animus or ill will towards Plaintiff's alleged disability or disabilities. (*See generally* Dkt. No. 1.)

7    *See also Carris v. First Student, Inc.,* 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)), *rev'd on other grounds,* 682 F. App'x 30.

8    If Plaintiff wishes to proceed with this action, he must either (i) pay the $402.00 filing fee, or (ii) submit a renewed IFP application detailing his current financial condition, within thirty (30) days from the date of the filing of Court's Decision and Order. Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed.

9    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

10   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the

**Walker v. Flynn, Not Reported in Fed. Supp. (2022)**

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 75 of 143

report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Walker v. Flynn, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 76 of 143

2022 WL 2789355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Lorenzo WALKER, Plaintiff,

v.

Michael FLYNN, Defendant.

5:22-cv-400 (GLS/ML)
|
Signed July 15, 2022

**Attorneys and Law Firms**

FOR THE PLAINTIFF: Lorenzo Walker, Pro Se, 502 Bryant
Avenue, Syracuse, NY 13204.

## ORDER

Gary L. Sharpe, Senior District Judge

 **\*1** The above-captioned matter comes to this court
following an Order and Report-Recommendation (R&R) by
Magistrate Judge Miroslav Lovric, duly filed June 27, 2022.
(Dkt. No. 5.) Following fourteen days from the service

thereof, the Clerk has sent the file, including any and all
objections filed by the parties herein.

No objections having been filed, and the court having
reviewed the R&R for clear error, it is hereby

**ORDERED** that the Order and Report-Recommendation
(Dkt. No. 5) is **ADOPTED** in its entirety; and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is
**DISMISSED without prejudice** pursuant to 28 U.S.C. §
1915(e)(2)(B) and because the court lacks subject matter
jurisdiction; and it is further

**ORDERED** that the Clerk is directed to close this case; and
it is further

**ORDERED** that the Clerk provide a copy of this Order to
plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2789355

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    1

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 77 of 143

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 79 of 143

no clear error on the face of the record in order to accept the recommendation").

**\*3**  Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1]  The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

### CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

### ORDER and REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

### BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4**  Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 81 of 143

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 82 of 143

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P., Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 84 of 143

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 85 of 143

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, The Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 86 of 143

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 87 of 143

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." Id. Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. Id. Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them.[6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Id. § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Id. § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 88 of 143

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved

in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 89 of 143

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 90 of 143

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1     Names in the caption are spelled to reflect plaintiff's complaint.

2     Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3     Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4     The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5     The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6     We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under 28 U.S.C. § 1332.

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 91 of 143

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 92 of 143

Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)

2022 WL 4290660
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin Joseph Gabriel BRENNAN, Plaintiff,
v.
NCACOMP INC., Owner Kevin Gregory;
Joleen M. Bolger, (Snowdon) Manager, NCA
Inc.; Dr. Anne M. Caulkins; Dr. Ira Breite;
and Rene Barnes (Picirrili), Defendants.

3:22-CV-0127 (GTS/ML)
|
Signed April 25, 2022

**Attorneys and Law Firms**

KEVIN JOSEPH GABRIEL BRENNAN, Plaintiff, Pro Se,
319 Exchange Avenue, Townhouse #20, Endicott, New York
13760.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* complaint together
with an amended complaint, application to proceed *in forma
pauperis*, and supplemental information to the *in forma
pauperis* application filed by Kevin Joseph Gabriel Brennan
("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2, 4,
5.) For the reasons discussed below, I grant Plaintiff's *in
forma pauperis* application (Dkt. No. 2) and recommend that
Plaintiff's Amended Complaint (Dkt. No. 5) be dismissed in
its entirety (1) in part with leave to amend, and (2) in part
without leave to amend.

### I. BACKGROUND

On February 10, 2022, Plaintiff commenced this action by the
filing of a Complaint alleging that his rights were violated
by defendants NCAComp Inc., Joleen Bolger, Dr. Anne
M. Caulkins, Dr. Ira Breite, and Rene Barnes (collectively
"Defendants"). (Dkt. No. 1.) On March 25, 2022, Plaintiff
filed an amended complaint as of right, which supersedes
his original complaint. (*See* Dkt. No. 5 [Am. Compl.]); *Int'l
Controls Corp v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)
("It is well established that an amended complaint ordinarily
supersedes the original, and renders it of no legal effect.").

Thus, presently before the undersigned for review pursuant to
28 U.S.C. § 1915, is Plaintiff's Amended Complaint.

Plaintiff alleges that he is disabled based, at least in part, on
an injury he sustained at work on November 1, 1995. (*See
generally* Dkt. No. 5.)

Plaintiff alleges that "in the Spring of 2018" his workers'
compensation case was "turned over to NCAComp. Inc." and
Defendant Bolger was assigned as his claim examiner. (*Id.*)

Plaintiff alleges that on December 14, 2018, he was injected
with Depomedrol by Defendant Caulkins while he was also
taking Meloxicam and Voltaren Gel. (*Id.*) Plaintiff alleges that
in January 2019, he "experienced the worst episode of rectal
bleeding he had ever had." (*Id.*) Plaintiff alleges that due to
his rectal bleeding, he went to "the Lourdes Walk-in," where
he was directed to stop taking the Meloxicam but the Voltaren
Gel was not discussed. (*Id.*)

Plaintiff alleges that on February 10, 2019, he filled his
prescription for Voltaren Gel, but the amount that he was
usually prescribed doubled "from two tubes to four." (*Id.*)
Plaintiff alleges that, pursuant to New York State Workers'
Compensation Law, any prescription medication change must
be accompanied by either an appointment where the change
was requested or a written order from a treating physician
explaining why the change was necessary. (*Id.*) Plaintiff
alleges that he did not request a change in the amount of
Voltaren Gel and he has not seen any written order explaining
a need for the increase. (*Id.*)

Plaintiff alleges that on February 26, 2019, he was examined
by Dr. Saleem, who ordered a colonoscopy to determine the
cause of Plaintiff's rectal bleeding. (*Id.*) Plaintiff alleges that
Defendant Bolger "assisted the office staff" at Dr. Saleem's
office "with completing the [C-4] form." (*Id.*) Plaintiff alleges
that he did not have the colonoscopy procedure because his
request through workers' compensation was not approved and
he did not have health insurance. (*Id.*)

**\*2** Plaintiff alleges that, at some point in time, due to the
rectal bleeding, on his own accord, he stopped taking all of
the other medication he was prescribed except the Voltaren
Gel. (*Id.*)

Plaintiff alleges that on June 1, 2019, he obtained health
insurance. (*Id.*) Plaintiff alleges that on June 12, 2019, he
scheduled his first colonoscopy, and was diagnosed with

**Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)**

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 93 of 143

ulcerative colitis, which requires him to take Mesalamine for the rest of his life. (*Id.*) The same day, Plaintiff alleges that he applied the Voltaren Gel and looked closely at the container, which contained a warning to discontinue use if rectal bleeding occurred. (*Id.*) Plaintiff alleges that he immediately ceased use of Voltaren Gel and began taking Mesalimine, and the rectal bleeding stopped the following day. (*Id.*)

Plaintiff alleges that Voltaren Gel is "a powerful NSAID which contains the chemicals known to cause deterioration of the mucosal walls of the colon." (*Id.*) Plaintiff alleges that Defendant Caulkins was aware of the risks associated with Voltaren and that in July of 2018, she stated that his Voltaren Gel dosage should not be increased due to toxicity. (*Id.*) Plaintiff alleges that he filed a medical malpractice lawsuit in New York State court against Defendant Caulkins, and that in retaliation, she improperly doubled his prescription for Voltaren Gel. (*Id.*)

Plaintiff alleges that Defendant Bolger improperly authorized his Voltaren Gel prescription change but failed to authorize the colonoscopy procedure. (*Id.*)

Plaintiff alleges that Defendant NCAComp and its employees intentionally deny medical treatment so that it does not have to pay for the treatment. (*Id.*)

Plaintiff alleges that Defendant Barnes is associated with the New York State Workers' Compensation Board and was aware that Plaintiff was being treated for rectal bleeding, that his Voltaren Gel prescription was doubled, and took no action to protect him. (*Id.*)

Plaintiff alleges that in December—of an unspecified year—he received a report completed by independent medical examiner Defendant Breite, which included several false claims and omitted significant information. (*Id.*)

Based on these factual allegations, Plaintiff appears to assert the following seven causes of action: (1) a claim that Defendant Caulkins retaliated against him by improperly doubling his prescription for Voltaren Gel after he filed a medical malpractice suit against her, and that Defendant Bolger authorized the improper increased prescription; (2) a claim that Defendant Bolger intentionally denied Plaintiff's necessary medical treatment by failing to provide information when requested and then providing inaccurate information; (3) a claim that Defendant NCAComp, through its employees,

denied Plaintiff his prescribed gym membership in violation of New York State Workers' Compensation Law; (4) a claim that Defendant Caulkins falsified records by stating that Plaintiff's left hip replacement was not causally related to his work injury; (5) a claim that Defendant Breite violated his Hippocratic oath by stating that ulcerative colitis is not a disease, which caused violations of Plaintiff's "constitutional right to due process and equal access to medical treatment"; (6) a claim that Defendant Barnes has been e-mailed "many documents" and knows that Plaintiff "has been grossly denied his right to due process and access accommodations" and that he is permanently disabled but the Workers' Compensation Board refuses to identify him as such, which is a "gross violation of [his] right to life, liberty, and the pursuit of happiness" and an intentional infliction of emotional distress; and (7) a claim that pursuant to New York Workers' Compensation Law, Defendant NCAComp intentionally denied Plaintiff a medical procedure, which resulted in denial of his procedural and substantive due process rights and was a "gross violation of the covenant of 'Exclusive Remedy.' " (*Id.*)

**\*3** As relief, Plaintiff seeks $120,000.00 in damages from each of Defendants and treble damages pursuant to the Americans with Disabilities Act. (*Id.*)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [1] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [2]

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

**Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)**

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 94 of 143

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**\*4** Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United*

*States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Claims Pursuant to 42 U.S.C. § 1983

To the extent that Plaintiff attempts to assert any constitutional claims, the Court construes those claims as made pursuant to 42 U.S.C. § 1983. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (internal quotation marks omitted). "A plaintiff pressing a claim of [a] violation of his constitutional rights under § 1983 is thus required to show state action." *Fabrikant*, 691 F.3d at 206 (internal quotation marks omitted). "State action requires *both* ... the exercise of some right or privilege created by the State ... *and*" the involvement of "a person who may fairly be said to be a state actor." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and brackets omitted).

There is no single test that is determinative of whether a private person or entity may be a state actor, but rather a host of factors. *Baum. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 428 (N.D.N.Y. 2011) (Treece, M.J.). A state actor may be found when: (1) "[the challenged activity] results from the State's exercise of coercive powers"; (2) "the State provides significant encouragement, either overt or covert ... or when a private actor operates as a willful participant in joint activity with the State or its agents"; (3) "it is controlled by an agency of the State;" (4) "it has been delegated a public function by the State [known as the public function test]"; or (5) "it is entwined with governmental policies or when government is

**Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)**

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 95 of 143

entwined in its management or control[.]" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (citations, quotation marks, and alterations omitted). [3]

**\*5** Here, Defendants ostensibly are private actors. However, in the interest of reading Plaintiff's Amended Complaint "liberally and interpreted to raise the strongest arguments that [it can] suggest," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013), the Court considers whether Defendants' alleged activities establish "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be treated as that of the State itself.' " *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Plaintiff does not allege facts plausibly suggesting that the state exercised coercive power over Defendants. Therefore, the Court considers the joint-activity and public-function tests.

"The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the [state].' " *Forbes v. City of New York*, 05-CV-7331, 2008 WL 3539936, at \*5 (S.D.N.Y. Aug. 12, 2008) (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)). "A private actor can only be a willful participant in joint activity with the State or its agents if the two share some common goal to violate the plaintiff's [constitutional] rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (internal citations omitted). Here, Plaintiff fails to allege facts plausibly suggesting the existence of a conspiracy or a "prearrangement" between Defendants and the state. As a result, I find that Plaintiff fails to allege facts plausibly suggesting joint action. *See Brignardello v. Las Vegas Metro Police Dep't*, 06-CV-0855, 2006 WL 3308428, at \*2-3 (D. Nev. Nov. 13, 2006) (finding that the complaint "failed to set forth any facts showing that [the third-party insurance administrators] conspired with [the Las Vegas Metro Police Department] to deprive [the plaintiff] of his constitutional rights" and thus, failed to allege " 'joint action with state actors to violate' his constitutional rights.").

Under the public-function test, "a private entity may be considered a state actor when it exercises a function 'traditionally exclusively reserved to the State.' " *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019). "The [Supreme] Court has stressed that 'very few' functions fall into that category." *Manhattan Cmty. Access*

*Corp.*, 139 S. Ct. at 1929 (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)). Public functions may include running elections and operating a company town but not running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, or supplying electricity. *Id.*

Here, Plaintiff fails to allege facts plausibly suggesting that Defendants perform a public function. Neither the provision of medical services nor the administration of insurance payments in connection with state workers' compensation system are functions traditionally and exclusively exercised by the government. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 529 U.S. 40, 55-57 (1999) (holding that private companies' administration of insurance payments in connection with state workers' compensation system was not state action); *DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 69-70 (E.D.N.Y. Aug. 29, 2019) (finding that "[n]either the provision of chiropractic services nor the issuance of medical reports pursuant to FECA is a function traditionally and exclusively exercised by government."); *Peterec-Tolino v. Ace Am. Ins. Co.*, 20-CV-5354, 2020 WL 5211045, at \*4-5 (S.D.N.Y. Aug. 28, 2020) (holding that independent medical examiners and a private insurance company are not state actors for claims pursuant to 42 U.S.C. § 1983).

**\*6** Therefore, I find that drawing all reasonable inferences and construing the Amended Complaint liberally, it fails to allege facts plausibly suggesting that Defendants are state actors for purposes of liability pursuant to 42 U.S.C. § 1983. As a result, I recommend that Plaintiff's claims pursuant to 42 U.S.C. § 1983, be dismissed for failure to state a claim.

In the alternative, I recommend that to the extent that Plaintiff asserts a claim pursuant to the equal protection clause, that claim be dismissed for failure to state a claim.

Under the Equal Protection Clause, a state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. At its core, equal protection prohibits the government from treating similarly situated persons differently. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Sound Aircraft Services, Inc. v. Town of East Hampton*, 192 F.3d 329, 335 (2d Cir. 1999). Vague or nonspecific allegations are insufficient to make out an equal protection claim.

Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 96 of 143

In order to claim that the conduct of Defendants violate Plaintiff's equal protection rights, he must allege that:

> (1) ... compared with others similarly situated, [he] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [him].

*Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)).

Plaintiff appears to assert an equal protection claim under the "class of one" theory. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008). Under this theory, a plaintiff must show that he was "intentionally treated differently from other similarly-situated individuals without any rational basis." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). Additionally, "an extremely high degree of similarity between" Plaintiff and the person with whom he compares himself must be alleged. *Clubside, Inc.*, 468 F.3d at 159 (citing *Neilson*, 409 F.3d at 104).

The Amended Complaint fails to allege facts plausibly suggesting that Plaintiff was treated differently from other similarly-situated individuals without any rational basis. As a result, I recommend that, in the alternative, Plaintiff's equal protection claim against Defendants be dismissed for failure to state a claim.

**B. Claims Pursuant to the ADA**

To the extent that Plaintiff intended to assert claims pursuant to the ADA, I recommend that those claims be dismissed for failure to state a claim upon which relief may be granted.

The Amended Complaint includes no allegations of discrimination based on Plaintiff's disability. (*See generally* Dkt. No. 5.) In addition, construing the Amended Complaint liberally, as the Court must, Plaintiff failed to allege facts

plausibly suggesting claims pursuant to Title II, Title III, or Title V of the ADA. [4]

**1. Title II of the ADA**

**\*7** Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected*, 511 F.3d 238 (2d Cir. 2004)). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead a violation of Title II of the ADA, a plaintiff must allege "(1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)) (internal quotation marks omitted).

A "qualified individual" is

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A qualified individual can base a discrimination claim on any of "three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003).

Case 3:24-cv-00267-LEK-ML Document 11 Filed 07/03/24 Page 97 of 143

Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)

The public entities defined in the ADA are state or local governments and their instrumentalities. 42 U.S.C. § 12131(1). Private entities are not subject to the provisions of Title II even if they receive government funding. *Wilshire v. L&M Dev. Partners*, 20-CV7998, 2022 WL 847067, at *3 (S.D.N.Y. Mar. 22, 2022) (citing *Wiltz v. N.Y. Univ.*, 19-CV-3406, 2019 WL 8437456, at *7 (S.D.N.Y. Dec. 23, 2019), *report-recommendation adopted by*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020) (collecting cases on private entities receiving government funding not being subject to Title II of the ADA)).

Here, the Amended Compliant is devoid of factual allegations plausibly suggesting that Defendants are public entities. As set forth above in Part IV.A. of this Order and Report-Recommendation, the Amended Complaint fails to allege facts plausibly suggesting that Defendants are state actors. In addition, the Amended Complaint fails allege facts plausibly suggesting that Plaintiff was unable to access programs due to his disability, how his disability prevented him from accessing those programs, or what accommodations he sought and was denied by Defendants. (*See generally* Dkt. No. 5.)

Moreover, "[w]hen a private individual seeks damages under Title II of the ADA, the Second Circuit requires the plaintiff to 'establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability.' " *Day v. Warren*, 06-CV-0155, 2008 WL 474261, at *4 (D. Conn. Feb. 7, 2008) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001)). The Amended Complaint fail to allege facts plausibly suggesting discriminatory animus or ill will towards Plaintiff's alleged disability or disabilities. (*See generally* Dkt. No. 5.)

As a result, I recommend that Plaintiff's ADA claims under Title II be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. *See Hill v. LaClair*, 20-CV-0441, 2020 WL 2404771, at *8 (N.D.N.Y. May 11, 2020) (Hurd, J.) (dismissing ADA Title II claims "pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted."). [5]

### 2. Title III of the ADA

**\*8** Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Doctors' offices and hospitals are considered "public accommodations" for the purposes of the ADA. 42 U.S.C. § 12181(7)(F) (defining "public accommodation" to include "a ... professional office of a health care provider [and] hospital").

Discrimination on the basis of disability in public accommodations involves, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing 42 U.S.C. § 12182(b)(2)(A)(iii)); *see also Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii) ("The Act defines discrimination to include ... 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods [and] services ... to individuals with disabilities, unless ... such modifications would fundamentally alter the nature of such goods [and] services.' ")).

The Amended Complaint does not allege facts plausibly suggesting that Defendants' actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff. Although the Amended Complaint appears to allege that: (1) Defendant NCAComp denied Plaintiff's claims in an effort to save money, (2) Defendant Caulkins rendered inadequate medical care, (3) Defendant Bolger knew of Defendant Caulkins' improper medical care and inappropriately approved Plaintiff's prescription change, (4) Defendant Breite's independent medical report included inaccurate information, and (5) Defendant Barnes knew of Defendant Caulkins' improper medical care, it does not allege that Defendants took these actions for the purpose of discriminating against Plaintiff because of an alleged disability.

As a result, I recommend that Plaintiff's disability discrimination pursuant to Title III of the ADA be dismissed for failure to state a claim.

In the alternative, I recommend that Plaintiff's Title III claim be dismissed because Plaintiff seeks only monetary damages,

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 98 of 143

Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)

and the sole available remedy under Title III of the ADA is injunctive relief. 42 U.S.C. § 12188(a)(1). "Monetary relief ... is not available to private individuals under Title III of the ADA." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *see also Krist.* 688 F.3d at 94 (holding that Title III of the ADA "authorizes private actions only for injunctive relief, not monetary damages"). "Since [P]laintiff seeks only monetary relief with respect to [his] ADA claims", the Amended Complaint "fails to state a plausible claim for relief under Title III of the ADA." *Sandler v. Benden*, 15-CV-1193, 2016 WL 9944017, at *16 (E.D.N.Y. Aug. 19, 2016), *aff'd*, 2017 WL 5256812 (2d Cir. Nov. 13, 2017).

Here, Plaintiff has not requested injunctive relief and thus has failed to state a claim upon which relief may be granted. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 (1990) (*quoting Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). As a result, I recommend that, to the extent that Plaintiff intended to assert claims pursuant to Title III of the ADA, those claims be dismissed.

### 3. Title V of the ADA

**\*9** 42 U.S.C. § 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." For an ADA retaliation claim, a plaintiff must plead the following: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse ... action; and (4) a causal connection between the protected activity and the adverse ... action." *Perez v. City of New York*, 843 F. App'x 406, 407 (2d Cir. 2021) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

"Protected activity is action taken to protest or oppose statutorily prohibited discrimination." *Shannon v. Credit Agricole Sec. (USA), Inc.*, 17-CV-0667, 2021 WL 1063183, at *9 (S.D.N.Y. Mar. 19, 2021) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019)). "Protected activities include requests for reasonable accommodations." *Wells v. Achievement Network*, 18-CV-6588, 2021 WL 810220, at *11 (S.D.N.Y. Mar. 2, 2021) (citing *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)).

The Amended Complaint fails to allege facts plausibly suggesting that Plaintiff engaged in any protected activity. Instead, Plaintiff appears to allege that he filed a medical malpractice lawsuit against Defendant Caulkins in February 2019. (Dkt. No. 5 at 7-8.) This is insufficient to allege that Plaintiff "has opposed any act or practice made unlawful by" the ADA. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."); *Weinstein v. Miller*, 21-CV-4543, 2021 WL 3038370, at *7 (S.D.N.Y. July 15, 2021) (dismissing the plaintiff's complaint where she failed to allege facts "suggesting that she made [a] complaint of disability discrimination or that any Defendant discriminated or retaliated against her because of any such complaint."); *Smith v. City of New York*, 15-CV-4493, 2016 WL 4574924, at *10 (S.D.N.Y. Sept. 1, 2016) (finding that the plaintiff's "objection to being subjected to the disrobement policy does not constitute a protected activity because [the plaintiff] cannot show an objectively reasonable basis for believing that the policy violates the ADA.").

Moreover, Plaintiff has not alleged any adverse actions that would be sufficient to state a claim of retaliation. "Actions are materially adverse if they are harmful to the point that they could well dissuade a reasonable [person] from making or supporting a charge of discrimination [or retaliation]." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). It is well established that complaints about medical treatment are generally insufficient to state a claim under the ADA. *See United States v. Univ. Hosp.*, 729 F.2d 144, 156-60 (2d Cir. 1984); *see also Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab[ilitation] Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions.") (citing cases). Here, the undersigned simply will not second-guess Defendant Caulkins' alleged decision to change Plaintiff's prescription quantity. *See Smith*, 2016 WL 4574924, at *11 (finding that the plaintiff failed to allege a claim of retaliation pursuant to the ADA based on allegations that the plaintiff disagreed with the decisions made by the defendant hospital about the plaintiff's care).

**\*10** As a result, I recommend that, to the extent Plaintiff intended to assert claims pursuant to Title V of the ADA, those claims be dismissed for failure to state a claim upon which relief may be granted.

In the alternative, I recommend that Plaintiff's claim be dismissed because Title V "does not provide for punitive or compensatory damages under the ADA." *Jones v. Volunteers of Am. Greater New York*, 20-CV-5581, 2022 WL 768681, at *6 n.8 (S.D.N.Y. Mar. 14, 2022) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269-70 (9th Cir. 2009) (holding "punitive and compensatory damages are not available for ADA retaliation claims."); *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961 (7th Cir. 2004), *cert. denied*, 542 U.S. 932 (2004) (holding that a plaintiff can only recover equitable relief for a retaliation claim under the ADA); *Shipman v. New York State Office of Persons with Developmental Disabilities*, 11-CV-2780, 2012 WL 897790, at *9 (S.D.N.Y. Mar. 12, 2012) (even in the retaliation context, "individuals cannot be held liable for money damages under the ADA in either their personal or official capacities."), *report and recommendation adopted* 2012 WL 3704837, at *3 (S.D.N.Y. Mar. 26, 2012) (money damages unavailable under the ADA)).

### C. State Law Claims

Having found that all of Plaintiff's federal claims are subject to dismissal, I recommend that, to the extent that Plaintiff has asserted any state law claims, the Court decline to exercise jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").

In the alternative, I recommend that Plaintiff's state law claims be dismissed for failure to state a claim.

### 1. Intentional Infliction of Emotional Distress ("IIED")

New York has adopted the Restatement (Second) formulation of IIED. *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115 (N.Y. 1993). "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Restatement (Second) of Torts § 46(1) (1965). This broad definition, is "both a virtue and a vice." *Howell*, 81 N.Y.2d at 122. "The tort is as limitless as the human capacity for cruelty. The price for this flexibility in redressing utterly reprehensible behavior, however, is a tort that, by its terms, may overlap other areas of the law, with potential liability for conduct that is otherwise lawful." *Id.* Therefore, IIED "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citations omitted).

**\*11** Under New York law, then, a claim for IIED requires a showing of: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell*, 81 N.Y.2d at 121.

Under New York law, although "[t]he standard of outrageous conduct is strict, rigorous and difficult to satisfy ..., that is not the case when there is a deliberate and malicious campaign of harassment or intimidation." *Scollar v. City of New York*, 74 N.Y.S.3d 173, 178 (N.Y. App. Div. 1st Dep't 2018) (internal quotations omitted). To be sure, "it is manifestly neither practical nor desirable for the law to provide[ ] a remedy against any and all activity which an individual might find annoying." *Nader v. Gen. Motors Corp.*, 25 N.Y.2d 560, 569 (N.Y. 1970). At the same time, "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation," IIED provides a remedy. *Nader*, 25 N.Y.2d at 569. "In other words, under New York law, the proper inquiry is not merely whether each individual act might be outrageous. Rather, the question is whether those actions—under the totality of the circumstances—amounted to a deliberate and malicious campaign." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 123 (2d Cir. 2019).

The Amended Complaint fails to allege facts plausibly suggesting that Defendants engaged in extreme and outrageous conduct. As a result, in the alternative, I recommend that Plaintiff's claim for IIED be dismissed for failure to state a claim upon which relief may be granted.

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 100 of 143

**Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)**

### 2. Hippocratic Oath

"[V]iolating the Hippocratic oath does not state a claim upon which relief can be granted." *See Moore v. St. John's Hosp.*, 15-CV-4177, 2016 WL 1735769, at *3 (C.D. Ill. Mar. 23, 2016); *accord Brady v. Halawa Corr. Facility Med. Unit Staff*, 05-CV0144, 2006 WL 2520607 (D. Hawaii Aug. 29, 2006); *see also Rose v. Borsos*, 17-CV-0204, 2018 WL 3967673, at *12 (E.D. Tenn. Aug. 17, 2018) (dismissing the plaintiff's claim for violation of the Hippocratic Oath because "there are no federal ... civil causes of action for violations of professional ethics.").

As a result, I recommend that Plaintiff's claim be dismissed for failure to state a claim. [6]

### 3. Exclusive Remedy

**\*12**  "In New York, recovery for accidental injuries arising out of and in the course of employment, including injuries caused by an employer's negligence, is governed by the Workers' Compensation Law." *Arroyo v. WestLB Admin., Inc.*, 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 625 (2d Cir. 2000) (citing *O'Brien v. King World Prods., Inc.*, 669 F. Supp. 639, 641 (S.D.N.Y. 1987); *Persaud v. S. Axelrod Co.*, 95-CV-7849, 1996 WL 11197, at *5 (S.D.N.Y. Jan. 10, 1996)). To the extent that a plaintiff may recover for his injuries under the Workers' Compensation Law, this law becomes the plaintiff's exclusive remedy against his employer. *See* N.Y. Work. Comp. Law § 11. Exceptions to the exclusive remedy provision of the Workers' Compensation law are limited to circumstances in which the employer failed to secure workers' compensation insurance or intentionally injured the employee. *See Garibaldi v. Anixter, Inc.*, 492 F. Supp. 2d 290, 292 (W.D.N.Y. 2007) (citing *Hill v. Delta Int'l Mach. Corp.*, 386 F. Supp. 2d 427, 432 (S.D.N.Y. 2005)).

Thus, the exclusive remedy provisions of New York State's Workers' Compensation Law, provide employers an affirmative defense in claims seeking damages for accidental injuries arising out of and in the course of employment. *See Hnatko v. Langston Corp.*, 10-CV-0991, 2012 WL 1574751, at *2 (N.D.N.Y. May 3, 2012) (Mordue, J.) (granting the third-party defendant employer's motion to dismiss where it produced evidence that it had procured a policy of workers compensation and that the plaintiff received benefits pursuant

to the policy as a result of the injuries he sustained); *Roche v. T.G. Realty, Inc.*, 266 A.D.2d 367, 367 (N.Y. App. Div. 2d Dep't 1999) (finding that the trial court erred in striking the defendant's affirmative defense based upon the exclusive remedy provisions of the Workers' Compensation Law). Therefore, the exclusive remedy provisions do not provide a private cause of action for Plaintiff to seek damages.

As a result, I recommend that, to the extent Plaintiff sought to assert a claim pursuant to the exclusive remedy provisions, such claim be dismissed for failure to state a claim upon which relief may be granted.

### 4. Workers' Compensation Law

Here, Plaintiff alleges that Defendant NCAComp violated New York Workers' Compensation Law by denying him a gym membership. (Dkt. No. 5 at 13.) However, Plaintiff has already litigated the issue of his gym membership in state court. (Dkt. No. 5 at 8); *Brennan v. Vil. of Johnson City*, 192 A.D.3d 1287 (N.Y. App. Div. 3d Dep't 2021). The New York Appellate Division Third Department held that Plaintiff "successfully obtained authorization for a one-year gym membership, reimbursement for monies already paid for that membership and the right to reimbursement for future amounts paid for that gym membership." *Brennan*, 192 A.D. 3d at 1289. Therefore, the Appellate Division found that it lacked jurisdiction to entertain Plaintiff's appeal because Plaintiff obtained the relief that he sought and was thus, not "aggrieved by the Board's September 2019 decision such that he may invoke this Court's jurisdiction." *Id.* at 1288.

As a result, I recommend that, to the extent that Plaintiff seeks review of the New York State Workers' Compensation Board's decision regarding his gym membership, such claim be dismissed because he has obtained the relief he sought. [7]

## V. OPPORTUNITY TO AMEND

**\*13**  Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better

pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend will be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

In this case, it is not clear whether better pleading would permit Plaintiff to assert cognizable causes of action pursuant to 42 U.S.C. § 1983, the ADA, and New York State law for intentional infliction of emotional distress and violation of the Workers' Compensation provisions. Out of deference to Plaintiff's *pro se* status, I recommend that Plaintiff be granted leave to amend the Complaint with respect to these claims.

However, with respect to Plaintiff's claims for violation of the Hippocratic oath and the exclusive remedy, I recommend that those causes of action be dismissed without leave to replead because the problems with those claims are substantive and a better pleading will not cure the deficiencies.

If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individual named as Defendant is involved in the allegedly unlawful activity. Finally, Plaintiff is informed that any such amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 5) to the extent that it asserts claims pursuant to 42 U.S.C. § 1983, the ADA, and New York State law for intentional infliction of emotional distress and violation of the Workers' Compensation provisions, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**\*14 RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 5) to the extent that it asserts claims pursuant to the Hippocratic Oath and New York State Workers' Compensation Law exclusive remedy, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b) (1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4290660

**Footnotes**

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 102 of 143

Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)

1    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

2    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

3    On occasion, these criteria have been stated differently but the impact remains the same:

> The conduct of private actors can be attributed to the State for [§ 1983] purposes if (1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State.

*Hogan v. A.O. Fox Mem'l Hosp.,* 346 F. App'x 627, 629 (2d Cir. 2009) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008)).

4    Based on the facts alleged, Plaintiff could not proceed with a claim under Title I of the ADA, which addresses employment discrimination, because he has neither alleged that he was employed by Defendants, nor alleged that he exhausted administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court. 42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360, n.1 (2001)) (" 'Title I of the ADA expressly deals with th[e] subject' of employment discrimination."). Moreover, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications. *Genco v. Sargent & Collins LLP*, 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018).

5    In the alternative, to the extent that Plaintiff attempts to assert ADA Title II claims against Defendants Bolger, Caulkins, Breite, and Barnes in their individual capacities, I recommend that those claims be dismissed because "individuals cannot be held liable under the ADA." *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA.").

6    Even if the Court construed Plaintiff's violation of the Hippocratic Oath claim as a medical malpractice claim, a medical malpractice claim is pursuant to New York law. *See Buchanan v. Hesse*, 21-CV-0649, 2022 WL 829163, at *1 (Mar. 21, 2022) (concluding that a medical malpractice claim is governed by New York law); *Lindenbaum v. Northwell Health, Inc.*, 21-CV-1525, 2022 WL 541644, at *7 (E.D.N.Y. Feb. 23, 2022) (opting to exercise supplemental jurisdiction over the plaintiff's "New York State law claims for medical malpractice" because the plaintiff's "Section 1983 claim will proceed."). As set forth above, I recommend that because Plaintiff's federal claims are subject to dismissal, the Court decline to exercise supplemental jurisdiction over any state law claims. The Court also notes that Plaintiff appears to allege that he has brought an action

**Brennan v. NCAComp Inc., Not Reported in Fed. Supp. (2022)**

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 103 of 143

sounding in medical malpractice claim against Defendant Caulkins in New York State Court. As a result, any medical malpractice claim here may be duplicative.

7    In addition, Plaintiff's claim may be subject to dismissal based on the *Rooker-Feldman* doctrine, which directs that except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007).

8    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

9    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

10   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    12

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 104 of 143

Brennan v. NCAComp, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 3097843
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin Joseph Gabriel BRENNAN, Plaintiff,

v.

NCACOMP, INC.; Joleen M. Bolger (Snowdon),
Manager of NCAComp, Inc.; Dr. Anne M. Caulkins,
Site Supervisor of Our Lady of Lourdes Mem'l
Hosp. and Wellness Ctr.; Dr. Ira Breite, Indep. Med.
Examiner; and Rene Barnes (Picirrili), Manager of
New York State Workers Comp. Bd., Defendants.

3:22-CV-0127 (GTS/ML)
|
Signed August 4, 2022

**Attorneys and Law Firms**

KEVIN JOSEPH GABRIEL BRENNAN, Plaintiff, Pro Se,
319 Exchange Avenue, Townhouse #20, Endicott, New York
13760.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kevin Joseph Gabriel Brennan ("Plaintiff")
against NCAComp, Inc., and the four above-captioned
individuals (together "Defendants"), are (1) United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice at this time (without prior leave to amend) and
that the remainder of Plaintiff's claims be dismissed with prior
leave to amend, and (2) Plaintiff's Objection to the Report-
Recommendation. (Dkt. Nos. 6, 8.) For the reasons set forth
below, the Report-Recommendation is accepted and adopted
in its entirety.

## I. RELEVANT BACKGROUND

### A. Magistrate Judge Lovric's Report-
### Recommendation
Generally, in his Report-Recommendation, Magistrate Judge
Lovric made the following six findings of fact and
conclusions of law: (1) to the extent Plaintiff's Amended

Complaint asserts any claims under 42 U.S.C. § 1983, those
claims should be *sua sponte* dismissed, with prior leave to
amend, for failure to state a claim upon which relief can
be granted, because (a) the Amended Complaint fails to
allege facts plausibly suggesting that any Defendant was a
state actor, and (b) in the alternative, any claims asserted
under the Fourteenth Amendment's Equal Protection Clause
are unsupported by factual allegations plausibly suggesting
that Plaintiff was intentionally treated differently from other
similarly situated individuals without any rational basis; (2)
to the extent Plaintiff's Amended Complaint asserts any
claims under the Americans with Disabilities Act ("ADA"),
those claims should be *sua sponte* dismissed, with prior
leave to amend, for failure to state a claim upon which
relief can be granted, because (a) the Amended Complaint
fails to allege facts plausibly suggesting that any Defendant
was a public entity for purposes of Title II of the ADA,
that Plaintiff was unable to access programs due to his
disability, how his disability prevented him from accessing
those programs, what accommodations he sought and was
denied by that Defendant, or that any such Title II violation
was motivated by either discriminatory animus or ill will due
to disability, (b) the Amended Complaint fails to allege facts
plausibly suggesting that Defendants' actions constituted
discrimination, or resulted in the discriminatory provision
of services to Plaintiff, under Title III of the ADA, and
the Amended Complaint fails to request the only available
relief under Title III, namely, injunctive relief, and (c) the
Amended Complaint fails to allege facts plausibly suggesting
that Plaintiff engaged in any protected activity, or experienced
any adverse action, under Title V of the ADA, and (again)
the Amended Complaint fails to request the only available
relief under Title V, namely, injunctive relief; (3) to the
extent Plaintiff's Amended Complaint asserts a claim for
the intentional infliction of emotional distress under New
York State law, that claim should be *sua sponte* dismissed,
with prior leave to amend, for failure to state a claim upon
which relief can be granted, because it does not allege facts
plausibly suggesting that Defendants' conduct was "extreme"
or "outrageous"; and (4) to the extent Plaintiff's Amended
Complaint asserts any claims under the Hippocratic Oath,
those claims should be *sua sponte* dismissed at this time,
without prior leave to amend, for failure to state a claim upon
which relief can be granted, because violating the Hippocratic
Oath does not give rise to a cause of action; (5) to the
extent Plaintiff's Amended Complaint asserts any claims for
accidental injuries arising out of and in the course of his
employment, those claims should be *sua sponte* dismissed
at this time, without prior leave to amend, for failure to

Brennan v. NCAComp, Inc., Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 105 of 143

state a claim upon which relief can be granted, because the exclusive-remedy provision of the New York Workers' Compensation Law deprives Plaintiff of a private cause of action for such accidental injuries; and (6) to the extent that Plaintiff's Amended Complaint asserts a claim for the denial of a prescribed gym membership under the New York Workers' Compensation Law, those claims should be *sua sponte* dismissed, with prior leave to amend, for failure to state a claim upon which relief can be granted, because he has already obtained the relief sought in New York State court. (Dkt. No. 6, Part IV.)

### B. Plaintiff's Objection to the Report-Recommendation

**\*2**  Generally, in his Objection, Plaintiff asserts the following three arguments: (1) Plaintiff's retaliation claim against Defendant Caulkins should not be dismissed, because he has alleged facts plausibly suggesting that (a) he engaged in protected activity under the ADA by somehow causing the termination of her "co supervisor," and (b) he experienced adverse action when Defendant Caulkins prescribed a stronger non-steroidal anti-inflammatory drug to treat his ulcerative colitis condition than necessary (and failed to complete the Worker's Compensation form required for Plaintiff's disability application); (2) Plaintiff claims under 42 U.S.C. § 1983 should not be dismissed, because he has alleged facts plausibly suggesting that Independent Medical Examiners who are employed by New York State (like Defendant Breite) are state actors; and (3) Plaintiff's intentional-infliction-of-emotional-distress claim against Defendant Barnes should not be dismissed, because he has alleged facts plausibly suggesting that Defendant Barnes' conduct was extreme and outrageous. (*See generally* Dkt. No. 8.)

## II. STANDARD OF REVIEW

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate

judge in the first instance. [2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at \*1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

**\*3**  After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Lovric's thorough Report-Recommendation, the Court can find no error in those parts of the Report-Recommendation to which Plaintiff specifically objected, and no clear error in the remaining parts

Brennan v. NCAComp, Inc., Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 106 of 143

of the Report-Recommendation: Magistrate Judge Lovric employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein. To those reasons, the Court would add only that Plaintiff's Objections are not persuasive, because they are unsupported by either case law or the factual allegations of his Amended Complaint.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation (Dkt. No. 6) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 5) are *sua sponte* **DISMISSED with prejudice** (and without prior leave to amend):

(1) Plaintiff's claim pursuant to the Hippocratic Oath; and

(2) Plaintiff's claims for accidental injuries arising out of and in the course of his employment under the New York Workers' Compensation Law; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 5) **shall be DISMISSED with**

prejudice and without further Order of the Court if, **within thirty (30) days** of the issuance of this Decision and Order, Plaintiff does not file a Second Amended Complaint curing the above-described defects in those claims:

(1) Plaintiff's claims under 42 U.S.C. § 1983;

(2) Plaintiff's claims under the Americans with Disabilities Act;

(3) Plaintiff's claim for intentional infliction of emotional distress under New York State common law; and

(4) Plaintiff's claim for the denial of a prescribed gym membership under the New York Workers' Compensation Law; and it is further

**ORDERED** that, should Plaintiff file a Second Amended Complaint in this action, it shall be automatically referred to Magistrate Judge Lovric for review of its pleading sufficiency pursuant to 28 U.S.C. § 1915(e).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3097843

---

**Footnotes**

1    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 107 of 143

Brennan v. NCAComp, Inc., Not Reported in Fed. Supp. (2022)

the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

3    *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

4    *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 1406649
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John J. BENYI, Plaintiff,

v.

NEW YORK; Binghamton Police Department; Broome
County Sheriff's Department; New York Appellate
Division Third Department; United States District
Court for the Northern District of New York; Second
Circuit Court of Appeals; Detective Sergeant Barry
Angel; and Deputy Sheriff William Guyyey, Defendants.

3:20-CV-1463 (DNH/ML)
|
Signed 03/23/2021

**Attorneys and Law Firms**

JOHN J. BENYI, Plaintiff, Pro Se, Lea County Correctional
Facility, 6900 West Millen, Hobbs, New Mexico 88244.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 4) filed by John J. Benyi ("Plaintiff") to
the Court for review. For the reasons discussed below, I deny
Plaintiff's amended *in forma pauperis* application (Dkt. No. 4)
without prejudice, and I recommend that Plaintiff's Complaint
(Dkt. No. 1) be dismissed in its entirety, in part (1) without
prejudice and with leave to amend, and (2) with prejudice and
without leave to amend.

**I. BACKGROUND**

On November 30, 2020, Plaintiff commenced this action
by filing a verified Complaint and a motion to proceed *in
forma pauperis.* (Dkt. Nos. 1, 2.) On December 1, 2020,
the Court denied Plaintiff's *in forma pauperis* application as
incomplete and administratively closed the case. (Dkt. No. 3.)
On December 22, 2020, Plaintiff filed an amended *in forma
pauperis* application. (Dkt. No. 4.) As a result, on January 4,
2021, the case was reopened and restored to the Court's active
docket. (Dkt. No. 5.)

Construed as liberally [1] as possible, the Complaint alleges
that Plaintiff's civil rights were violated by New York State,
the Binghamton Police Department, the Broome County
Sheriff's Department, [2] the New York Appellate Division
Third Department, the United States District Court for the
Northern District of New York, the Second Circuit Court
of Appeals, Detective Sergeant Barry Angel, [3] and Deputy
Sheriff William Guyyey [4] (collectively "Defendants"). (*See
generally* Dkt. No. 1.) More specifically, Plaintiff alleges that
on April 17, 1987, his rights were violated by Defendant
Angel—an employee of Binghamton Police Department—
who concocted a false confession to non-existent crimes.
(Dkt. No. 1, Attach. 1 at 1.) In addition, Plaintiff alleges that
Inspector Donald Conidin—an employee of the Binghamton
Police Department—removed evidence from his dresser
and that Patrolman William Grace—an employee of the
Binghamton Police Department—stole his swiss army knife,
and, on information and belief, stole his television, stereo, and
audio and video tape collection. (*Id.*)

Plaintiff alleges that on May 30, 1987, Defendant Angel
and Defendant Guyyey—an employee of Broome County
Sheriff's Department—arranged to have him attacked by Scott
Haven, which resulted in Plaintiff suffering "serious brain
damage, ... numerous surgeries," and required Plaintiff to take
anti-seizure medications. (*Id.*)

**\*2** Plaintiff alleges that "[a]ll [three] of the cops probably
perjured themselves at trial," though it is unclear which three
police officers Plaintiff is referring to. (*Id.*) Plaintiff alleges
that he was acquitted of all indicted charges at his criminal
trial but convicted of an unindicted charge "on the say-so of
a proven perjurer[,] [Defendant] Angel." (*Id.* at 2.)

Plaintiff alleges that he filed a motion pursuant to N.Y. Crim.
Proc. Law § 440 but that Judge Monseratte "deliberately
ignored the proven perjury and fraud." (*Id.*) In addition,
Plaintiff alleges that Defendant New York Appellate Division
Third Department "refused to review the case" three weeks
before the chief justice was arrested by the Federal Bureau of
Investigations. (*Id.*)

Plaintiff alleges that United States District Judge Hurd of
Defendant United States District Court for the Northern
District of New York, "accepted an unsigned, unnotarized
'affidavit' from ADA Lehman ... and used it to dismiss the
case." [5] (*Id.*) In addition, Plaintiff alleges that Defendant
Second Circuit Court of Appeals declared Plaintiff's case a

Benyi v. New York, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 109 of 143

threat to national security and took away Plaintiff's rights. (*Id.*)

Plaintiff alleges that Defendants conspired with the New York Department of Corrections to lose his legal papers when he was transferred to Arthur Kill Correctional Facility ("Arthur CF"). (*Id.*) Plaintiff alleges that "they" [6] had me attacked a second time at Arthur CF. (*Id.*)

Plaintiff alleges that "they" provided false information to officials in New Mexico, which resulted in Plaintiff's arrest, his house being "invaded" three times, and threats to his wife unless Plaintiff pleaded guilty. (*Id.* 3.) Plaintiff alleges that he was arrested by his probation/parole officer for medical marijuana but that violation was dismissed. (*Id.*) Plaintiff alleges that "they" claimed that "they" found illegal porn on his computer but that Plaintiff merely searched a file sharing program for "Playboy" and none of the porn that he viewed was "labeled in any way that appeared illegal." (*Id.*)

Plaintiff alleges that "PPO Megan," "PPO Kevin," their supervisor Pollada, and Douglas and Gladys at La Posada halfway house conspired to cover up their culpability by forcing Plaintiff to plead guilty to—what appears to be a violation of the terms of Plaintiff's probation or parole —failure to program. (*Id.* at 4.) Plaintiff alleges that his failure to program was "their" fault, not his, and that these individuals threatened to arrest his "innocent caregiver," Margaret Malone. (*Id.*)

**\*3** The Complaint does not appear to assert any causes of action. However, attached to the Complaint are excerpts from a document with information and instructions for filing a complaint pursuant to 42 U.S.C. § 1983. In addition, Plaintiff states that he filed an action against the New Mexico Probation/Parole and La Posada Halfway House alleging causes of action pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1997, and the Americans with Disabilities Act ("ADA"). [7] (Dkt. No. 1 at 7.)

For relief, Plaintiff seeks his immediate release to the care of his United States Department of Veterans Affairs ("V.A.") caregiver, Margaret Malone, and his V.A. fiduciary, Dorota Montour, in California. (*Id.* at 5.)

Plaintiff also filed an amended application for leave to proceed *in forma pauperis*. (Dkt. No. 4.)

## II. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [8] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 4), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). However, Plaintiff has not filed the inmate authorization required in the Northern District pursuant to Local Rule 5.1.4(b)(1)(B). (*See generally* docket sheet; *see also* Dkt. No. 3.) [9]

Accordingly, Plaintiff's amended application to proceed with this action IFP is denied without prejudice.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that Plaintiff's Complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e); *see also* 28 U.S.C. 1915A(a) ("The court shall review ... as soon as practicable ... a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

**\*4** Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that — ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be

granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [10] Similarly, under 28 U.S.C. § 1915A, a court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curium) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Claims Pursuant to 42 U.S.C. § 1983

#### 1. Claims Against Defendants New York and New York Appellate Division Third Department

After carefully considering the matter, I recommend that Plaintiff's claims against Defendant New York and New York Appellate Division Third Department pursuant to 42 U.S.C. § 1983, be dismissed with prejudice because they are immune from suit.

**\*5** Defendant New York is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal or equitable relief, under the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984).

Moreover, Defendant New York State Appellate Division Third Department is merely an agency or arm of New York State. *See Ognibene v. Niagara Cnty. Sheriff's Dep't*, 03-CV-0678E, 2003 WL 2443989, at *3 (W.D.N.Y. Dec. 1, 2003) ("To the extent the plaintiff names various state courts as defendants and seeks either legal or equitable relief against them under § 1983, they are immune from such suit under the Eleventh Amendment."). As an agency or arm of the State of New York, the court is immune from suit under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Mercado v. Town of Goshen*, 20-CV-5399, 2020 WL 5210949, at *3 (S.D.N.Y. Aug. 28, 2020) ("Plaintiff sues the 'Orange County Court,' which is part of the New York State Unified Court System. The Court therefore dismisses Plaintiff's § 1983 claims against this Defendant under the doctrine of Eleventh Amendment immunity and because these claims are frivolous."); *Curto v. Palisades Collection, LLC*, 07-CV-529S, 2008 WL 11357852, at *4 (W.D.N.Y. Mar. 10, 2008) (dismissing the plaintiff's claims against the "New York State Unified Court System, 8[th] Judicial District Buffalo City Court" as barred by the Eleventh Amendment); *Saint-Fleur v. City of New York*, 99-CV-10433, 2000 WL 280328, *2

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 111 of 143

Benyi v. New York, Not Reported in Fed. Supp. (2021)

(S.D.N.Y., Mar. 14, 2000) (collecting cases) ("State courts, as arms of the State, are entitled to Eleventh Amendment immunity from suit in federal court."); *Fields v. Walthers,* 94-CV-1659, 1997 WL 204308 at *2 (N.D.N.Y. April 5, 1997) (Pooler, J.) ("For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity.").

As a result, I recommend that Plaintiff's claims against Defendants New York and New York Appellate Division Third Department [11] be dismissed with prejudice and without leave to amend. *Johnson v. Fischer,* 19-CV-1384, 2020 WL 758964, at *2 (N.D.N.Y. Feb. 14, 2020) (Stewart, M.J.) (recommending dismissal, without leave to amend, claims against the Appellate Division Third Department); *Dinsio v. Appellate Division, Third Dep't,* 16-CV-0324, 2017 WL 3016832, at *12 (N.D.N.Y. July 14, 2017) (Suddaby, C.J.) (citing *Zuckerman v. Appellate Division, Second Dep't, Supreme Court of the State of N.Y.,* 421 F.2d 625, 626 (2d Cir. 1970); *Bernstein v. New York,* 591 F. Supp. 448, 465 (S.D.N.Y. 2008)) ("Defendant correctly argues that, as the sole named Defendant in this case, the Eleventh Amendment bars Plaintiff's claims because the Third Department is considered 'an arm of the state of New York.' ").

### 2. Claims Against Defendants Binghamton Police Department and Broome County Sheriff's Department

**\*6** After careful consideration, I recommend dismissal of Plaintiff's claims pursuant to 42 U.S.C. § 1983 against Defendants Binghamton Police Department and Broome County Sheriff's Department because they are not entities susceptible to suit.

A municipal police department is not susceptible to suit pursuant to 42 U.S.C. § 1983. *La Grande v. Town of Bethlehem Police Dep't,* 08-CV-0738, 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) (Kahn, J.); *Davis v. Lynbrook Police Dep't,* 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (internal citations omitted). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Walker v. U.S. Marshalls,* 08-CV-0959, 2009 WL 261527, at *2 (E.D.N.Y. Feb. 4, 2009) (quoting *Hall v. City of White Plains,* 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)); *see also Nicholson v. Lenczewski,* 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (collecting cases).

Here, Plaintiff's claims against Defendants Binghamton Police Department and Broome County Sheriff's Department, which have no legal, separate identity apart from the City of Binghamton and Broome County, respectively, are not plausible. Therefore, I recommend dismissal of the claims against Defendants Binghamton Police Department and Broome County Sheriff's Department, with prejudice and without leave to amend. *See Jackson v. Gunsalus,* 16-CV-0647, 2016 WL 4004612, at *5 (N.D.N.Y. June 24, 2016) (Dancks, M.J.), *report and recommendation adopted,* 2016 WL 3983635 (July 25, 2016) (Sharpe, J.) (dismissing claims against the Syracuse Police Department with prejudice and without leave to amend because the Syracuse Police Department "is not susceptible to suit under § 1983."); *Makas v. Benjamin,* 09-CV-0129, 2009 WL 3871441, at *3 (N.D.N.Y. Nov. 18, 2009) (Kahn, J.) (dismissing claims against Ulster County Sheriff's Department as it is "an administrative arm of the county," which cannot be sued under § 1983).

### 3. Claims Against Defendants United States District Court for the Northern District of New York [12] and Second Circuit Court of Appeals

**\*7** After carefully considering the matter, I recommend that Plaintiff's claims against Defendants United States District Court for the Northern District of New York and Second Circuit Court of Appeals be dismissed based on the doctrine of sovereign immunity.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994); *see also Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."). "[T]he United States is immune from constitutional tort claims against the United States, its agencies, or federal employees sued in their official capacities." *Perez v. Hawk,* 302 F. Supp. 2d 9, 18 (E.D.N.Y. 2004).

As a result, I recommend that Plaintiff's § 1983 claims against the Federal defendants be dismissed for lack of subject matter jurisdiction. *See, e.g., Johnson v. Wolfe,* 19-CV-7337, 2019 WL 5784704, at *3-4 (S.D.N.Y. Nov. 5, 2019) (dismissing

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 112 of 143

**Benyi v. New York, Not Reported in Fed. Supp. (2021)**

claims against, *inter alia*, the Second Circuit Court of Appeals based on the doctrine of sovereign immunity); *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 301 (N.D.N.Y. 2019) (Hurd, J.) (dismissing the plaintiff's claims against the federal defendants pursuant to, *inter alia*, 42 U.S.C. § 1983, based on the doctrine of sovereign immunity); *Olmeda v. Babbits*, 07-CV-2140, 2008 WL 282122, at *5 (S.D.N.Y. Jan. 25, 2008) (dismissing plaintiff's §§ 1983, 1985, 1986 claims against federal agencies as barred by sovereign immunity).

The Court has also considered whether the Federal Tort Claims Act ("FTCA") might provide Plaintiff a means of relief. The FTCA grants a limited waiver of sovereign immunity that applies to "claims against the United States for money damages ... for injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

"Thus, for liability to arise under the FTCA, a plaintiff's cause of action must be comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred, and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988).

However, there is no indication that Plaintiff properly exhausted any possible claim under the FTCA, which requires a claimant to "first present[ ] the claim to the appropriate Federal agency" and have it "denied by the agency in writing." 28 U.S.C. § 2675(a). This failure provides independent justification to dismiss any such claim against the Federal defendants, too. *See, e.g., Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.").

**\*8** Moreover, Plaintiff has improperly named the federal agencies as defendants in this action. *See, e.g., Langella v. Bush*, 306 F. Supp. 2d 459, 463 (S.D.N.Y. 2004) ("Under the FTCA, suit must be brought directly against the United States, and federal agencies are immune from suit.").

As a result, I recommend that Plaintiff's claims against Defendants United States District Court for the Northern District of New York and Second Circuit Court of Appeals, be dismissed.

### 4. Claims Against Defendants Angel and Guyyey in Their Official Capacities

To the extent that Plaintiff intended to sue Defendants Angel and Guyyey in their official capacities, the Supreme Court has explained that this kind of claim is "to be treated as a suit against the entity"; i.e., the City of Binghamton and Broome County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

In *Monell v. Dep't of Soc. Servs.*, the Supreme Court held that a municipality may be held liable under § 1983 if a plaintiff can demonstrate that the constitutional violation was caused by a municipal "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, the Supreme Court has intentionally made these so-called "*Monell*" claims "hard to plead and hard to prove." *Crawley v. City of Syracuse*, 17-CV-1389, 2020 WL 6153610, at *9 (N.D.N.Y. Oct. 21, 2020) (Hurd, J.). "Unlike state tort law, a municipality cannot be held liable under § 1983 merely because it happened to employ the alleged tortfeasor." *Crawley*, 2020 WL 6153610, at *9.

Instead, "under § 1983[ ] local governments are responsible only for 'their *own* illegal acts.' " *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Thus, "to establish municipal liability under 42 U.S.C. § 1983, a plaintiff must demonstrate that the deprivation of his constitutional right was 'caused by a governmental custom, policy or usage of the municipality.' " *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (summary order) (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012)).

Through a series of decisions, the Supreme Court has recognized that *Monell* liability may be established through: (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to "deliberate indifference" to the rights of those who come into contact with the inadequately trained or supervised municipal employees. *Deferio*, 770

**Benyi v. New York, Not Reported in Fed. Supp. (2021)**

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 113 of 143

*F. App'x* at 590 (collecting cases); *see also Benacquista v. Spratt*, 217 F. Supp. 3d 588, 599-600 (N.D.N.Y. 2016) (Hurd, J.) (recognizing same theories of liability).

The Complaint does not allege facts plausibly suggesting that the City of Binghamton or County of Broome violated Plaintiff's rights based on a custom, policy, or practice. (*See generally* Dkt. No. 1.) In fact, the Complaint is devoid of any factual assertions related to wrongdoing by these municipal entities.

**\*9** As a result, I recommend that, to the extent Plaintiff intended to assert claims against Defendants Angel and Guyyey in their official capacities, those claims be dismissed for failure to state a claim upon which relief may be granted.

### 5. Statute of Limitations

The statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). The statute of limitations begins to run on the date that the plaintiff's claims accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Federal law governs the accrual date. *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know the injury which is the basis of his action." *Covington v. New York*, 171 F.3d 117, 121 (2d Cir. 1999) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)); *see Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (per curiam) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)) (a claim for equal protection accrues "when the plaintiff knew or should have known of the disparate treatment."). That is so even if "the full extent of the injury is not then known or predictable." *Fahs Const. Group, Inc.*, 725 F.3d at 292. "[S]tate tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997) (citing *Pearl*, 296 F.3d at 80).

Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-

CV-0578, 2018 WL 3121611, at *3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)), *report and recommendation adopted by*, 2018 WL 2316681 (N.D.N.Y. May 22, 2018) (Suddaby, C.J.); *Syfert v. City of Rome*, 17-CV-0578, 2017 WL 3405521, at *8-10 (N.D.N.Y. Aug. 7, 2017) (Dancks, M.J.) (same), *report and recommendation adopted by*, 2017 WL 5195230 (N.D.N.Y. Nov. 9, 2017) (Suddaby, C.J.); *Syfert v. City of Rome*, 15-CV-1149, 2015 WL 6819168, at *7-8 (N.D.N.Y. 2015) (Kahn, J.) (same).

Here, drawing all reasonable inferences and construing the Complaint liberally, Plaintiff commenced this action on November 20, 2020. (Dkt. No. 1.) [13] As a result, any causes of action in Plaintiff's Complaint that accrued before November 20, 2017, are barred by the statute of limitations.

The only dates set forth in the Complaint are (1) an incident that occurred on April 17, 1987, (2) an incident that occurred on May 30, 1987, and (3) Plaintiff's criminal trial that took place February 1988. (Dkt. No. 1 at 2; Dkt. No. 1, Attach. 1 at 1.) The Court also notes that Defendant New York Appellate Division Third Department denied Plaintiff's appeal on July 20, 1989. *People v. Benyi,* 152 A.D.2d 864 (N.Y. App. Div. 3d Dep't 1989). Moreover, on October 19, 1989, the New York Court of Appeals denied Plaintiff leave to appeal. *People v. Benyi,* 74 N.Y.2d 894 (N.Y. 1989). As set forth in note 5 *supra*, on February 22, 1991, Plaintiff filed a writ of habeas corpus claim in Defendant United States District Court for the Northern District of New York, which was dismissed on April 17, 1996. (*Benyi II*, Dkt. No. 43.) Any causes of action related to incidents that occurred on these dates, which occurred approximately twenty years before November 20, 2017, are barred by the statute of limitations.

**\*10** Moreover, I find that Plaintiff's allegations do not amount to a "continuing violation." The continuing violation doctrine, where applicable, is an "exception to the normal knew-or-should-have-known accrual date" if there is evidence of an ongoing discriminatory policy or practice. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). The continuing violation doctrine does not apply to "discrete acts," even where those discrete acts are a part of a "serial violation," but applies solely to claims that "by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez*, 802 F.3d at 220 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 114 of 143

Benyi v. New York, Not Reported in Fed. Supp. (2021)

101, 111 (2002)). When the doctrine applies, the limitations period begins to run when the defendant has engaged in "enough activity to make out an actionable ... claim," as long as the plaintiff has alleged some non-time-barred acts which contributed to the alleged violation. *Id.* (quoting *Morgan*, 536 U.S. at 117; *Harris*, 186 F.3d at 250). A continuing violation cannot "be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris*, 186 F.3d at 250 (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)).

The continuing violation doctrine is generally disfavored in this Circuit. *See Town of Ramopo v. Town of Clarkstown*, 16-CV-2004, 2017 WL 782500, at *5 (S.D.N.Y. Feb. 27, 2017); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)) ("[C]ourts in the Second Circuit 'have been loath to apply [the continuing violation doctrine]' absent a showing of compelling circumstances.' ").

According to Plaintiff, "[o]n April 17, 1987, Detective Sgt. Barry Angel did concoct a proven false 'confession' to proven non-existent crimes." (Dkt. No. 1, Attach. 1 at 1.) Thus, to the extent that Plaintiff asserts causes of action related to this alleged wrong, the claims, if any, would have accrued in 1987, or, at the very latest, February 1988, when the "crime lab examiner and pathologist testified for the DEFENSE" and Plaintiff was acquitted of all indicted charges. (Dkt. No. 1 at 3; Dkt. No. 1, Attach. 1 at 1.)

In addition, Plaintiff alleges that "[o]n May 30, 1987, 3 days after the crime lab report was issued proving the confession was a fraud, Det. Angel and Deputy Sheriff William Guyyey arranged to have [Plaintiff] attacked." (Dkt. 1, Attach. 1 at 1.) Plaintiff does not assert any allegations plausibly suggesting that he lacked a complete and present cause of action after the alleged attack on May 30, 1987. (*See generally* Dkt. No. 1.)

The other allegations in Plaintiff's Complaint appear to have occurred several years, possibly decades, apart. (Dkt. 1, Attach. 1.) As a result, I find no compelling circumstances present to warrant applying the continuing violation doctrine.

Under New York law, "the doctrine of fraudulent concealment prevents a party from fraudulently concealing wrongdoing until after the tolling of the statute of limitations." *Aiken v. Nixon*, 236 F. Supp. 2d 211, 240 (N.D.N.Y. 2002) (McAvoy, J.). "To invoke the doctrine of fraudulent concealment

properly [for purposes of seeking an equitable tolling of the statute of limitations], a plaintiff must establish three elements, including: (1) wrongful concealment by defendants [of their actions], (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *New York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y. 2013) (citing *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998); *Butala v. Agashiwala*, 916 F. Supp. 314, 319 (S.D.N.Y. 1996)). "The relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) (citing *Pearl*, 296 F.3d at 82; *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)).

**11** Here, the Court finds Plaintiff has not plausibly alleged any of the three elements to invoke this doctrine.

Further, although not raised by Plaintiff, having carefully reviewed the Complaint, the Court discerns no basis to invoke equitable tolling or equitable estoppel in order to salvage what are otherwise patently untimely claims. Under New York law, equitable tolling applies "where a plaintiff has been prevented in some extraordinary way from exercising rights," such that "it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl*, 296 F.3d at 85. In a related but slightly different vein, equitable estoppel is available "where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing the lawsuit." *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 76, 85 (2d Cir. 1986); *see also Abbas*, 480 F.3d at 642 (stating that equitable estoppel applies when a "plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action"). Under either doctrine, "[d]ue diligence on the part of the plaintiff in bringing an action ... is an essential element of equitable relief." *Abbas*, 480 F.3d at 642 (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D. 3d 793, 796 (N.Y. App. Div. 3d Dep't 2005)).

As a result, the Court finds Plaintiff is not entitled to tolling and, thus, his claims, which are based on events that occurred before November 20, 2017, are time barred.

Therefore, I recommend dismissing Plaintiff's claims pursuant to 42 U.S.C. § 1983, as untimely.

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 115 of 143

Benyi v. New York, Not Reported in Fed. Supp. (2021)

## B. Claims Pursuant to 28 U.S.C. § 1997

Plaintiff refers to 28 U.S.C. § 1997 [14] as a basis for claims that he asserted in another lawsuit against the New Mexico Probation/Parole and LaPosada Halfway House. (Dkt. No. 1 at 7.)

To the extent that Plaintiff intended to assert claims here pursuant to 42 U.S.C. § 1997, which deals with suits by prisoners regarding prison conditions, I recommend that those claims be dismissed.

The statute provides in 42 U.S.C. § 1997j, "[t]he provisions of this subchapter shall in no way expand or restrict the authority of parties other than the United States to enforce the legal rights which they may have pursuant to existing law with regard to institutionalized persons." 42 U.S.C. § 1997j (2006). "This clause precludes recognition of a private cause of action under 42 U.S.C. § 1997." *Kerchee v. Smith*, 11-CV-0459, 2011 WL 5143135, at *2, n.9 (W.D. Okla. Sept. 30, 2011); *accord Chichakli v. Samuels*, 15-CV-0687, 2016 WL 11447755, at *5, n.12 (W.D. Okla. Mar. 10, 2016) ("The PLRA does not provide any private right of action."); *Woodstock v. Shaffer*, 15-CV-0041, 2015 WL 13614123, at *5 (D. Colo. Sept. 24, 2015) (citing 42 U.S.C. § 1997(a)(c)) (holding that the Civil Rights of Institutionalized Persons Act "does not provide for an individual right of action."); *see McRorie v. Shimoda*, 795 F.2d 780, 782 n. 3 (9th Cir. 1986) (stating that 42 U.S.C. § 1997j "precludes a private cause of action" under 42 U.S.C. §§ 1997-1997j); *Callahan v. Southwestern Medical Ctr.*, 03-CV-1434, 2005 WL 1238770, at *6 (W.D. Okla. Apr. 29, 2005) (stating that "[c]ourts have consistently found" that the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997a "does not provide for a[n] individual right of action" (citations omitted)), *report and recommendation adopted by*, 2005 WL 1656917 (W.D. Okla. July 7, 2005), *aff'd*, 178 F. App'x 837, 840 (10th Cir. May 8, 2006).

## C. Claims Pursuant to the ADA

**\*12** Plaintiff refers to the ADA as a basis for claims that he asserted in another lawsuit against the New Mexico Probation/Parole and LaPosada Halfway House. (Dkt. No. 1 at 7.)

To the extent that Plaintiff intended to assert claims here pursuant to the ADA, I recommend that those claims be dismissed.

### 1. Statute of Limitations

"[T]he ADA's statute of limitations is three years." *De La Rosa v. Lewis Foods of 42nd Street, LLC*, 124 F. Supp. 3d 290, 299, n.14 (S.D.N.Y. 2015). For the reasons set forth *supra*, in Part III.A.5. of this Order and Report Recommendation, I recommend that Plaintiff's claims pursuant to the ADA be dismissed as time barred.

### 2. Failure to State A Claim

In the alternative, I recommend that Plaintiff's ADA claims be dismissed for failure to state a claim upon which relief may be granted.

Although the Compliant is sparse, and largely incomprehensible, it states that Plaintiff is a "71-year old, 100% disabled veteran of the United States Navy." (Dkt. No. 1, Attach. 1 at 1.) The Complaint provides no allegations of discrimination based on his disability. (*See generally* Dkt. 1.) However, construing the Complaint liberally, as the Court must, Plaintiff failed to allege facts plausibly suggesting claims pursuant to Title II or Title III of the ADA. [15]

### i. Title II of the ADA

**\*13** Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected*, 511 F.3d 238 (2d Cir. 2004)). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA is applicable to inmates in state correctional facilities. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998); *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Here, the Compliant is devoid of any factual allegations plausibly suggesting that Plaintiff was unable to access programs due to his disability, how his disability prevented him from accessing those programs, or what accommodations

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 116 of 143

Benyi v. New York, Not Reported in Fed. Supp. (2021)

he sought and was denied by Defendants. (*See generally* Dkt. 1.) Courts "routinely dismiss ADA suits by disabled inmates that ... do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).

In addition, other than a conclusory assertion that he is disabled, Plaintiff does not assert facts plausibly alleging that he is a qualified individual under the ADA. *See Schlosser v. Walker*, 20-CV-0433, 2020 WL 7324679, at *3 (D. Conn. Dec. 11, 2020) (holding that the plaintiff's allegation that he suffers from "a serious mental illness" was insufficient to allege that he was a qualified individual pursuant to ADA); *Burdick v. Town of Schroeppel*, 16-CV-1393, 2017 WL 5509355, at *13 (N.D.N.Y. Jan. 31, 2017) (Dancks, M.J.) ("A plaintiff's complaint must plead facts plausibly suggesting that his alleged disability can meet all of the elements contained in the ADA's definition of disability."); *see also Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (holding that, "[t]o establish a claim under [42 U.S.C. § 12102(1)(A)], a plaintiff must allege that he (1) has a[n] ... impairment that (2) substantially limits (3) a major life activity," and dismissing plaintiff's complaint where it failed to allege, *inter alia*, "that his conditions substantially limited him in his performance of a life activity"); *Cox v. Civista Med. Ctr.*, 16 F. App'x 185, 186 (4th Cir. 2001) (affirming district court's dismissal of the plaintiff's complaint because it failed to "demonstrate a disability" under 42 U.S.C. § 12102(1)(A) or (B)); *Ajuluchuku v. Macy's*, 12-CV-1855, 2012 WL 5464467, at *3 (E.D. Cal. Nov. 7, 2012) (dismissing the plaintiff's amended complaint because it did "not allege facts establishing any of [the] elements [of 42 U.S.C. § 12102(1)]); *Thompson v. New York City Dep't of Probation*, 03-CV-4182, 2003 WL 22953165, at *3 n.5 (S.D.N.Y. Dec. 12, 2003) ("Under the ADA definition of 'disability,' merely pleading a physical impairment without specifying that it 'substantially limits' a 'major life activity' may be insufficient to state a claim for relief.").

As a result, in the alternative, I recommend that Plaintiff's ADA claims under Title II be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Hill v. LaClair*, 20-CV-0441, 2020 WL 2404771, at *8 (N.D.N.Y. May 11, 2020) (Hurd, J.) (dismissing ADA Title II claims "pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted."). [16]

### ii. Title III of the ADA

**\*14** Title III of the ADA prevents discrimination based on a disability in places of public accommodation. 42 U.S.C. § 12182. However, Title III "expressly does not apply to public entities, including local governments." *Bloom v. Bexar Cnty.*, 130 F.3d 722, 726 (5th Cir. 1997); *see also Morales v. New York*, 22 F. Supp. 3d 256, 266-67 (S.D.N.Y. 2014) ("Title III is not applicable to public entities."). Instead, "[a] claim under Title III of the [ADA] can only be asserted against a private entity engaged in the provision of public accommodations, such as an inn, hotel or private school." *Morales*, 22 F. Supp. 3d at 266 (citing 42 U.S.C. §§ 12181(7); 12182); *see also Booker v. City of New York*, 17-CV-7035, 2018 WL 4616048, at *5, n.3 (S.D.N.Y. Sept. 26, 2018) (holding that a claim pursuant to Title III of the ADA cannot be asserted against the City of New York or its employees in their official capacities because they are not private entities engaged in the provision of public accommodations).

Here, Defendants are public entities, which are thus, not amenable to a Title III ADA claim. *See Maioriello v. New York State Office for People with Dev. Disabilities*, 14-CV-0214, 2015 WL 5749879, at *16 (N.D.N.Y. Sept. 30, 2015) (Suddaby, C.J.) (dismissing the plaintiff's claims to the extent that they were based on a violation of Title III because the New York State Office for People with Developmental Disabilities is a public entity). [17]

Moreover, for the reasons set forth *supra*, in Part III.C.2.i. of this Order and Report-Recommendation, Plaintiff failed to allege that he was a qualified individual pursuant to the ADA.

In addition, "Title[ ] ... III of the ADA prohibit[s] discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." *Powell*, 364 F.3d at 85, opinion corrected, 511 F.3d 238 (2d Cir. 2004) (citations omitted). To adequately plead a claim pursuant to Title III of the ADA for failure to provide reasonable accommodations, a plaintiff must allege facts establishing that the defendant's "failure to make 'reasonable modifications' to their policies, practices, and procedures deprived plaintiff of the ability to access the 'goods, services, facilities, privileges, advantages, or accommodations' available to those lacking [the] plaintiff's disabilities." *Andersen v. N. Shore Long Island Jewish*

*Healthcare Sys. Zucker Hillside Hosp.*, 12-CV-1049, 2013 WL 784391, at *9 (E.D.N.Y. Jan. 23, 2013) (quoting 42 U.S.C. 12182(b)(2)(A)(i)-(ii) (additional citation omitted)), *report and recommendation adopted* as modified, 2013 WL 784344 (E.D.N.Y. Mar. 1, 2013).

Here, the Complaint is devoid of factual allegations concerning "policies, practices, [or] procedures" by Defendants that deprived Plaintiff of ability to access goods, services, or privileges available to those without Plaintiff's disabilities. *Doe v. NYSARC Tr. Serv., Inc.*, 20-CV-801, 2020 WL 5757478, at *8 (N.D.N.Y. Sept. 28, 2020) (Hummel, M.J.), *report and recommendation adopted by*, 2020 WL 7040982 (N.D.N.Y. Dec. 1, 2020) (Sannes, J.).

**\*15** As a result, I recommend that, in the alternative, to the extent that Plaintiff intended to assert claims pursuant to Title III of the ADA, those claims be dismissed for failure to state a claim.

### D. Relief Sought by Plaintiff is Inappropriate

The only relief that Plaintiff appears to seek is his immediate release to his V.A. caregiver and fiduciary in California. (Dkt. No. 1 at 5.) However, the Supreme Court has held that a challenge by a prisoner to the fact or duration of his confinement and seeking an immediate or earlier release from that confinement must be pursued through a habeas corpus proceeding rather than in an ordinary civil rights action. *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see Garcia v. Westchester Cnty. District Attorney Office*, 21-CV-0348, 2021 WL 411546, at *3 (S.D.N.Y. Feb. 4, 2021) ("A plaintiff may not challenge the validity of his confinement or seek release from custody in a civil action under § 1983, but must instead bring a petition for a writ of habeas corpus to seek such relief."); *Martinez v. Hynes*, 20-CV-4325, 2021 WL 242232, at *2 (E.D.N.Y. Jan. 22, 2021) ("Prisoners have other ways of challenging convictions they believe to be unconstitutional, first through direct appeal and then through a writ of habeas corpus pursuant to 28 U.S.C. § 2254); *London v. Nassau Cnty. District Attorney's Office*, 20-CV-3988, 20-CV-3989, 20-CV-3990, 2020 WL 7699644, at *9, n.6 (E.D.N.Y. Dec. 28, 2020) (abstaining from adjudicating the plaintiff's remaining claims seeking injunctive relief because habeas corpus relief is the exclusive remedy in federal court for a state prisoner seeking release from custody).

In this case, the Complaint and attached exhibits do not reflect that Plaintiff has complied with the exhaustion requirements for filing a habeas petition pursuant to 28 U.S.C.

§ 2254. As a result, in the alternative, to the extent that Plaintiff's Complaint could be construed as a habeas petition, I recommend that it be dismissed for failure to exhaust the available state court remedies. *Patterson v. New York*, 2020 WL 7646739, at *3 (N.D.N.Y. Dec. 23, 2020) (D'Agostino, J.) (dismissing the plaintiff's complaint to the extent that it could be construed as a habeas petition where the plaintiff failed to allege that he complied with the exhaustion requirements for filing a habeas corpus petition and holding that a plaintiff may not challenge the legality of his conviction through a section 1983 action and may only obtain that relief by bringing a petition for a writ of habeas corpus).

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [18]

**\*16** With respect to Plaintiff's claims pursuant to 42 U.S.C. § 1983, I recommend that the claims against Defendants New York, Binghamton Police Department, Broome County Sheriff's Department, New York Appellate Division Third Department, United States District Court for the Northern District of New York, and Second Circuit Court of Appeals, be dismissed with prejudice and without leave to amend. *See Forjone*, 414 F. Supp. 3d at 303-04 (dismissing with prejudice the plaintiff's claims against the state and federal defendants based on the doctrine of sovereign immunity because "[p]ermitting amendment would be unproductive in this instance."); *Johnson*, 2020 WL 758964, at *2 (recommending dismissal, without leave to amend, the plaintiff's claims

against the Appellate Division Third Department); *Jackson*, 2016 WL 4004612, at *5 (dismissing claims against the Syracuse Police Department with prejudice and without leave to amend because the Syracuse Police Department "is not susceptible to suit under § 1983."). However, to the extent that Plaintiff attempted to assert claims against Defendants Angel and Guyyey—in their individual or official capacities —I am unable to conclude with complete certainty that if permitted leave to amend the complaint, Plaintiff could not assert a plausible claim pursuant to 42 U.S.C. § 1983.

Moreover, generally, a district court should not dismiss claims as time barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *Abbas*, 480 F.3d at 640. Therefore, I recommend that Plaintiff's time barred claims pursuant to 42 U.S.C. § 1983 and the ADA be dismissed with leave to amend. [19]

In addition, I recommend that to the extent that Plaintiff intended to assert claims pursuant to 42 U.S.C. § 1997, those claims be dismissed with prejudice and without leave to amend because permitting amendment would be unproductive.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading

or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that the amended application to proceed *in forma pauperis* (Dkt. No. 4) is **DENIED WITHOUT PREJUDICE**; and it is further [20]

**\*17 ORDERED** that the Clerk of the Court shall provide Plaintiff with a blank inmate authorization form; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket so as to **ADD** as Defendants the additional entities and individuals identified in the Complaint (i.e. the Broome County Sheriff's Department, Detective Sergeant Barry Angel, and Deputy Sheriff William Guyyey); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's (1) claims pursuant to 42 U.S.C. § 1983 against Defendants New York, Binghamton Police Department, Broome County Sheriff's Department, New York State Appellate Division Third Department, United States District Court for the Northern District of New York, and Second Circuit Court of Appeals; and (2) claims pursuant to 42 U.S.C. § 1997, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's (1) claims pursuant to 42 U.S.C. § 1983 against Defendants Angel and Guyyey; and (2) claims pursuant to the ADA, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [21]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [22] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**Benyi v. New York, Not Reported in Fed. Supp. (2021)**

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 119 of 143

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1406649

## Footnotes

1    The Court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2    The Complaint lists the Broome County Sheriff's Department as a Defendant in this matter. (Dkt. No. 1 at 1.) As a result, the Clerk of the Court is directed to amend the docket sheet accordingly.

3    The Complaint lists Detective Sergeant Barry Angel as a Defendant in this matter. (Dkt. No. 1 at 1.) As a result, the Clerk of the Court is directed to amend the docket sheet accordingly.

4    The Complaint lists Deputy Sheriff William Guyyey as a Defendant in this matter. (Dkt. No. 1 at 2.) As a result, the Clerk of the Court is directed to amend the docket sheet accordingly.

5    Although not set forth by Plaintiff in the Complaint, the Court notes that on January 7, 1991, Plaintiff filed a *pro se* civil rights action in the Northern District of New York, No. 6:91-CV-0018 (NPM/GJD) ("*Benyi I*"). On February 28, 1997, United States Senior District Judge Neal P. McCurn, granted the defendants' motion for summary judgment. (*Benyi I*, Dkt. No. 163.) In addition, on February 22, 1991, Plaintiff filed a *pro se* habeas corpus claim in the Northern District of New York, No. 6:91-CV-0196 (LEK/DH) ("*Benyi II*"). On September 22, 1994, then-United States Magistrate Judge David N. Hurd issued a report and recommendation, which recommended that Plaintiff's petition for writ of habeas corpus be denied. (*Benyi II*, Dkt. No. 37.) On April 17, 1996, United States District Judge Con. G. Cholakis accepted and adopted Magistrate Judge Hurd's report and recommendation and denied Plaintiff's petition for writ of habeas corpus. (*Benyi II*, Dkt. No. 43.)

6    Plaintiff uses the term "they" frequently throughout the Complaint. (*See generally* Dkt. No. 1.) However, it is unclear to the Court who Plaintiff is referring to.

7    On November 30, 2020, Plaintiff commenced a *pro se* civil rights action in the District of New Mexico, No. 2:20-CV-1244 (KG/KBM) ("*Benyi III*"). On January 8, 2021, United States District Judge Kenneth J. Gonzales dismissed Plaintiff's Complaint. (*Benyi III*, Dkt. No. 4.)

8    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

9    The Clerk of the Court is directed to provide Plaintiff with a blank inmate authorization form.

Benyi v. New York, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 120 of 143

10    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

11    The Court also notes that Defendant New York Appellate Division "Third Department is also not considered a 'person' for purposes of 42 U.S.C. § 1983." *Dinsio*, 2017 WL 3016832, at *12, n.13 (citing *Zuckerman*, 421 F.2d at 626; *Ajamian v. New York*, 13-CV-1316, 2014 WL 3928448, at *6 (N.D.N.Y. Aug. 11, 2014) (D'Agostino, J.) (holding that the Third Department is not a "person" within the meaning of Section 1983)).

12    The Court notes that it has authority to decide this matter despite the fact that it is named as a defendant. *Hansel v. U.S. Supreme Court, Second Circuit Court of Appeals*, 141 F.3d 1151 (2d Cir. 1998). Federal judges are required to disqualify themselves in any proceeding in which their impartiality might reasonably be questioned. 28 U.S.C. § 455(a). The ultimate inquiry under Section 455(a) is whether a reasonable person would conclude that the judge's impartiality could reasonably be questioned, and disqualification is not required on the basis of remote, contingent or speculative interests. *United States v. Thompson,* 76 F.3d 442, 450 (2d Cir. 1996); *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). Plaintiff did not sue any member of this Court in an individual capacity. Here the danger of partiality, if any, is based on remote and speculative concerns because Plaintiff seeks nothing more than a series of vague declarations and has alleged no specific wrongdoing by members of this Court. Accordingly, disqualification is not required. In any event, disqualification is not possible here because it would leave Plaintiff with no judges of this Court to hear his Complaint. Thus, the rule of necessity applies and this Court may proceed to hear the case. *United States v. Will,* 449 U.S. 200 (1980); *Atkins v. United States,* 214 Ct.Cl. 186 (Ct. Cl. 1977).

13    The Court notes that Plaintiff's Complaint was filed on November 30, 2020. (Dkt. No. 1.) However, pursuant to the prison mailbox rule, the Court deems Plaintiff's Complaint filed on November 20, 2020, when he gave it to prison officials. *Douglas v. Bughrara*, 11-CV-1535, 2013 WL 5347285, at *3 (N.D.N.Y. Sept. 23, 2013) (Kahn, J.).

14    Although Plaintiff cites to 28 U.S.C. § 1997, there is no such section of the United States Code.

15    Based on the facts alleged, Plaintiff could not proceed with a claim under Title I of the ADA, which addresses employment discrimination, because he has neither alleged that he was employed by Defendants, nor alleged that he exhausted administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court. 42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360, n.1 (2001)) (" 'Title I of the ADA expressly deals with th[e] subject' of employment discrimination."). Moreover, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications. *Genco v. Sargent & Collins LLP*, 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018). Finally, Title V of the ADA, sometimes referred to as the "retaliation provision," also does not appear applicable because Plaintiff does not allege that he engaged in activity protected by the ADA, that Defendants were aware of that activity, or any causal connection between the allegedly adverse actions that Defendant took against him and the protected activity. *Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009) (Hurd, J.); *see also Constantine v. Merola*, 2020 WL 8450544, at *5 (N.D.N.Y. Nov. 6, 2020) (Lovric, M.J.) (recommending dismissal of the plaintiff's ADA Title V claims where the complaint failed to allege that the plaintiff "engaged in any protected activity, that any [d]efendant knew that [p]laintiff was involved in the protected activity, or that any adverse decision or course of action taken by [d]efendants was causally connected to that protected activity."), *report and recommendation adopted by* 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021) (Hurd, J.).

16    In the alternative, to the extent that Plaintiff attempts to assert ADA Title II claims against Defendants Angel and Guyyey in their individual capacities, I recommend that those claims be dismissed because "individuals cannot be held liable under the ADA." *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct.

Benyi v. New York, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 121 of 143

5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfeld v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA.").

17    To the extent that Plaintiff intended to assert a Title III claim against Defendants Angel and Guyyey in their individual capacities, Title III provides a private right of action for injunctive relief but no right of action for monetary relief. 42 U.S.C. § 12188; *see Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (holding that Title III of the ADA "authorizes private actions only for injunctive relief, not monetary damages."); *Powell*, 364 F.3d at 86 ("Monetary relief ... is not available to private individuals under Title III of the ADA."); *see also Ervine v. Deser View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) ("Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief."). As a result, those claims should also be dismissed.

18    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp.*, 550 U.S. at 544.

19    To the extent that Plaintiff seeks monetary damages against Defendants Angel and Guyyey in their individual capacities pursuant to the ADA I recommend that those claims be dismissed with prejudice and without leave to amend.

20    If Plaintiff wishes to proceed with this action, he must either (i) pay the $402.00 filing fee, or (ii) submit a renewed IFP application detailing his current financial condition complete with the required inmate authorization form, within thirty (30) days from the date of the filing of Court's Decision and Order. Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed.

21    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

22    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                           © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Benyi v. New York, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 122 of 143

2021 WL 1404555
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John J. BENYI,
v.
NEW YORK et al., Defendants.

3:20-CV-1463
|
Signed 04/13/2021

**Attorneys and Law Firms**

JOHN J. BENYI, Plaintiff, Pro Se, 76480, Lea County
Correctional Facility, 6900 West Millen, Hobbs, NM 88244.

**<u>ORDER ON REPORT & RECOMMENDATION</u>**

David N. Hurd, U.S. District Judge

**\*1**  *Pro se* plaintiff John J. Benyi ("plaintiff") filed this civil
rights action against, *inter alia*, various state and local law
enforcement officials alleging that his rights were violated in
connection with a criminal proceeding in state court. Plaintiff
also sought leave to proceed *in forma pauperis*.

On March 23, 2021, following an initial review of plaintiff's
complaint, U.S. Magistrate Judge Miroslav Lovric denied
plaintiff's *in forma pauperis* application without prejudice.
Judge Lovric further advised by Report & Recommendation
("R&R") that plaintiff's complaint be dismissed with
prejudice as to his (1) claims pursuant to 42 U.S.C. §
1983 against Defendants New York, Binghamton Police
Department, Broome County Sheriff's Department, New York
State Appellate Division Third Department, United States
District Court for the Northern District of New York, and
Second Circuit Court of Appeals; and (2) claims pursuant to
42 U.S.C. § 1997 for failure to state a claim upon which relief
may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28
U.S.C. § 1915A(b).

However, Judge Lovric's R&R advised that plaintiff's
complaint be dismissed *without prejudice* as to his (1) claims
pursuant to 42 U.S.C. § 1983 against Defendants Angel and
Guyyey; and (2) claims pursuant to the ADA, for failure to
state a claim upon which relief may be granted pursuant to 28
U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

No objections have been filed. Upon review for clear error,
the Report & Recommendation is accepted and adopted in all
respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ADOPTED;

2. The following claims are DISMISSED WITH
PREJUDICE: (1) claims pursuant to 42 U.S.C. § 1983 against
Defendants New York, Binghamton Police Department,
Broome County Sheriff's Department, New York State
Appellate Division Third Department, United States District
Court for the Northern District of New York, and Second
Circuit Court of Appeals; and (2) claims pursuant to 42 U.S.C.
§ 1997 for failure to state a claim upon which relief may be
granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C.
§ 1915A(b);

3. The following claims are DISMISSED WITHOUT
PREJUDICE: (1) claims pursuant to 42 U.S.C. § 1983 against
Defendants Angel and Guyyey; and (2) claims pursuant to the
ADA, for failure to state a claim upon which relief may be
granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C.
§ 1915A(b); and

4. The Clerk of the Court shall serve a copy of this Order on
plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1404555

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 123 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

2017 WL 1013081
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Umesh HEENDENIYA, Plaintiff,

v.

ST. JOSEPH'S HOSP. HEALTH CTR. (SJHHC);
Roger Gary Levine, MD; Lisa Marie O'Connor, MD;
George O. Tremiti, MD; Horatius Roman, MD; Joanne
Mary French, RN; Wendy Briscoe, RN; Susan Lynn
Cate, Lmft; Rosaline Spinella [1], RN; Robert Michael
Constantine, MD; Mitchell Bruce Feldman, MD; Cynthia
A. Rybak, NP; Kathryn Howe Ruscitto, President and
CEO of SJHHC; Lowell A. Seifter, JD, Senior VP
and Gen. Counsel of SJHHC; Meredith Price, VP of
Fin. Servs. and CFO of SJHHC; Deborah Welch, VP;
Gael Gilbert, RN and Dir. of SJHHC's Psychiatric
Ward; SJHHC Does 1-5, Inclusive; Corporations A-
F, Inclusive; Eric T. Schneiderman, Esq., New York
State Atty. Gen.; New York State Office of Mental
Health (OMH); Ann Marie T. Sullivan, M.D., Comm'r
of OMH; Joshua Pepper, Esq. Deputy Comm'r of
OMH; Michael C. Green, Exec. Deputy Comm'r of
DCJS; Nics Appeals Office—OMH; and New York
State Div. of Criminal Justice Servs., Defendants.

5:15-CV-1238 (GTS/TWD)
|
Signed 03/14/2017

Attorneys and Law Firms

UMESH HEENDENIYA, P.O. Box 5104, Spring Hill, FL
34611, Pro Se.

COSTELLO, COONEY & FEARON, PPLC, ROBERT J.
SMITH, ESQ., 500 Plum Street, Suite 300, Syracuse, NY
13204, Counsel for Defendants SJHHC, French, Briscoe,
Cate, Spinella, Rybak, Ruscitto, Seifter, Price, Welch, and
Gilbert.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., KEVIN
E. HULSLANDER, ESQ., JOHN P. COGHLAN, ESQ.,
250 South Clinton Street, Suite 600, Syracuse, NY 13202,
Counsel for Defendant Levine.

MARTIN, GANOTIS, BROWN, MOULD & CURRIE, P.C.,
BRIAN M. GARGANO, ESQ., 5790 Widewaters Parkway,

Syracuse, NY 13214, Counsel for Defendants O'Connor,
Tremiti, Roman, Constantine, and Feldman.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* action filed by
Umesh Heendeniya ("Plaintiff") against the thirty-five above-
captioned entities and individuals ("Defendants") pursuant
to, *inter alia*, 42 U.S.C. § 1983 arising out of 18 U.S.C. §
922(g)(4)'s alleged prohibition on Plaintiff's ability to receive
a firearm shipped in interstate or foreign commerce as a
result of his involuntary commitment to a psychiatric ward,
are three motions to dismiss Plaintiff's Second Amended
Complaint for failure to state a claim upon which relief can
be granted pursuant to Fed. R. Civ. P. 12(b)(6), filed by
(1) Defendants St. Joseph's Hospital Health Center, Susan
Lynn Cate, Wendy Briscoe, Joanne French, Cynthia Rybak,
Kathryn Howe Ruscitto, Lowell Seifter, Meredith Price,
Deborah Welch, and Gael Gilbert (Dkt. Nos. 46, 62), (2)
Defendant Roger Gary Levine, M.D. (Dkt. No. 59), and (3)
Rosaline Spinella (Dkt. No. 87). For the reasons set forth
below, Defendants' motions are granted in part and denied in
part.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Second Amended Complaint**
Generally, in his Second Amended Complaint, Plaintiff
alleges (among other things) as follows. (Dkt. No. 55 [Plf.'s
Second Am. Compl.].) Plaintiff, a Massachusetts resident,
suffers from "Type-2 Bipolar Disorder (Manic Depression)"
and post-traumatic stress disorder ("PTSD"). (*Id.* at ¶¶ 96,
140.) However, Plaintiff "has never been diagnosed with any
form of psychotic or delusional disorder[.]" (*Id.* at ¶ 99.)

On or about April 5, 2013, Plaintiff was brought to St. Joseph's
Hospital Health Center ("SJHHC") by "EMS" and, between
that date and April 12, 2013, was treated for a "prescription
medication overdose" and pneumonia. [2] (*Id.* at ¶ 141.) He was
first treated in the emergency room, then in the intensive care
unit ("ICU"), and, finally, in the "general medical wing" of
SJHHC. (*Id.*) While Plaintiff was being treated in the ICU, he
was visited by Dr. Lisa O'Connor, M.D., a psychiatrist with
SJHHC's psychiatric unit, on two separate occasions. (*Id.* at
¶¶ 155-56.) Dr. O'Connor "questioned [Plaintiff] at length,"
and Plaintiff provided "his complete biographic[al], physical,

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 124 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

and mental health, social, and educational histor[ies.]" (*Id.* at ¶ 163.) Dr. O'Connor asked Plaintiff "about any past arrests," and Plaintiff disclosed that, in 1995, he had shot and killed an assailant in Oklahoma, was tried for "first degree murder," and was acquitted in June 1996. (*Id.* at ¶¶ 108, 164.) Moreover, Plaintiff explained to Dr. O'Connor that "he had been arrested twice in the past for carrying firearms while not having the correct concealed carry permit (due to the lack of reciprocity agreements between the respective [s]tates) in his possession." (*Id.* at ¶ 165.) Specifically, Plaintiff was arrested for "possessing firearms" in Iowa in 2002 (although he possessed a "concealed carry" permit issued by Virginia at the time), and was arrested again for "possessing a firearm" in Massachusetts in 2007 (although he possessed a "concealed carry" permit issued by Utah at the time). (*Id.* at ¶¶ 166, 168.) He explained to Dr. O'Connor that he was not convicted of any firearm-related offense on either occasion, and that he wanted to continue to "possess guns" to "protect himself" and because "he was a firm believer in the Second Amendment and firearm rights." (*Id.* at ¶¶ 167, 169, 171.) Plaintiff also disclosed that he had been treated by his psychiatrist in Massachusetts for his bipolar disorder and PTSD for the previous five years. (*Id.* at ¶¶ 179-180.)

**\*2** On April 12, 2013, after his discussions with Dr. O'Connor, Plaintiff was involuntarily admitted to SJHHC's psychiatric department pursuant to New York Mental Hygiene Law ("MHL") § 9.27, despite the fact that he did not "exhibit any suicidal, homicidal, delusional, paranoid, or psychotic symptoms whatsoever," and did not "behave in a manner that could cause harm to himself or others." [3] (*Id.* at ¶¶ 143-44.) Rather, as a basis for Plaintiff's involuntary admission, several of the individual Defendants [4] (including Dr. O'Connor) "falsely or negligently wrote in hospital records" that Plaintiff had a "history of schizoaffective disorder," despite Plaintiff's own account of his medical history (which did not include this diagnosis) and the opportunity to contact his treating psychiatrist to verify this diagnosis. (*Id.* at ¶¶ 151-53, 185, 187, 210.) In so doing, Dr. O'Connor "exaggerated and/or increased the (artificial) justification under which [Plaintiff] could be involuntarily admitted" to SJHHC's psychiatric ward. (*Id.* at ¶ 191.) At no point did any of the Defendants properly assess whether Plaintiff posed a danger to himself or others. [5] (*Id.* at ¶¶ 247-260.)

Defendants had at least two motives for improperly involuntarily admitting Plaintiff to the psychiatric ward. First, the SJHHC Defendants and the Physician Defendants had

"an unfair bias against" Plaintiff's right to possess firearms under the Second Amendment of the U.S. Constitution, and wanted to "make sure that [Plaintiff] would lose his firearm rights" pursuant to 18 U.S.C. § 922(g)(4). (*Id.* at ¶¶ 215, 326, 343, 376, 426.) This "strong moral bias" is evident because SJHHC is "managed, controlled, and/or heavily influenced by the Catholic Church." (*Id.* at ¶ 326.) Second, the SJHHC Defendants and/or the Physician Defendants "had a financial motive" to involuntarily admit Plaintiff to the psychiatric unit and provide treatment. (*Id.* at ¶¶ 194, 242, 263, 267, 278, 315, 343.)

Although Defendants "had good legal cover to ... involuntarily admit" Plaintiff under the MHL and relevant case law, the St. Joseph's Defendants and Physician Defendants exploited a "loophole" in the MHL by involuntarily admitting him to the psychiatric ward (thereby eliminating his right to possess firearms under 18 U.S.C. § 922[g][4] ) and then discharging him on April 17, 2013, before the time at which they were obligated to notify his family members of his right to a hearing to challenge his involuntary admission and free legal representation. (*Id.* at ¶¶ 311, 328-344.) Moreover, Defendants "never [gave Plaintiff] any paperwork nor notified [him] verbally of his legal rights, including the availability of free [legal representation] to challenge his retention as an involuntarily admitted patient." (*Id.* at ¶ 365.) [6]

**\*3** In "early 2015," Plaintiff became aware that he may be prohibited from owning or purchasing firearms pursuant to 18 U.S.C. § 922(g)(4). [7] (*Id.* at ¶ 348.) Plaintiff wrote a letter to the St. Joseph's Defendants and the Physician Defendants to inform them that his involuntary admission to the psychiatric ward "has now led to him being unable to purchase or possess firearms and ammunition," but they "wrote back ... refusing to rectify the ... impediment that they unjustly and unlawfully imposed on him [with] regard[ ] to his gun rights...." [8] (*Id.* at ¶¶ 353-54.)

Because this Decision and Order is intended primarily for the review of the parties, the Court will not further recite the factual allegations contained in Plaintiff's Second Amended Complaint, with which the parties are familiar.

Based upon the foregoing allegations, Plaintiff appears to assert the following claims: (1) a claim for medical malpractice against the SJHHC Defendants and the Physician Defendants ("Count I") (*id.* at ¶¶ 392-406); (2) a claim for "[i]ntentional and/or [r]eckless [i]nfliction of [e]motional

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 125 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

[d]istress" against the SJHHC Defendants and the Physician Defendants ("Count II") (*id.* at ¶¶ 407-12); (3) a claim for negligent infliction of emotional distress against the SJHHC Defendants and the Physician Defendants ("Count III") (*id.* at ¶¶ 413-19); (4) a claim for violation of Title III and Title V of the Americans with Disability Act, 42 U.S.C. § 12121 *et seq.* ("ADA") and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, against the SJHHC Defendants, the Physician Defendants and Corporations A-F ("Count IV") (*id.* at ¶¶ 420-34); [9] (5) a claim for civil conspiracy under New York State law against the SJHHC Defendants and Physician Defendants ("Count V") (*id.* at ¶¶ 435-41); (6) a claim for "[v]iolation of the Second Amendment" against the State Defendants, and for a declaratory judgment and injunctive relief in relation thereto ("Count VI") (*id.* at ¶¶ 442-48); (7) a claim against the State Defendants that MHL § 9.27, as applied, violated his rights under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution ("Count VII") (*id.* at ¶¶ 449-53); (8) a claim against the State Defendants that MHL § 9.27, as applied, violated his rights under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution ("Count VIII") (*id.* at ¶¶ 454-58); (9) a claim against the State Defendants that MHL § 9.27, on its face, violated his rights under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution ("Count IX") (*id.* at ¶¶ 459-63); (10) a claim against the State Defendants that MHL § 9.27, on its face, violated his rights under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution ("Count X") (*id.* at ¶¶ 464-68); (11) claims for violation of Title II and Title V of the ADA and section 504 of the Rehabilitation Act against the State Defendants ("Count XI") (*id.* at ¶¶ 469-76); and (12) a claim for violation of N.Y. Civil Rights Law § 79-n and MHL § 33.01 against the SJHHC Defendants, Physician Defendants, and State Defendants ("Count XII") (*id.* at ¶¶ 477-481).

### B. Parties' Briefing on Defendants' Motion to Dismiss

#### 1. St. Joseph's Defendants' Memoranda of Law and Spinella's Memorandum of Law

**\*4** Generally, in their respective memoranda of law, the St. Joseph's Defendants and Spinella argue as follows: (1) Plaintiff's Second Amended Complaint contains no allegations with respect to Ruscitto, Seifter, Price, Welch, Gilbert, or SJHHC Does 1-5, and any claims purportedly asserted against them must therefore be dismissed; (2) to the extent that Plaintiff may be understood to have alleged a negligent training and/or negligent supervision claim against Ruscitto, Gilbert, Price, Seifter, Welch, Spinella, and/or SJHHC, these claims must be dismissed because (a) he has failed to allege facts plausibly suggesting that these Defendants provided negligent training or negligent supervision, and (b) as Plaintiff alleges, these Defendants were acting within the scope of their employment and, as a result, the employer cannot be held liable under New York law for a claim of negligent hiring, retention, or training; (3) Plaintiff's Title III ADA and Rehabilitation Act claims must be dismissed because (a) individuals may not be held liable under these statutes, and (b) he has failed to allege facts plausibly suggesting that SJHHC constitutes a public accommodation for purposes of his claims or that SJHHC denied him access to its facility or services; (4) Plaintiff's Title V ADA claim must be dismissed because (a) individuals may not be held liable under this statute, (b) he has failed to allege facts plausibly suggesting that he was engaged in a protected activity, that SJHHC knew of the protected activity, or the existence of a causal connection between a protected activity and any retaliatory action, and (c) he should not be permitted to "resurrect" his previously dismissed claims pursuant to 42 U.S.C. § 1983, which were predicated on the same factual allegations (*id.* at 8-9); (5) Plaintiff's § 1983 claims must be dismissed pursuant to the law-of-the-case doctrine because these claims, first asserted in his Amended Complaint, were previously dismissed with prejudice; (6) Plaintiff's conspiracy claim pursuant to 42 U.S.C. § 1985 (to the extent Plaintiff can be understood to allege such a claim) must be dismissed because (a) he has failed to allege facts plausibly suggesting that Defendants conspired to violate his rights or that any such conspiracy was motivated by class-based discriminatory animus, and (b) to the extent that Plaintiff alleges that the conspirators were all St. Joseph's employees, his claim is barred by the intracorporate conspiracy doctrine; (7) Plaintiff's claim pursuant to 42 U.S.C. § 1986 (to the extent Plaintiff can be understood to allege such a claim) must be dismissed because liability under § 1985 is a necessary predicate to liability under § 1986, and, for the reasons set forth above, Plaintiff has failed to properly plead a § 1985 claim; (8) Plaintiff's intentional-infliction-of-emotional-distress claim must be dismissed because (a) it is time-barred and (b) he has failed to allege facts plausibly suggesting that Defendants engaged in sufficiently extreme and outrageous conduct to support this claim (or even a negligent-infliction-of-emotional-distress claim) (*id.* at 14-17); (9) Plaintiff's medical malpractice claim must be dismissed because it is time-barred; (10) to the extent that Plaintiff may be

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 126 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

understood to have asserted a claim for "perjury," this claim must be dismissed because such a civil claim does not exist (*id.* at 17-18); (11) Plaintiff's claim pursuant to New York Civil Rights Law § 79-n must be dismissed because he has failed to allege facts plausibly suggesting that he was subjected to violence or intimidation; (12) Plaintiff's claim pursuant to MHL § 33.01 must be dismissed because, in support of this claim, he merely re-asserts that his rights under § 1983, the ADA, and the Rehabilitation Act have been violated, and, for the reasons enumerated above, those claims must be dismissed; (13) Plaintiff's civil conspiracy claim under New York State law must be dismissed because Plaintiff has failed to allege facts plausibly suggesting that he was subjected to a separate underlying tort; and (14) alternatively, in the event that the Court concludes that only Plaintiff's state law claims survive the St. Joseph's Defendants' and Spinella's motions to dismiss, the Court should decline to exercise supplemental jurisdiction over those state law claims. (Dkt. No. 46, Attach. 2, at 2-18 [St. Joseph's Defs.' Memo. of Law]; Dkt. No. 62, Attach. 2, at 1-5 [St. Joseph's Defs.' Supp. Memo. of Law]; [10] Dkt. No. 87, Attach. 2, at 1-19 [Spinella's Memo. of Law].)

### 2. Dr. Levine's Memorandum of Law

Generally, in his memorandum of law, Dr. Levine argues as follows: (1) Plaintiff's medical malpractice claim must be dismissed because it is time-barred; (2) Plaintiff's intentional-infliction-of-emotional-distress claim must be dismissed because (a) it is time-barred and (b) Plaintiff has failed to allege facts plausibly suggesting that Dr. Levine had the requisite intent to inflict emotional distress, given Plaintiff's allegations that multiple medical professionals independently determined that Plaintiff's commitment was warranted; (3) Plaintiff's negligent-infliction-of-emotional distress claim must be dismissed because he has failed to allege facts plausibly suggesting that Defendants' actions involved a threat or danger of physical harm to him; (4) Plaintiff's ADA Title III claim must be dismissed because Plaintiff has not alleged facts plausibly suggesting that Dr. Levine– a psychiatrist who was "director of" the psychiatry unit at SJHHC–was an owner, lessee, or operator of SJHHC for purposes of that provision; (5) Plaintiff's ADA Title V claim must be dismissed because (a) Plaintiff has failed to allege facts plausibly suggesting any basis for such a claim and (b) Title V does not provide for individual liability; (6) Plaintiff's Rehabilitation Act claim must be dismissed because he has failed to allege facts plausibly suggesting that he was denied

participation in, or the benefits of, any federally funded program; (7) Plaintiff's civil conspiracy claim under New York State law must be dismissed because he has failed to allege facts plausibly suggesting that he was subjected to a separate underlying tort; and (8) Plaintiff's claim pursuant to New York Civil Rights Law § 79-n must be dismissed because he has failed to allege facts plausibly suggesting that he was subjected to violence or intimidation. (Dkt. No. 59, Attach. 1, at 4-14 [Dr. Levine's Memo. of Law].)

### 3. Plaintiff's Memorandum of Law in Opposition to the Motions to Dismiss Filed by the St. Joseph's Defendants and Dr. Levine

Generally, in opposition to the motions to dismiss filed by the St. Joseph's Defendants and Dr. Levine, Plaintiff argues as follows: (1) his medical malpractice claim is not time-barred because the last day on which he could have interposed this claim under the statute of limitations (October 17, 2015) was a Saturday, and he therefore had until Monday, October 19, 2015, to interpose it; (2) with respect to the St. Joseph's Defendants first argument, he has alleged facts plausibly suggesting that the five "executive" individual Defendants failed to exercise sufficient oversight with respect to "lower level" SJHHC employees; (3) the five "executive" individual Defendants, as well as SJHHC, are also liable for any harm caused to him by the Physician Defendants under principles of agency; (4) his ADA and Rehabilitation claims should not be dismissed because (a) SJHHC is liable for violations of these provisions perpetrated by the St. Joseph's individual Defendants, and, through principles of agency, by the Physician Defendants, (b) he has alleged facts plausibly suggesting that Defendants failed to make a "reasonable modification" to the medical services that he was provided to ensure that his Second Amendment rights were not implicated under 18 U.S.C. § 922(g)(4); (5) none of his claims should be dismissed pursuant to the law-of-the-case doctrine because (a) his claims do not merely rehash his previously dismissed § 1983 claims and (b) the law-of-the-case doctrine is discretionary; and (6) his claim pursuant to MHL § 33.01 should not be dismissed because he has alleged facts plausibly suggesting that he lost a property right (i.e., "his firearm licensing rights and firearm permit rights") under 18 U.S.C. § 922(g)(4) as a result of being "forcefully and unlawfully" involuntarily admitted. (Dkt. No. 90 at 3-9 [Plf.'s Opp'n Memo. of Law to the St. Joseph's Defs. and Dr. Levine.])

Case 3:24-cv-00267-LEK-ML Document 11 Filed 07/03/24 Page 127 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

### 4. Plaintiff's Memorandum of Law in Opposition to Spinella's Motion to Dismiss

**\*5** Generally, in opposition to Spinella's motion to dismiss, Plaintiff asserts the same arguments summarized above in Part I.B.3. of this Decision and Order and, moreover, argues as follows: (1) he has alleged facts plausibly suggesting that Spinella failed to "exercise sufficient ... oversight" of the Physician Defendants, who (a) wrote "false medical information" in his medical records and (b) falsely noted on his involuntary admission forms that Drs. Tremiti and Roman personally examined him; (2) his civil conspiracy claim should not be dismissed because (a) he has alleged facts plausibly suggesting that Spinella and the other individual Defendants conspired to deprive him of his right to possess firearms and ammunition by (i) recording "false and exaggerated medical information (from a psychiatric illness standpoint)," (ii) failing to contact his treating psychiatrist, and (iii) refusing his request to be admitted on a voluntary basis so that his Second Amendment rights would not be lost by operation of 18 U.S.C. § 922(g)(4), and (b) his timely medical malpractice claim constitutes an underlying tort for purposes of his civil conspiracy claim; and (3) if his federal claims are dismissed, the Court should exercise supplemental jurisdiction over any surviving state law claims. (Dkt. No. 105, Attach. 1, at 3-17 [Plf.'s Opp'n Memo. of Law to Spinella].)

### 5. St. Joseph's Defendants' and Spinella's Reply Memorandum of Law

Generally, in their reply, the St. Joseph's Defendants and Spinella argue as follows: (1) Plaintiff has failed to oppose their motion to the extent that it seeks dismissal of (a) his § 1985 claim, (b) his § 1986 claim, (c) his intentional tort claims, (d) his negligent-infliction-of-emotional distress claim, (e) his "perjury" claim, (f) his New York Civil Rights Law § 79-n claim, and (g) his New York State civil conspiracy claim; (2) Plaintiff's § 1983 claims must be dismissed pursuant to the Court's Decision and Order filed February 25, 2016, which dismissed Plaintiff's § 1983 claims with prejudice and directed that Plaintiff's Amended Complaint "shall not attempt to reassert any claims that have been dismissed with prejudice in this Decision and Order"; and (3) Plaintiff's claims that are mere attempts to reassert his previously dismissed § 1983 claims under different causes of action–including his medical malpractice claim, ADA

claims, Rehabilitation Act claims, and claim pursuant to MHL § 33.01–must also be dismissed. (Dkt. No. 92 at 1-4 [St. Joseph's Defs.' Reply Memo. of Law]; Dkt. No. 107 at 2-5 [Spinella's Reply Memo. of Law].) [11]

### 6. Dr. Levine's Reply Memorandum of Law

Generally, in his reply, Dr. Levine reiterates the arguments set forth in his memorandum of law and, moreover, argues as follows: (1) Plaintiff has conceded that Dr. Levine cannot be held liable under Title III and Title V of the ADA; (2) because a civil conspiracy under New York State law requires a showing of intentional conduct, Plaintiff's medical malpractice claim cannot serve as the tort underlying his civil conspiracy claim; and (3) because Plaintiff's intentional-infliction-of-emotional-distress claim is time-barred, this claim cannot serve as the tort underlying his civil conspiracy claim. (Dkt. No. 96 at 2-8 [Dr. Levine's Reply Memo. of Law].)

## II. GOVERNING LEGAL STANDARD

### A. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

**\*6** On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson,*

Case 3:24-cv-00267-LEK-ML Document 11 Filed 07/03/24 Page 128 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

**\*7** Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

A few words are also appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [12]

**\*8** Finally, the Court notes that Dr. Levine filed an answer before he filed his present motion to dismiss. As a result, the Court construes his motion as one seeking judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

Case 3:24-cv-00267-LEK-ML Document 11 Filed 07/03/24 Page 129 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

### B. Legal Standards Governing Plaintiff's Claims

Because the parties have (in their memoranda of law) demonstrated an adequate familiarity with the legal standards governing Plaintiff's claims, the Court will not recite in detail those legal standards in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will discuss those legal standards only where necessary below, in Part III of this Decision and Order.

### III. ANALYSIS

#### A. Claims Previously Dismissed with Prejudice

As an initial matter, Plaintiff's original Complaint was liberally construed to have asserted several claims pursuant to 42 U.S.C. § 1983, and these claims were dismissed with prejudice for failure to state a claim upon which relief can be granted. Specifically, although Plaintiff's Second Amended Complaint contains numerous additional factual allegations, the following claims were previously construed to have been asserted in Plaintiff's Complaint and dismissed with prejudice based on the same course of events underlying his Second Amended Complaint: (1) Count VI (asserting a "[v]iolation of the Second Amendment" against the State Defendants); (2) Counts VII and IX (asserting that MHL § 9.27 violated his due process rights); and (3) Counts VIII and X (asserting that MHL § 9.27 violated his equal protection rights). (Dkt. No. 6 at Parts III.D, IV [Order and Report-Recommendation of Dancks, M.J., filed 11/30/2015]; Dkt. No. 20 [Decision and Order, adopting Order and Report-Recommendation].) In its Decision and Order regarding Plaintiff's original Complaint, the Court expressly directed that Plaintiff "shall not attempt to reassert any claims that have been dismissed with prejudice" therein. (Dkt. No. 20 at 12.) The earlier dismissal of these claims thus constitutes law of the case, and Plaintiff has not identified any grounds justifying reconsideration of the Court's prior holdings regarding these claims. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal quotation marks omitted).

The Court notes that Plaintiff expressly asserts his § 1983 claims (i.e., Counts VI-X) "[a]gainst solely the ... State Defendants[.]" (Dkt. No. 55, captions to Counts VI-X.) However, as in his Complaint, Plaintiff's Second Amended Complaint is devoid of any factual allegations related to

any involvement of the State Defendants' in his involuntary admission at SJHHC. Moreover, even if (1) Plaintiff's new factual allegations that the St. Joseph's Defendants and the Physician Defendants circumvented his right to a hearing by discharging him before the deadline by which a hearing was required could serve as the basis for a § 1983 claim that was properly before the Court and (2) the Court construed Plaintiff's Second Amended Complaint as asserting his due process and equal protection claims against the St. Joseph's Defendants and the Physician Defendants (rather than the State Defendants), his claims still would not entitle him to relief because, (among other things) "[t]here can be no claim under the Equal Protection or Due Process Clauses of the Fourteenth Amendment where mere private action abridges the rights of an individual." *McIntosh v. Covenant House*, 05-CV-9973, 2007 WL 1946540, at *3 (S.D.N.Y. June 28, 2007); *accord*, Dkt. No. 6 at 20 [Report-Recommendation, noting that "private conduct, no matter how discriminatory or wrongful, is not controlled by § 1983"] [internal quotation marks omitted] ). Although Plaintiff alleges that SJHHC had financial incentives to involuntarily admit patients, this conclusory and speculative allegation does not plausibly suggest "a sufficiently close nexus between the State and the challenged action" such that the challenged action "may be fairly treated as that of the State itself." *Andersen v. N. Shore Long Is. Jewish Healthcare Sys.'s Zucker Hillside Hosp.*, 12-CV-1049, 2015 WL 1443254, at *10 (E.D.N.Y. Mar. 26, 2015); *see also Antwi v. Montefiore Med. Ctr.*, 14-CV-0840, 2014 WL 6481996, at *5 (S.D.N.Y. Nov. 18, 2014) ("[I]t is well-settled in the Second Circuit that a private hospital confining a patient under the New York MHL is not acting under color of state law."). Accordingly, even if it could reasonably be said that Plaintiff has asserted in his Second Amended Complaint any new § 1983 claim not barred by the Court's directive that he not attempt to reassert any previously dismissed claims, the Court concludes that Plaintiff has not alleged facts plausibly suggesting an entitlement to relief pursuant to § 1983. [13]

**\*9** For each of the foregoing reasons, Counts VI-X of Plaintiff's Second Amended Complaint are dismissed.

#### B. Whether Plaintiff's ADA Title II, III and Title V Claims and Rehabilitation Act Claims Must Be Dismissed (Counts IV and XI)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the St. Joseph's Defendants' memoranda of law and Dr. Levine's

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 130 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

memoranda of law. (Dkt. No. 46, Attach. 2, at 4-8 [St. Joseph's Defs.' Memo. of Law]; Dkt. No. 87, Attach. 2, at 2-5 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 11-13 [Dr. Levine's Memo. of Law]; Dkt. No. 92 at 3-4 [St. Joseph's Defs.' Reply Memo. of Law]; Dkt. No. 96 at 5-6 [Dr. Levine's Memo. of Law].) To those reasons, the Court adds the following analysis.

First, as the St. Joseph's Defendants and Dr. Levine correctly note, "individual defendants may not be sued for money damages under either" the ADA or the Rehabilitation Act. *Morales v. City of New York*, No. 13-CV-7667, 2016 WL 4718189, at *6 (S.D.N.Y. Sept. 7, 2016) (citing *Askins v. N.Y.C. Transit*, 11-CV-6371, 2013 WL 142007, at * 4 [S.D.N.Y. Jan. 8, 2013] and *Fate v. Goord*, 11-CV-7493, 2012 WL 3104884, at *4 [S.D.N.Y. July 31, 2012]); *accord, Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012). Here, Plaintiff is seeking "compensat[ion] for the maximum pecuniary amount allowed" for his ADA and Rehabilitation Act claims. (Dkt. No. 55 at ¶ 434 [Plf.'s Second Am. Compl.].)

Second, Plaintiff has failed to allege facts plausibly suggesting an entitlement to relief under Title III or the Rehabilitation Act. "In order to state a claim for violation of Title III, ... a plaintiff must establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA[.]" *Krist*, 688 F.3d at 94-95. "To establish a prima facie case under the Rehabilitation Act, a plaintiff must allege: [1] that he or she is a person with disabilities under the Rehabilitation Act, [2] who has been denied benefits of or excluded from participating in a federally funded program or special service, [3] solely because of his or her disability." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 216 (2d Cir. 2012). Although "[s]ection 504 of the Rehabilitation Act, enacted prior to the ADA, is narrower than the ADA in that its provisions apply only to programs receiving federal financial assistance ... Title III and § 504 provide similar protections to individuals with disabilities and the merits of such claims are generally considered together." *McInerney v. Rensselaer Polytechnic Inst.*, 977 F. Supp. 2d 119, 125 (N.D.N.Y. 2013) (Hurd, J.); *accord, Hargrave v. Vermont*, 340 F.3d 27, 35 (2d Cir. 2003) (noting that, "[b]ecause Section 504 of the Rehabilitation Act and the ADA impose identical requirements," disability discrimination claims under both statutes may be considered "in tandem") (internal quotation marks omitted).

With respect to the second element of his Title III and Rehabilitation Act claims, Plaintiff has not alleged facts plausibly suggesting that SJHHC constitutes a public accommodation, or that he has been denied benefits of, or excluded from participating in, a federally funded program or service. [14] (*See generally* Dkt. No. 55 [Plf.'s Second Am. Compl.].) Equally important, however, is the fact that Plaintiff has not alleged facts plausibly suggesting that any of the Defendants discriminated against him "*based on [his] disability.*" *Andersen*, 2015 WL 1443254, at *17 (citing *McGugan v. Aldana-Bernier*, 752 F.3d 224, 232 [2d Cir. 2014]). Indeed, the thrust of his factual allegations is that Defendants involuntarily admitted him to SJHHC's psychiatric ward because (1) they were interested in financial gain and (2) they disapproved of his exercise of his Second Amendment rights. (*See, e.g.*, Dkt. No. 55 at ¶¶ 194, 326.) These factual allegations do not plausibly suggest that Plaintiff is entitled to relief within the meaning of Title III or the Rehabilitation Act. *See Andersen*, 2015 WL 1443254, at *17 ("Here, Plaintiff's purported claim that the Hospital committed her for financial reasons does not plausibly allege discrimination based upon disability.").

***10** With respect to Plaintiff's Title V retaliation claim, he has failed to allege facts plausibly suggesting that he was subjected to retaliation within the meaning of Title V of the ADA. To state a retaliation claim under Title V, a plaintiff must allege facts plausibly suggesting that "(i) [he] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotation marks omitted). Plaintiff alleges in a conclusory manner that one or more of the St. Joseph's Defendants and/or Physician Defendants "retaliated against [him] for voicing his constitutional rights in regards to firearms...." (Dkt. No. 55 at ¶ 427.) However, Plaintiff has not alleged facts plausibly suggesting that his statement(s) constituted engagement in a protected activity. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to action taken *to protest or oppose statutorily prohibited discrimination.*"), *superseded by regulation as stated in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013) (emphasis added).

With respect to Plaintiff's Title II and Rehabilitation Act claims [15] against the State Defendants (Count XI), [16]

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 131 of 143

**Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)**

Plaintiff has not alleged facts plausibly suggesting that any State Defendant was in any way involved with his care during his time at SJHHC, that any State Defendant (either before or after his discharge from SJHHC) denied him "the opportunity to either participate in, or to benefit from the[se D]efendants' services, programs, or activities[,] or [that he was] otherwise discriminated against because of [his] ... disabilities." *McIntosh v. City of New York*, 14-CV-0051, 2017 WL 473840, at *6 (E.D.N.Y. Feb. 3, 2017). Simply stated, Plaintiff has identified no authority supporting the proposition that the right to possess firearms constitutes a service, program, or activity of the State, to which he must be provided access by accommodation under Title II and/or the Rehabilitation Act.

Finally, for the reasons enumerated above (as well as those set forth in the moving Defendants' memoranda of law), the Court concludes that dismissal of Plaintiff's Title III and Rehabilitation Act claims is also appropriate with respect to all of the individual Physician Defendants (and not only Dr. Levine), as well as the State Defendants, unidentified John Does 1-5, and Corporations A-F, pursuant to 28 U.S.C. § 1915(e). In short, the moving Defendants' arguments (which are substantive and not fact-specific to them) apply with equal force to the non-moving individual and entity Defendants.

### C. Whether Plaintiff's Claims Pursuant to 42 U.S.C. §§ 1985 and 1986 Must Be Dismissed

As discussed above, the St. Joseph's Defendants and Spinella argue that, to the extent that Plaintiff's Second Amended Complaint may be construed to assert claims pursuant to 42 U.S.C. §§ 1985 and 1986, these claims must be dismissed for failure to state a claim upon which relief can be granted. (Dkt. No. 46, Attach. 2, at 10-14 [St. Joseph's Defs.' Memo. of Law]; Dkt. No. 87, Attach. 2, at 7-10 [Spinella's Memo. of Law].) After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the St. Joseph's Defendants' memorandum of law and Spinella's memorandum of law. To those reasons, the Court adds three points.

**\*11** First, "a claim under § 1985(3) for conspiracy to deny equal protection in violation of the Fourteenth Amendment is not actionable in the absence of state action." *Edmond v. Hartford Ins. Co.*, 27 Fed.Appx. 51, 53 (2d Cir. 2001) (summary order) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 831-32 [1983]); *see also Khan v. City of New York*, 14-CV-4665, 2016 WL 1128298, at *8 (E.D.N.Y. Feb. 1, 2016) (noting that, "[i]n the context

of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under § 1985(3): the right to be free from involuntary servitude and the right to interstate travel") (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 [3d Cir. 2001]). As noted above, Plaintiff has failed to allege facts plausibly suggesting that the State Defendants had any involvement in his involuntary admission at SJHHC.

Second, Plaintiff failed to oppose these Defendants' arguments in his opposition memorandum of law. In this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of this Court's Local Rules of Practice.[17] Stated otherwise, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.[18] Defendant has met that burden here.

Third, as with Plaintiff's § 1983, ADA, and Rehabilitation Act claims, the Court concludes that dismissal of Plaintiff's §§ 1985(3) and 1986 claims (to the extent that even an extraordinarily liberal construction of his Second Amended Complaint suggests an intention to assert such claims) is also appropriate with respect to all of the non-moving individual and entity Defendants pursuant to 28 U.S.C. § 1915(e).

### D. Whether Plaintiff's Medical Malpractice Claim Must Be Dismissed as Time-Barred (Count I)[19]

**\*12** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Plaintiff's opposition memoranda of law. (Dkt. No. 90 at 3-5 [Plf.'s Opp'n Memo. of Law to the St. Joseph's Defs. and Dr. Levine]; Dkt. No. 105, Attach. 1, at 3-5 [Plf.'s Opp'n Memo. of Law to Spinella].) The Court would add only that it takes judicial notice of the fact that October 17, 2015 (i.e., the apparent last day of the two-and-a-half-year statute of limitations period applicable to Plaintiff's medical malpractice claim), was a Saturday. As a result, it appears (at least from the face of the Second Amended Complaint) that Plaintiff's medical malpractice claim is not time-barred. *See* Fed. R. Civ. P. 6(a)(1)(C) ("When the period [to be computed] is stated in days or a longer unit of time ... include the last day of the period, but if the last day is a Saturday, Sunday, or

Case 3:24-cv-00267-LEK-ML  Document 11  Filed 07/03/24  Page 132 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Accordingly, the Court denies the moving Defendants' motion to dismiss this claim on statute-of-limitations grounds.

### E. Whether Plaintiff's Intentional-Inflictionof-Emotional-Distress Claim Must Be Dismissed (Count II)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the memoranda of law filed by the St. Joseph's Defendants, Spinella, and Dr. Levine. (Dkt. No. 46, Attach. 2, at 14-17 [St. Joseph's Defs.' Memo. of Law]; Dkt. No. 87, Attach. 2, at 10-13 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 6-9 [Dr. Levine's Memo. of Law].) To those reasons, the Court adds three points.

First, to the extent that Count II asserts, in the alternative, a claim of reckless infliction of emotional distress, this claim is also subject to a one-year statute of limitations and is therefore time-barred. *See, e.g., James v. Flynn,* 132 A.D.3d 1214, 1216 (N.Y. App. Div. 3d Dep't 2015) ("[T]he proposed cause of action for reckless infliction of emotional distress is also subject to a one-year statute of limitations....").

Second, Plaintiff failed to oppose these Defendants' arguments in his opposition memorandum of law. Because these Defendants' arguments have (at the very least) clear facial merit, these Defendants have met their "modest" burden applicable to unopposed arguments. *See, supra,* Part III.C. of this Decision and Order. In the alternative, the Court concludes that these Defendants have met the burden ordinarily applicable to a properly opposed motion.

Third, the Court concludes that dismissal of Plaintiff's intentional-infliction-of-emotional-distress claim as asserted against the non-moving Physician Defendants and John Does 1-5 is appropriate pursuant to 28 U.S.C. § 1915(e). Simply stated, Plaintiff does not allege facts plausibly suggesting that he had any further contact with the Physician Defendants after the date of his discharge from SJHHC (April 17, 2013), and there is therefore no basis to conclude that such a claim would have accrued at any later date with respect to any of the other Physician Defendants.

As a result, Plaintiff's intentional-infliction-of-emotional distress claim is dismissed.

### F. Whether Plaintiff's Negligent-Infliction-of-Emotional-Distress Claim Must Be Dismissed (Count III)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the memoranda of law filed by the St. Joseph's Defendants, Spinella, and Dr. Levine. (Dkt. No. 46, Attach. 2, at 16-17 [St. Joseph's Defs.' Memo. of Law]; Dkt. No. 87, Attach. 2, at 12-13 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 9-11 [Dr. Levine's Memo. of Law].) To those reasons, the Court adds two points.

First, Plaintiff failed to oppose these Defendants' arguments in his opposition memoranda of law. Because these Defendants' arguments have (at the very least) clear facial merit, these Defendants have met their "modest" burden applicable to unopposed arguments. *See, supra,* Part III.C. of this Decision and Order. In the alternative, the Court concludes that these Defendants have met the burden ordinarily applicable to a properly opposed motion.

**\*13**  Second, the Court concludes that dismissal of Plaintiff's negligent-infliction-of-emotional-distress claim as asserted against the non-moving Physician Defendants and John Does 1-5 is appropriate pursuant to 28 U.S.C. § 1915(e) for the same reasons as those stated by the moving Defendants. Simply stated, Plaintiff has failed to allege facts plausibly suggesting that any Defendant subjected him (or a close family member) to physical injury or a threat of danger at any point during the time relevant to his claims. *See, e.g., Dava v. City of New York,* 15-CV-0875, 2016 WL 4532203, at *11 (S.D.N.Y. Aug. 29, 2016) ("Both [the bystander theory and the direct duty theory of a negligent-infliction-of-emotionaldistress claim] require physical injury or the threat of danger, either to the plaintiff herself or to a close family member.") (internal quotation marks omitted).[20]

### G. Whether Plaintiff's Claim Pursuant to N.Y. Civil Rights Law § 79-n and MHL § 33.01 Must Be Dismissed (Count XII)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the memoranda of law filed by the St. Joseph's Defendants, Spinella, and Dr. Levine. (Dkt. No. 62, Attach. 2, at 2-4 [St. Joseph's Defs.' Supp. Memo. of Law]; Dkt. No. 87, Attach. 2, at 14-16 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 14 [Dr. Levine's Memo. of Law].) To those reasons, the Court adds three points.

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 133 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

First, Plaintiff failed to oppose these Defendants' arguments related to N.Y. Civil Rights Law § 79-n in his opposition memoranda of law. Because these Defendants' arguments have (at the very least) clear facial merit, these Defendants have met their "modest" burden applicable to unopposed arguments. *See, supra,* Part III.C. of this Decision and Order. In the alternative, the Court concludes that these Defendants have met the burden ordinarily applicable to a properly opposed motion.

 **\*14** Second, MHL § 33.01 provides in pertinent part that, "[n]otwithstanding any other provision of law, no person shall be deprived of any civil right, if in all other respects qualified and eligible, solely by reason of receipt of services for a mental disability nor shall the receipt of such services modify or vary any civil right of any such person, including but not limited to ... rights relating to the granting, forfeiture, or denial of a license, permit, privilege, or benefit pursuant to any law." N.Y. Mental Hygiene Law § 33.01. Plaintiff appears to have invoked this statute with respect to his "firearm licensing rights" because "licenses and permits are noted" in its text. (Dkt. No. 90 at 9 [Plf.'s Opp'n Memo. of Law to St. Joseph's Defs. and Dr. Levine].) However, in the portion of his Second Amended Complaint asserting his claim, Plaintiff merely alleges that Defendants "violated his" rights under the Second Amendment, Fourteenth Amendment, ADA, and Rehabilitation Act "because he is mentally disabled," received treatment at SJHHC, and has a history of receiving "psychiatric treatment[.]" (Dkt. No. 55 at ¶¶ 478-81.) Moreover, Plaintiff has failed to identify any case law applying MHL § 33.01 to gun licenses, or any authority supporting the proposition that gun licenses are included within the statute's ambit, and there does not appear to be any. In any event, requiring compliance with MHL § 33.01 does not *preclude* enforcement of 18 U.S.C. § 922(g)(4) (i.e, the federal statute prohibiting, *inter alia,* the possession or receipt of firearms or ammunition shipped or transported in interstate or foreign commerce by any person "who has ... been committed to a mental institution"). *See generally Palmer v. New York State Dep't of Mental Hygiene,* 44 N.Y.2d 958, 960 (1978) (acknowledging that, although "*in this State* deprivation of rights by reason of receipt of services for a mental disability is ... forbidden by statute," there nonetheless "may be incidental disabilities created under Federal law.... Nothing the courts can do will change the fact that plaintiff was indeed treated for mental illness, whether the ground for such treatment was present or not.") (emphasis added). In short, Plaintiff has failed to allege facts plausibly suggesting

that these Defendants deprived him of any right or privilege within the meaning of MHL § 33.01, and has identified no basis for finding that this statute makes available any substantive relief from 18 U.S.C. § 922(g)(4).

Third, the Court concludes that dismissal of Plaintiff's claims against the non-moving Physician Defendants, John Does 1-5, and State Defendants is appropriate pursuant to 28 U.S.C. § 1915(e) for the same reasons as those stated by the moving Defendants. In the alternative, the Court dismisses those claims as frivolous.

Accordingly, Count XII of Plaintiff's Second Amended Complaint is dismissed.

## H. Whether Plaintiff's Civil Conspiracy Claim Must Be Dismissed (Count V)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the memoranda of law filed by the St. Joseph's Defendants, Spinella, and Dr. Levine. (Dkt. No. 62, Attach. 2, at 4-5 [St. Joseph's Defs.' Supp. Memo. of Law]; Dkt. No. 87, Attach. 2, at 16-17 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 13-14 [Dr. Levine's Memo. of Law]; Dkt. No. 96 at 7 [Dr. Levine's Reply Memo. of Law].) To those reasons, the Court adds two points.

First, "[t]he statute of limitations for civil conspiracy [under New York law] is the same as that for the underlying tort." *Jean-Laurent v. Hennessy,* 840 F. Supp. 2d 529, 560 (E.D.N.Y. 2011) (quoting *Brady v. Lynes,* 05-CV-6540, 2008 WL 2276518, at \*9 [S.D.N.Y. June 2, 2008]); *accord, Schlotthauer v. Sanders,* 153 A.D.2d 731, 732 (N.Y. App. Div. 2d Dep't 1989), *lv. denied,* 75 N.Y.2d 709 (1990) ("The plaintiff's seventh and eight causes of action, which allege civil conspiracy, must similarly be dismissed, with prejudice, as time-barred because conspiracy is not an independent tort, and is time-barred when the substantive tort underlying it is time-barred[.]"). As discussed above, Plaintiff's intentional-infliction-of-emotional-distress claim is time-barred, and his civil conspiracy claim, to the extent predicated on this claim, is therefore also time-barred.

Second, the Court concludes that dismissal of Plaintiff's civil conspiracy claim against the non-moving Physician Defendants and John Does 1-5 is appropriate pursuant to 28 U.S.C. § 1915(e) for the same reasons as those stated by the moving Defendants.

**I. Amendment to Cure Pleading Deficiencies**

Ordinarily, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*15** In this instance, Plaintiff has already been afforded the opportunity to amend his Complaint after initial review, and Plaintiff amended his Amended Complaint (i.e., by filing his Second Amended Complaint) after the St. Joseph's Defendants moved to dismiss the claims asserted therein. Plaintiff has failed to cure the deficiencies identified with numerous of the claims in his original Complaint, and, for the reasons discussed above, the Court concludes that further attempts to amend any of his claims would be futile.

**ACCORDINGLY**, it is

**ORDERED** that the St. Joseph's Defendants motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted (Dkt. Nos. 46, 62) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that the Defendant Levine's motion for judgment on the pleadings with respect to Plaintiff's Second Amended Complaint (Dkt. No. 59) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket to reflect the correct spelling of Defendant Spinella's name (rather than "Spunelka"); and it is further

**ORDERED** that the Defendant Spinella's motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted (Dkt. No. 87) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that **SURVIVING** moving Defendants' respective motions is Plaintiff's medical malpractice claim (Count I), asserted against the St. Joseph's Defendants and the Physician Defendants (i.e., Defendants French, Briscoe, Cate, Spinella, Rybak, Ruscitto, Seifter, Price, Welch, Gilbert, Levine, O'Connor, Tremiti, Roman, Constantine, Feldman, and John Does 1-5); and it is further

**ORDERED** that all other claims asserted in Plaintiff's Second Amended Complaint (i.e., Counts II-XII) are **DISMISSED** with prejudice; and it is further

**ORDERED** that Defendants OMH, Sullivan, Pepper, NICS Appeals Office—OMH Central Files, DCJS, Green, Schneiderman, and Corporations A-F are terminated from this action; and it is further

**ORDERED** that the St. Joseph's Defendants file an answer to Plaintiff's Second Amended Complaint within **FOURTEEN (14) DAYS** of the date of this Decision and Order pursuant to Fed. R. Civ. P. 12(a)(4)(A). This case is referred back to Magistrate Judge Dancks for a Rule 16 conference and the scheduling of pretrial deadlines.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1013081

---

**Footnotes**

1        The Clerk of the Court is directed to amend the docket to correct the spelling of this Defendant's last name from "Spunelka" to "Spinella."

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 135 of 143

2      According to an SJHHC admission note signed by Defendant Wendy Briscoe, RN, and attached to Plaintiff's Complaint, Plaintiff's mother "found him unresponsive at a local motel" after Plaintiff ingested Xanax and Risperdal. (Dkt. No. 1, Attach. 6, at 6 [attaching page "1" of SJHHC 3-6 Progress Note, dated 4/12/13].)

3      According to Briscoe's admission note, Plaintiff (who was under the care of Defendant Dr. Roger Levine, M.D.) relayed his psychiatric history and arrest history, and "declined ... treatments and procedures[,] stating his [S]econd [A]mendment rights and that he is not an American citizen." (Dkt. No. 1, Attach. 6, at 6.)

4      In his Second Amended Complaint, Plaintiff refers to the Defendants in the following groupings: (1) Defendants SJHHC, French, Briscoe, Cate, Spinella, Rybak, Ruscitto, Seifter, Price, Welch, Gilbert, and SJHHC Does 1-5 are referred to collectively as "the SJHHC Defendants"; (2) Defendants Levine, O'Connor, Tremiti, Roman, Constantine, and Feldman are referred to collectively as the "Physician Defendants," and (3) Defendants New York State Office of Mental Health ("OMH"), Sullivan, Pepper, NICS Appeals Office—OMH Central Files, the New York State Division of Criminal Justice Services ("DCJS"), Green, and Schneiderman are referred to as the "State Defendants." (Dkt. No. 55 at ¶¶ 1-2.) For the sake of consistency, the Court will use the same designations where practicable, but refers to the SJHHC Defendants as "the St. Joseph's Defendants."

5      Plaintiff also alleges that Defendants Dr. George Tremiti, M.D., and Dr. Horatius Roman, M.D., did not personally examine him prior to his involuntary admission, in contradiction to the Certificate of Examining Physician forms that each of these Defendants completed, which certified that they believed that Plaintiff was in need of "involuntary care" based on their personal examinations of Plaintiff. (Dkt. No. 55 at ¶¶ 225-228 [Plf.'s Second Am. Compl.]; *see also* Dkt. No. 1, Attach. 7, at 2 [Certificate of Examining Physician, signed by Dr. Tremiti on 4/8/2013, noting, at bottom of page, "suicide attempt, history of schizo affective disorder...."]; *id.* at 4 [Certificate of Examining Physician, signed by Dr. Roman on 4/8/2013, noting, at bottom of page, "suicide attempt, h/o schizo affective disorder...."].)

6      Plaintiff alleges that Briscoe "falsely stated in SJHHC ... forms that [Plaintiff] had been provided with documents informing him of his legal rights...." (*Id.* at ¶ 308.) Briscoe's admission note states that Plaintiff "received a copy of his legal rights, unit handbook and pt rights book with understanding," was "given a unit tour," and that "[t]reatment plans [were] initiated for" depression and "self injury acute." (Dkt. No. 1, Attach. 6, at 7.) Another document attached to Plaintiff's Complaint, captioned "NOTIFICATION OF STATUS AND RIGHTS, INVOLUNTARY ADMISSION ON MEDICAL CERTIFICATION," bears Plaintiff's name, Dr. Levine's name, a notice regarding Plaintiff's right to legal services, and contact information for the Syracuse, New York, office of Mental Hygiene Legal Services. (Dkt. No. 1, Attach. 7, at 6 [attaching Notification of Status and Rights, Involuntary Admission on Medical Certification, signed by a staff physician on 4/12/13, and bearing the statement, "THE ABOVE PATIENT HAS BEEN GIVE [*sic*] A COPY OF THIS NOTICE"].)

7      It appears that Plaintiff was aware of this possibility in April 2013, given that, as noted above, contemporaneous medical records attached to his Complaint reflect that he declined treatment, citing his "[S]econd [A]mendment rights," and expressing concern that he may be prohibited from owning firearms if he was involuntarily admitted. (Dkt. No. 1, Attach. 6, at 6-7.)

8      In a letter dated January 27, 2015, and attached to Plaintiff's Complaint, Mary Clare Ehde, Manager of SJHHC's Office of Patient Experience, stated that Plaintiff's "concerns" had been reviewed and that treating staff had been interviewed. (Dkt. No. 1, Attach. 9, at 3 [Letter, dated 1/27/2015].) SJHHC's review confirmed that, prior to Plaintiff's admission, he had been "evaluated by 2 medical Physicians and a Psychiatrist," and that, as a result, medical staff "concluded that, for your safety, the involuntary admission was an appropriate course of treatment for you." (*Id.*) Based upon these conclusions, SJHHC declined to "amend[ Plaintiff's] medical records to change [his] admission status." (*Id.*)

Case 3:24-cv-00267-LEK-ML Document 11 Filed 07/03/24 Page 136 of 143

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

9    Corporations A-F represent the unknown "direct employers (i.e., a physician group, partnership, limited liability corporation, etc.)" of the six named Physician Defendants. (Dkt. No. 55 at ¶ 1.)

10   By letter dated July 25, 2016, the St. Joseph's Defendants advised the Court that their motion to dismiss (which was filed with respect to Plaintiff's Amended Complaint) applied with equal force to Plaintiff's later-filed Second Amended Complaint. (Dkt. No. 57.) Thereafter, the St. Joseph's Defendants filed a second memorandum of law in support of their motion to dismiss, intended to "address[ ] any newly asserted causes of action in Plaintiff's Second Amended Complaint." (Dkt. No. 62, Attach. 2, at 1 [St. Joseph's Def.'s Supp. Memo. of Law].) The Court will consider the arguments set forth in both of the St. Joseph's Defendants' memoranda of law because, combined, they do not exceed the page limitations contained in Local Rule 7.1(a)(1) of the Court's Local Rules of Practice.

11   The St. Joseph's Defendants' reply and Spinella's reply are in the form of affidavits, sworn to by defense counsel. (Dkt. Nos. 92, 107.) Defense counsel is respectfully reminded that affidavits must not contain legal arguments and that legal arguments must be set forth in a reply memorandum of law. N.D.N.Y. L.R. 7.1(a)(1), (2).

12   *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

13   Because Plaintiff is litigating this matter *pro se* and has been granted *in forma pauperis* status, the Court has a continuing duty to review his Second Amended Complaint and must "dismiss the case at any time if the court determines that ... the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *accord, e.g., Kyung Ja Lee v. HSBC Mortg. Corp. USA*, 14-CV-0584, 2014 WL 795766, at *1 (E.D.N.Y. Feb. 27, 2014) (noting a district court's "independent duty to assess whether a complaint meets the pleading standard under" Fed. R. Civ. P. 8, "and to dismiss it if it does not").

14   Even if the Court were to liberally construe Plaintiff's Second Amended Complaint as asserting a claim pursuant to Title II of the ADA against the non-State Defendants (a construction which would run counter to Plaintiff's otherwise numerous and specific statutory citations), dismissal of such a claim would also be

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 137 of 143

Heendeniya V. St. Joseph's Hosp. Health Ctr. (SJHHC), Not Reported in Fed. Supp. (2017)

required because Plaintiff has failed to allege facts plausibly suggesting that SJHHC (or, for that matter, Corporations A-F) are public entities subject to suit under Title II. *See Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) ("A private hospital performing services pursuant to a contract with a municipality[,] even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity.").

15     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The standards adopted by Title II and the Rehabilitation Act "are nearly identical [and courts] consider the merits of these claims together." *Disabled in Action v. Bd. of Elec. in City of New York*, 752 F.3d 189, 196 (2d Cir. 2014) (internal quotation marks omitted).

16     The Court reviews the sufficiency of Plaintiff's factual allegations with respect to these claims against the State Defendants (in conjunction with Plaintiffs's other ADA and Rehabilitation Act claims) pursuant to 28 U.S.C. § 1915(e), because Plaintiff is proceeding *in forma pauperis.* In the alternative, the Court does so because Plaintiff is proceeding *pro se* and the Court finds the claims in question to be frivolous.

17     *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31, 1999 WL 325378 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

18     *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

19     As noted above, each of the moving Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Although Plaintiff has not alleged a specific state of residence as to each individual Defendant, it appears that jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 may exist in this case, given that Plaintiff's Second Amended Complaint alleges that (1) he is a resident of Florida and (2) the amount in controversy exceeds $75,000. (Dkt. No. 55 at ¶¶ 4, 83, 140 [Plf.'s Second Am. Compl.].) The moving Defendants do not argue that diversity of citizenship is lacking. Under the circumstances, the Court declines the moving Defendants' invitation to dismiss Plaintiff's state law claims on this basis at this time.

20     To the extent that New York State recognizes an exception to this requirement "where there is 'an especial likelihood of genuine and serious mental distress, arising from ... special circumstances, which serves as a guarantee that the claim is not spurious,' " the Court concludes that Plaintiff has not alleged facts plausibly suggesting such circumstances in this case. *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (quoting *Johnson v. State*, 37 N.Y.2d 378 [1975]). *Johnson* recognized two such circumstances: (1) "recovery for emotional harm resulting from negligent transmission by a telegraph company of a message announcing death"; and (2) "recovery for emotional harm to a close relative resulting from negligent mishandling of a corpse[.]" *Johnson*, 37 N.Y.2d at 382; *accord, Quinn v. United States*, 946 F. Supp. 2d 267, 278-79 [N.D.N.Y. May 20, 2013] [Suddaby, J.] ). In this case, the thrust of Plaintiff's allegations is that the St. Joseph's Defendants and Physician Defendants *intentionally* exaggerated the severity of his psychiatric condition and history in the course of involuntarily admitting him in order to (1) secure financial incentives for SJHHC and (2) advance the Catholic Church's position as an opponent of Second Amendment rights. (*See, e.g.*, Dkt. No. 55

at ¶¶ 215, 326 [Plf.'s Second Am. Compl.].) *See also Bermudez v. City of New York*, 11-CV-0750, 2014 WL 11274759, at *11 (S.D.N.Y. Mar. 25, 2014) ("Negligent infliction of emotional distress may not be based on intentional conduct."); *Regeda v. City of New York*, 09-CV-5427, 2012 WL 7157703, at *13 (E.D.N.Y. Sept. 7, 2012) ("[T]he defendants also correctly argue that the negligent infliction of emotional distress claim should be dismissed because it is based on intentional conduct–the arrest of the plaintiff."). Accordingly, Plaintiff has failed to allege facts plausibly suggesting the existence of "special circumstances" supporting such a claim.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 139 of 143

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

2018 WL 3827742
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Benedict R. GENCO, Plaintiff,

v.

SARGENT & COLLINS LLP, Defendant.

18-CV-0107-LJV-MJR

|

Signed 06/01/2018

|

Filed 06/04/2018

**Attorneys and Law Firms**

Benedict R. Genco, N. Tonwanda, NY, pro se.

Richard G. Collins, Sargent & Collins, LLP, Williamsville, NY, for Defendant.

REPORT AND RECOMMENDATION

HONORABLE MICHAEL J. ROEMER, United States Magistrate Judge

## INTRODUCTION

**\*1** This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo, for hearing and reporting on dispositive motions for consideration by the District Court. Before the Court is defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 3). For the following reasons, it is recommended that defendant's motion to dismiss be granted and the complaint dismissed with prejudice.

## RELEVANT FACTS AND BACKGROUND

Plaintiff Benedict Genco ("plaintiff" or "Genco"), who is proceeding *pro se*, filed the instant complaint against the law firm of Sargent & Collins, LLP ("Sargent & Collins" or "defendant") on January 22, 2018. (Dkt. No. 1). The allegations in plaintiff's complaint are, in large part, difficult to follow or fully understand. In light of plaintiff's *pro se* status, the Court has attempted to discern

the causes of action asserted. Plaintiff's claims appear to be premised upon Sargent & Collins' legal representation of his employer, Starpoint Central School District ("Starpoint"), in or around January of 2017. (*Id.*). Plaintiff contends that, on account of his various disabilities, Starpoint placed him on administrative leave pursuant to Section 72 of the New York State Civil Service Law and forced him to undergo a fitness for duty medical examination. (*Id.*). He claims that by serving as legal counsel to Starpoint during this time, Sargent & Collins also discriminated and retaliated against him on the basis of his disabilities. [1] (*Id.*). Plaintiff alleges that Sargent & Collins contacted the doctor who performed the examination, that they engaged in the "unauthorized disclosure" of his medical records, and that they "assisted" Starpoint in placing him on unpaid leave. (*Id.*). Plaintiff indicates that the nature of his suit against Sargent & Collins is "disability discrimination, retaliation, providing unauthorized medical records and failure to accommodate." Genco's complaint further alleges that: (1) Starpoint failed to accommodate his disability with respect to boiler training; (2) his fitness for duty examination was improper because the doctor who performed the examination was not a physician; [2] and (3) the fitness for duty examination as well as his placement on administrative leave violated the New York State Civil Service Law and the New York State Education Law. (*Id.*).

**\*2** On February 20, 2018, Sargent & Collins filed the instant motion to dismiss the complaint on the basis that plaintiff fails to assert any viable claims for relief. (Dkt. Nos. 3-5). Plaintiff filed responses in opposition to the motion to dismiss. [3] (Dkt. Nos. 8, 10). The responses allege, for the first time, that Sargent & Collins committed the criminal offense of "offering a false instrument for filing" and that their motion to dismiss his complaint was untimely. Defendant filed a reply in further support of the motion to dismiss on March 29, 2017. (Dkt. No. 9). On April 16, 2018, this Court heard oral argument as to defendant's motion to dismiss. [4]

## DISCUSSION

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 140 of 143

(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face", *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[ ]the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense ... [w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Bell Atl. Corp.*, 550 U.S. at 679.

**\*3** Additionally, the court must be mindful when an individual is proceeding *pro se*. "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."). However, even a *pro se* complaint will be dismissed if it does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'." *Ashcroft*, 556 U.S. at 678; *quoting Bell Atl. Corp.*, 550 U.S. at 570.

In reviewing Genco's complaint and response to the motion to dismiss, the Court has accepted as true all factual allegations, drawn all inferences in plaintiff's favor, and held plaintiff's *pro se* pleadings to a less stringent standard than those drafted by an attorney. Moreover, the Court has attempted to interpret Genco's lengthy, disjointed and confusing allegations and arguments in a manner consistent with a claim or claims upon which relief may be granted. However, the Court concludes that plaintiff has not stated a claim for relief that is plausible on its face.

Genco alleges that his placement on administrative leave and the requirement that he undergo a fitness for duty examination amounted to disability discrimination by

Starpoint, his employer. He contends that Sargent & Collins also discriminated and retaliated against him based upon his disabilities by providing legal representation to Starpoint at the time these actions were taken. Indeed, plaintiff cannot maintain a cause of action against Sargent & Collins pursuant to the Americans with Disabilities Act ("ADA"). Title I of the ADA prohibits employers from discriminating against a qualified individual with a disability in regard to any aspect of employment. 42 U.S.C. § 12112(a) ("no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees ... and other terms, conditions, and privileges of employment."). Genco admits in his complaint that he is not a current or former employee of Sargent & Collins. Therefore, he cannot sue defendant for disability discrimination pursuant to Title I of the ADA.[5] *See Curry v. Town of Islip*, 13-CV-3597, 2017 U.S. Dist. LEXIS 203382, *10 (EDNY Dec. 8, 2017) (*sua sponte* recommendation that plaintiff's ADA claim be dismissed because she was not an employee or a former employee of defendant); *Lauria v. Donahue*, 438 F. Supp. 2d 131, 140 (EDNY 2006) (because plaintiff "was neither an employee, nor former employee of [the company], her claim under the ADA was dismissed."); *Morgenthal v. AT&T*, 97-CIV-6443, 1999 U.S. Dist. LEXIS 4294, at *4 (S.D.N.Y. 1999) (holding that because the plaintiff was not an employee of the defendant he could not be considered a "qualified individual" under the ADA).

Plaintiff also seems to claim that in providing legal representation to Starpoint and communicating with the doctor who performed the fitness for duty examination, Sargent & Collins "assisted" Starpoint in placing plaintiff on unpaid leave. His complaint further alleges, albeit in a vague and confusing manner, that Starpoint failed to accommodate his disability with respect to a boiler training. However, it is unclear exactly how Sargent & Collins was involved in the alleged failure to accommodate. For the reasons just stated, to the extent that plaintiff is claiming that he suffered adverse employment actions on account of his disabilities during his tenure at Starpoint, his cause of action rests with his employer and not his employer's legal counsel.[6]

**\*4** Further, even if plaintiff were able to bring a claim against Sargent & Collins under the ADA, Genco's conclusory allegations of discrimination fail to explain how benign actions taken by the law firm in course of representing a client, such as writing letters on behalf of their client or facilitating an independent medical examination and communicating the

results, are in any way discriminatory or otherwise connected to plaintiff's disabilities. *See Iqbal*, 556 U.S. at 678 (Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully harmed-me accusation ... [n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations and quotations omitted); *Reyes v. Fairfield Props.*, 661 F. Supp.2d 249, 268-269 (EDNY 2009) (conclusory statements that defendants retaliated and discriminated against plaintiff based upon race "do not establish plausibility on [their] face and are insufficient to satisfy even the liberal pleading standards under *Rule 8(a)* and *Iqbal*.").

Genco's allegations that Sargent & Collins was involved in the "unauthorized disclosure" of his medical information also fail to state a claim under federal law. Even if the Court were to construe these vague allegations as a claim under the Health Insurance Portability and Accountability Act ("HIPAA"), no such cause of action exists here. Sargent & Collins is not a health care provider and HIPAA does not provide private rights of action to individuals. *See Mathie v. Lawrence Womack*, 14-CV-6577, 2015 U.S. Dist. LEXIS 11266 (EDNY Jan. 29, 2015) (there is no private right of action under HIPAA and HIPAA enforcement actions are "in the exclusive purview of the Department of Health and Human Services"); *Hunt v. Conry, Simberg, Gannon, Drevans, Abel, Lurvey, Morrow & Schefer, P.A.*, 13-CV-1493, 2013 U.S. Dist. LEXIS 187052 (NDNY Dec. 11, 2013) (dismissing plaintiff's claim that law firm defendant disclosed medical information about plaintiff during the law suit because "the law firm is certainly not a health care provider, and plaintiff has no private right of action under HIPAA.").

Finally, to the extent plaintiff is attempting to assert causes of action based upon allegations that Sargent & Collins filed an untimely motion to dismiss or offered "a false instrument for filing", his claims lack even an arguable basis in law or fact. Offering a false instrument for filing is a violation of Section 175.35 of the New York State Penal Law, for which there is no private right of action. Furthermore, the record is bereft of evidence that defendant filed any document containing false or fraudulent information. Likewise, no cause of action exists for the untimely filing of a motion to dismiss a complaint nor is the instant motion to dismiss untimely. Genco served the summons and complaint on defendant on January 30, 2018. (Dkt. No. 2). Rule 12 of the Federal Rules of Civil Procedure indicates that a party has twenty-one days to answer or move to dismiss a complaint. *See* Fed. R. Civ. P 12(a). Rule 5 of the Federal Rules of Civil Procedure provides that service

is "complete upon mailing." *See* Fed. R. Civ. P. 5(b)(2)(C). Defendant filed the motion and mailed a copy to plaintiff on February 20, 2018, which is twenty-one days after the motion to dismiss was served.

For these reasons, the Court finds that plaintiff has not alleged a claim for relief that is plausible on its face and recommends that the complaint be dismissed. The Court now turns to whether the complaint should be dismissed with or without prejudice. The Second Circuit has advised that "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal citations omitted). However, leave to replead may be denied where it is apparent that no amendments would cure the deficiencies of the pleading and an attempt to replead would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). *See also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."). Here, the Court cannot identify any allegations in plaintiff's complaint that, even if properly pled, would constitute a viable claim under the law. The deficiencies are substantive in nature and cannot be remedied by amendment or repleading. Therefore, it is recommended that plaintiff's complaint against Sargent & Collins be dismissed with prejudice.

## CONCLUSION

**\*5** For the foregoing reasons, it is recommended that Sargent & Collins, LLP's motion to dismiss the complaint be granted and the complaint dismissed with prejudice. (Dkt. No. 3).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure,

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00267-LEK-ML   Document 11   Filed 07/03/24   Page 142 of 143

and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3827742

## Footnotes

1      Genco has filed a separate suit in this Court against Starpoint alleging employment discrimination, retaliation and failure to accommodate in violation of the Americans with Disabilities Act. (*See Genco v. Starpoint Central School District*, Case No. 1:17-CV-01168). Starpoint moved to dismiss plaintiff's *pro se* complaint. Today, the Court issued a Report recommending that Starpoint's motion to dismiss plaintiff's complaint be denied. (Case No. 1:17-CV-01168, Dkt. No. 26). Plaintiff further filed suit, also on a *pro se* basis, against the law firm of Webster Szanyi LLP. (*See Genco v. Webster Szanyi, LLP*, Case No. 1:18-CV-00093). Webster Szanyi, who is representing Starpoint in the course of plaintiff's employment discrimination lawsuit, moved to dismiss the complaint. Today, this Court issued a Report recommending that the complaint against Webster Szanyi be dismissed with prejudice. (*Id.* at Dkt. No. 18). It is also noted that plaintiff filed a previous employment discrimination lawsuit against Starpoint, in this Court, in March of 2013. In February of 2015, the Honorable William M. Skretny granted summary judgment in favor of Starpoint. *See Genco v. Starpoint Central School District*, 1:13-CV-301, 2015 WL 540217 (WDNY Feb. 10, 2015).

2      The complaint states that Michael P. Santa Maria, Ph.D. performed plaintiff's medical examination. (Dkt. No. 1). Defendant's response papers indicate that Dr. Santa Maria is a board-certified neuropsychologist and that he performed a neuropsychological evaluation and independent medical examination of plaintiff. (Dkt. No. 5).

3      The allegations and arguments in plaintiff's responses, like those in his complaint, lack clarity or coherence. His disjointed narrative sets forth a litany of grievances against Starpoint, Sargent & Collins, and Dr. Santa Maria. He attaches various documents including letters from Sargent & Collins and Starpoint relative to his leave and fitness for duty examination, Dr. Santa Maria's report from his neuropsychological evaluation and independent medical examination, a "transcript" of the medical examination that plaintiff transcribed himself, HIPAA releases provided to Dr. Santa Maria, plaintiff's individualized education plan from when he was enrolled in the Starpoint School District, internet research regarding Dr. Santa Maria's practice and areas of specialty, a decision in a prior federal lawsuit filed by plaintiff against Starpoint, and information regarding the elements of the crime of filing a false instrument. As best the Court can ascertain, plaintiff's chief complaint against defendant is that by providing legal representation to Starpoint when plaintiff was placed on administrative leave, Sargent & Collins discriminated against him.

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00267-LEK-ML    Document 11    Filed 07/03/24    Page 143 of 143

4    Also at that time, this Court heard oral argument as to the motion to dismiss and a request for a filing injunction on behalf of Starpoint in *Genco v. Starpoint Central School District*, and oral argument as to the motion to dismiss in *Genco v. Webster Szanyi LLP*.

5    Likewise, the facts of this lawsuit have nothing to do with the other four titles of the ADA, which prohibit disability discrimination in: (1) access to public services, programs and activities provided by public entities (Title II); (2) access to public accommodations, such as hotels and theaters, provided by private entities (Title III); and (3) telecommunications (Title IV). *See* 42 U.S.C. §§ 12101-12213.

6    Similarly, plaintiff has failed to establish any viable claim for relief against Sargent & Collins based upon his allegations that the doctor who performed the fitness for duty examination was not a physician and that the examination was not performed in accordance with the New York State Civil Service Law or New York State Education Law. Plaintiff acknowledges in his complaint that Starpoint, his employer, placed him on administrative leave and sent him for a medical examination. No cause of action exists against Sargent & Collins for their role in facilitating the medical examination or communicating Starpoint's position to plaintiff or others. *See Hills v. Praxair, Inc.*, 11-CV-678, 2012 U.S. Dist. LEXIS 74125 (WDNY May 29, 2012) (dismissing plaintiff's complaint against the attorneys who represented his employer in defense of plaintiff's EEOC charge because, *inter alia*, statements made in quasi-judicial proceedings, such as arguments submitted in response in an EEOC charge or while representing a client at a hearing, are protected by absolute privilege).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.